**6**

1   MILLER NASH GRAHAM & DUNN LLP
    Kyle D. Sciuchetti, OSB No. 965705
2   David A. Foraker, OSB No. 812280
    3400 U.S. Bancorp Tower
3   111 S.W. Fifth Avenue
    Portland, Oregon  97204
4   Telephone:    503.224.5858
    Facsimile:    503.224.0155
5
    Attorneys for Defendant IRZ Consulting, LLC
6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                            FRESNO DIVISION

11

12   In re                                    Bankruptcy Case No.  18-11651-A-11

13   GREGORY JOHN TE VELDE,                    Chapter 11

14             Debtor.                         Adv. Pro. No.  19-01033-B

15

16   RANDY SUGARMAN, CHAPTER 11                DC No.  MNG-2
     TRUSTEE,
17                                             **THIRD-PARTY COMPLAINT**

18             Plaintiff,

19        v.

20   IRZ CONSULTING, LLC; aka IRZ
     CONSTRUCTION DIVISION, LLC;
21

22             Defendant.

23

24

25

26

27

28

MILLER NASH
GRAHAM & DUNN
LLP
ATTORNEYS AT LAW
PORTLAND

4819-4265-6183.5                     -1-                      THIRD-PARTY COMPLAINT

IRZ CONSULTING, LLC, a/k/a IRZ
CONSTRUCTION DIVISION, LLC,

Third-Party Plaintiff,

v.

U.S. FARM SYSTEMS; 4 CREEKS, INC.;
JOHN FAZIO d/b/a FAZIO
ENGINEERING; DARI-TECH, INC.;
LASER LAND LEVELING, INC.; MAAS
ENERGY WORKS, INC.; GEORGE
CHADWICK d/b/a GEORGE CHADWICK
CONSULTING; VALMONT
NORTHWEST, INC.; and NUCOR
BUILDING SYSTEMS UTAH LLC,

Third-Party Defendants.

Third-Party Plaintiff IRZ Consulting, LLC ("IRZ") alleges as follows:

1.      At all material times, IRZ was an Oregon domestic limited liability company with its primary place of business in Umatilla County, Oregon, and was duly licensed with the Construction Contractors Board of the State of Oregon.

2.      At all material times, debtor Gregory John teVelde ("Debtor"), formerly doing business as Willow Creek Dairy, was an individual and the record owner or reputed owner of certain real property and improvements located in Morrow County, Oregon, commonly known as 73950 and 73956 Homestead Lane and 73920 Pole Line Road, Boardman, Oregon (the "Property").

3.      On or about September 30, 2015 and November 17, 2015, IRZ and Debtor entered into two contracts in which IRZ was to provide construction management services for the construction of a dairy—Lost Valley Farm—on the Property.  Debtor failed to pay IRZ for its services and filed Chapter 11 bankruptcy.

4.      IRZ asserted a construction lien on the proceeds of the sale of Lost Valley Farm and filed a Proof of Claim for those funds.  Plaintiff Randy Sugarman, the bankruptcy trustee, objected to IRZ's claim and filed a complaint for damages for alleged construction defects of the dairy.  *See* Exhibit A.

MILLER NASH
GRAHAM & DUNN
LLP
ATTORNEYS AT LAW
PORTLAND

4819-4265-6183.5                    -1-                    THIRD-PARTY COMPLAINT

5.   Plaintiff's complaint alleges at paragraph 29 that IRZ committed the following acts and omissions:

- Failed to prepare an adequate and competent preliminary and/or final site plan with structure, corral, and waste handling locations
- Failed to prepare an adequate and competent preliminary and/or final grading plan to be used for mass excavation calculations
- Failed to prepare an adequate and competent preliminary and/or final infrastructure plan to include adequate onside drain lines, underground water lines and underground power lines
- Failed to prepare an adequate and competent preliminary and/or final effluent water flow line plane to include adequate lines for site drainage, structures, corrals, and effluent handling components to the lagoon systems
- Failed to prepare an adequate and competent preliminary and/or final lagoon design sufficient to satisfy the Debtor's obligations under his CAFO permit and other dairy entitlements
- Most egregiously, prepared a defective irrigation plan and failed to advise the Debtor that there were too many acres under lease to Boardman Tree Farm, LLC to enable the Debtor to install a sufficient number of irrigation pivots to properly dispose of the effluent from a 12,000 head dairy herd.
- Prepared a defective site plan which provided insufficient grade in the dairy stalls and an inadequate flushing system for the waste to flow into the catch basins
- Specified the use of porous decomposed granite for the bedding of the dairy stalls, which absorbed and became saturated with the waste, preventing the waste from flowing by gravity into the catch basins
- Specified underground piping of insufficient diameter and flow, so that the underground waste pipes consistently clogged and backed up
- Specified inadequate impermeable surface areas throughout the system,

1    particularly at the sand lane, so that waste regularly came in contact with

2    unprotected soil

3    • Specified overflow pipes and drains at improper heights so that effluent

4    improperly spilled out of the lagoons and the sand lane areas.

5    • Failed to adequately perform its construction management and oversight of

6    the Debtor's subcontractors and materialmen to ensure that the construction

7    was undertaken in accordance with Defendant's plans, to the extent those

8    plans were not defective, and in a manner which would enable the Debtor

9    to lawfully operate under his CAFO once the dairy was commissioned.

10    6.    At all material times, U.S. Farm Systems was a California corporation

11    conducting business in Oregon. On information and belief, U.S. Farm Systems was involved in

12    designing the standard mechanical separator pad on the Property.

13    7.    At all material times, 4 Creeks, Inc. was a California corporation

14    conducting business in Oregon. On information and belief, 4 Creeks, Inc. was involved in

15    designing the standard mechanical separator pad on the Property.

16    8.    At all material times, John Fazio doing business as Fazio Engineering was

17    and is an Oregon individual conducting business in Oregon. On information and belief, Fazio

18    Engineering was responsible for preparing a site plan, grading plan, infrastructure plan, lagoon

19    design, and Animal Waste Management Plan in order to obtain a Confined Animal Feeding

20    Operation (CAFO) permit.

21    9.    At all material times, Dari-tech, Inc. was a Washington corporation

22    conducting business in Oregon. On information and belief, Daritech, Inc. developed and

23    designed the dairy's waste management system, including the Biolynk flush system.

24    10.    At all material times, Laser Land Leveling, Inc. was an Idaho corporation

25    conducting business in Oregon. On information and belief, Laser Land Leveling, Inc. was

26    responsible for site grading mass excavation, compacting and other work at the lagoon/manure

27    handling area on the Property.

28    11.    At all material times, Maas Energy Works, Inc. was a Washington

MILLER NASH
GRAHAM & DUNN
LLP
ATTORNEYS AT LAW
PORTLAND

4819-4265-6183.5          - 3 -          THIRD-PARTY COMPLAINT

1    corporation conducting business in Oregon. On information and belief, Maas Energy Works

2    provided drawings and designs that were used in construction of the covered lagoon digester on

3    the Property.

4           12.     At all material times, George Chadwick doing business as George

5    Chadwick Consulting was and is an Oregon individual conducting business in Oregon. On

6    information and belief, George Chadwick Consulting performed the hydro geological survey

7    required for the CAFO permit.

8           13.     At all material times, Valmont Northwest, Inc. was a Nebraska corporation

9    conducting business in Oregon. On information and belief, Valmont Northwest, Inc. designed

10   and engineered the irrigation system on the Property.

11          14.     At all material times, Nucor Building Systems Utah LLC was a Utah

12   limited liability company conducting business in Oregon. On information and belief, Nucor

13   Building Systems Utah LLC provided engineering services for the structures on the Property.

14                             **ORS 31.300 CERTIFICATION**

15          15.     The undersigned counsel hereby certifies that he has consulted a design

16   professional with similar credentials who is qualified, available and willing to testify to

17   admissible facts and opinions sufficient to create a question of fact as to the liability of third-party

18   defendants and that the design professional is available and willing to testify that: 1) IRZ was not

19   involved in the design of Lost Valley Farm; 2) to the extent there are defects in the design of Lost

20   Valley Farm, they are the responsibility of the third-party defendants who were involved in the

21   design of Lost Valley Farm and the self-contained waste recycling system; 3) plaintiff alleges

22   conduct in the Complaint regarding the design of Lost Valley Farm and its failure to meet the

23   standard of professional skill and care ordinarily provided by other design professionals with

24   similar credentials, experience and expertise and practicing under the same or similar

25   circumstances; and 4) plaintiff has alleged that the failure to properly design was a cause of the

26   claimed property damages, losses or other harm.

27                          **FIRST CLAIM FOR RELIEF**

28                 **(Negligence—All Third Party Defendants)**

MILLER NASH
GRAHAM & DUNN
LLP
ATTORNEYS AT LAW
PORTLAND

4819-4265-6183.5       - 4 -       THIRD-PARTY COMPLAINT

16.     IRZ realleges paragraphs 1 through 14 as if fully set forth herein.

17.     Based on the defects alleged in Plaintiff's Complaint, the allegations contained in paragraph 29 implicate third-party defendants' work on the Property. Although IRZ denies liability, to the extent that IRZ is determined to have any liability to Plaintiff for the defects and damages alleged, third-party defendants breached their duty of reasonable care by failing to (1) perform work in a good and workmanlike matter, in accordance with the prime contract, subcontract, manufacturer's specifications, industry standards, the applicable building code, or governmental regulation; and/or (2) use reasonable care to ensure its work was complete, free of defects, and otherwise free of substandard work.

18.     To the extent that Plaintiff incurs damages as a result of third-party defendants' conduct and Plaintiff recovers those damages from IRZ in the form of a judgment against IRZ or otherwise, the damages are attributable to third-party defendants, are the foreseeable and proximate result of the conduct described above, and IRZ is entitled to recover the same. IRZ is also entitled to recover the cost of defending against Plaintiff's claims, including but not limited to investigation, expert costs, and reasonable costs and attorney fees, as these claims arose from the work of third-party defendants.

## SECOND CLAIM FOR RELIEF

### (Indemnity—All Third Party Defendants)

19.     IRZ realleges paragraphs 1 through 14 as if fully set forth herein.

20.     IRZ denies liability for Plaintiff's claims. However, if IRZ is found liable to Plaintiff for damages associated with third-party defendants' work on the Property, IRZ's fault, if any, giving rise to such liability was merely passive and secondary, while the fault of third-party defendants was active and primary. IRZ is entitled to common law indemnity from third-party defendants for the full amount of damages IRZ is required to pay to Plaintiff, and also for IRZ's attorney fees and costs incurred in defending Plaintiff's claims.

## THIRD CLAIM FOR RELIEF

### (Contribution—All Third-Party Defendants)

21.     IRZ realleges paragraphs 1 through 14 as if fully set forth herein.

1       22.     Based on the defects alleged in Plaintiff's complaint, the allegations

2   contained in paragraph 29 implicate third-party defendant's work on the Property. IRZ denies

3   liability for Plaintiff's claims. However, to the extent that there is any liability assessed in this

4   case, third-party defendants owe contribution to IRZ for its proportionate share of fault pursuant

5   to ORS 31.800.

6       WHEREFORE, IRZ Consulting, Inc. prays for judgment against third-party

7   defendants as follows:

8       1.     On its first claim for relief, for a judgment against third-party defendants

9   for IRZ's defense costs, including reasonable attorney fees, incurred in defending against

10   Plaintiff's claims, and for any amount ultimately paid to Plaintiff by way of settlement or

11   judgment;

12       2.     On its second claim for relief, for a judgment against third-party defendants

13   for IRZ's defense costs, including reasonable attorney fees, incurred in defending against

14   Plaintiff's claims, and for any amount ultimately paid to Plaintiff by way of settlement or

15   judgment;

16       3.     On its third claim for relief, for a judgment against third-party defendants

17   for IRZ's defense costs, including reasonable attorney fees, incurred in defending against

18   Plaintiff's claims, as well as for contribution by third-party defendants according to their

19   proportionate share of the fault;

20       4.     That IRZ be awarded its costs and disbursements; and

21       5.     For such other relief that the Court deems just and proper.

22

23   Dated: February 23, 2021       MILLER NASH GRAHAM & DUNN LLP

24                    By: _____

25                     Kyle D. Sciuchetti, OSB No. 765705
                       Attorneys for Defendant IRZ Consulting, LLC,

26                     admitted *pro hac vice* by Doc. No. 68

27

28

MILLER NASH
GRAHAM & DUNN
LLP
ATTORNEYS AT LAW
PORTLAND

4819-4265-6183.5       - 6 -       THIRD-PARTY COMPLAINT

# EXHIBIT "A"

Complaint
Sugarman, Chapter 11 Trustee
v.
IRZ Consulting, LLC, et al.

1  MacCONAGHY & BARNIER, PLC
   John H. MacConaghy #83684
2  Jean Barnier #231683
   645 First Street West, Ste. D
3  Sonoma, CA  95476
   Telephone:   (707) 935-3205
4  Email:         macclaw@macbarlaw.com

5  WALTER WILHELM LAW GROUP
   a Professional Corporation
6  Riley C. Walter #91839
   205 East River Park Circle, Ste. 410
7  Fresno, CA 93720
   Telephone:   (559) 435-9800
8  Facsimile:    (559) 435-9868
   E-mail:        rileywalter@W2LG.com
9

10 COLLINS LAW FIRM, LLC
   Michael Collins #801951 (Oregon)
11 326 SE Second St.
   Pendleton, OR 97801
12 Telephone:   (541) 276-3320
   Facsimile:    (541) 276-9248
13 E-mail:        mike@pendletonlaw.net

14 Attorneys for Plaintiff Randy Sugarman, Chapter 11 Trustee

15           IN THE UNITED STATES BANKRUPTCY COURT

16             EASTERN DISTRICT OF CALIFORNIA

17                      FRESNO DIVISION

18 | In re                          | CASE NO.  18-11651

19 |    GREGORY JOHN TE VELDE,       |
                                     | Chapter 11
20 |           Debtor.              |

21 | _____       |
   | RANDY SUGARMAN, CHAPTER 11     | Adv. Proc. No.: _____
22 | TRUSTEE,                       |
                                    | Date:    N/A
23 |           Plaintiff,           | Time:    N/A
   |                                | Place:   2500 Tulare Street
24 | v.                             |          Fresno, CA 93721
   |                                |          5th Floor, Courtroom 11
25 | IRZ CONSULTING, LLC, aka IRZ   | Judge:   Honorable Fredrick E. Clement
   | CONSTRUCTION DIVISION, LLC;    |
26 |                                |
27 |           Defendant.           |

28

COMPLAINT OBJECTING TO CLAIM, ETC.

                         -1-

**COMPLAINT (1) OBJECTING TO CLAIM, (2) FOR DAMAGES FOR BREACH OF CONTRACT, (3) FOR DAMAGES FOR NEGLIGENCE, AND (4) FOR AVOIDANCE OF FRAUDULENT TRANSERS**

Plaintiff Randy Sugarman, Chapter 11 Trustee ("Plaintiff"), alleges against Defendant IRZ Consulting, LLC as follows:

## INTRODUCTION

1.     This is an action objecting to a Proof of Claim filed by Defendant IRZ Consulting Services, LLC in the amount of $347,057.56 allegedly due and payable for the design and project management services provided by the Defendant in the development of a waste water treatment and disposal system for a 30,000 cow dairy. The system was improperly designed and constructed resulting in catastrophic environmental liabilities, lost operating revenues, and loss of land value to the estate in an amount currently unknown, but estimated to be in excess of $18,550,000. The Plaintiff seeks recovery of those damages as a counterclaim for breach of contract and negligence.   The Plaintiff further seeks avoidance of a partial waiver of damages provision contained in the relevant contracts, applicable to the negligence cause of action only, as a fraudulent transfer pursuant to 11 U.S.C. Section 544(b).

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1331 and 1334, and 11 U.S.C. § 502 and 506.

3.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), (H),  and (O) and FRBP 3007(b) and  7001(a)(2). Plaintiff consents to the entry of a judgment in this matter by the Bankruptcy Court.  Defendant IRZ Consulting, LLC has consented to entry of final judgment in this matter by the Bankruptcy Court by the filing of its Proof of Claim No. 19 in the Main Case, a correct copy of which is attached to this Complaint and labeled Exhibit 1.

4.     This adversary proceeding relates to the Chapter 11 Case No. 18-11651, *In re Gregory John te Velde* (the "Main Case"), filed on April 26, 2018 which is currently pending before this Court.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409.

**PARTIES**

6.     Plaintiff is the duly qualified and acting Chapter 11 Trustee of the estate of Gregory John te Velde ("Estate") having been appointed by Order dated September 21, 2018.

7.     Defendant IRZ Consulting, LLC aka IRZ Construction Division, LLC, ("IRZ") is an Oregon limited liability company engaged in the business of the planning and construction of large scale agricultural waste water management and irrigation systems. By judicial admission of Defendant IRZ in the action *IRZ Consulting, LLC v. Te Velde et al*, Morrow County Circuit Course Case No. 17CV47954, Defendant IRZ was not acting as a "design professional" in the transactions alleged this Complaint such that the provisions of O.R.S. 31.300(2) are applicable to this action.

**GENERAL ALLEGATIONS**

**A. The Debtor's Development Plans for the Lost Valley Farm**

8.     As of the year 2015, the Debtor Gregory te Velde was an experienced dairy operator, and part of a multi-generational family of dairymen who owned or controlled thousands of acres of land and a number of dairies across the Western United States. As of the year 2015, the Debtor owned and operated two large dairies in Tulare County, California and one large dairy near Boardman, Oregon, which was known as the Willow Creek Dairy.

9.     Sometime on or about the year 2015, the Debtor became interested in acquiring the "Lost Valley Farm", a 7288 +/- acre parcel of land near Boardman Oregon.. The Debtor's Plan was to develop the Lost Valley Farm into another large dairy with the capacity to milk approximately 30,000 dairy cows, starting with his cows then located at Willow Creek Dairy.

10.     Prior to the Debtor's acquisition of the Lost Valley Farm, it was owned and operated by an entity named Boardman Tree Farm, LLC and used for growing and harvesting cultivated poplar trees used in the manufacture of plywood and other building

COMPLAINT OBJECTING TO CLAIM, ETC.

1   products.  As of 2015, approximately one-half of the acreage of the Lost Valley Farm
2   was still planted with these stands of commercial trees.

3       11.    By the year 2015, the Debtor knew that in order to develop the Lost Valley
4   Farm into a dairy, he was required to obtain a "Confined Animal Feeding Operation"
5   permit ("CAFO") from the Oregon Department of Agriculture ("ODA") and other land use
6   entitlements.   The Debtor further learned that the Lost Valley Farm was in an
7   environmentally sensitive area with elevated levels of nitrates in the groundwater, and
8   that in order to obtain and maintain a CAFO he would be required to construct a
9   sophisticated system to dispose of millions of gallons of liquid waste and tons of solid
10  dairy waste, in an environmentally responsible manner.   The Debtor concluded that he
11  required professional assistance to determine the feasibility of constructing such a
12  system, and design and project management of the system if determined to be feasible.

13              **B. The 9/30/15 Work Order with Defendant IRZ**

14      12.    On September 30, 2015, prior to his acquisition of the Lost Valley Farm,
15  the Debtor and the Defendant IRZ entered into a written "Work Order" for the Lost Valley
16  Farm (referred to therein as "Willow Creek Dairy").  Among other things, Defendant IRZ
17  agreed to provide the following services to the Debtor on a time and materials basis not
18  to exceed $100,000:

19          • GPS generated site map with elevations
20          • Site plan with structure, corral, and waste handling locations
21          • Preliminary grading plan to be used for mass excavation calculations
22          • Preliminary infrastructure plan to include onsite drain lines,
23            underground water lines and underground power lines
24          • Preliminary effluent water flow line plan to include lines from site
25            drainage, structures, corrals, and effluent handling components to
26            lagoon systems
27          • Preliminary lagoon design detailed enough to satisfy CAFO application
28            requirements

---

COMPLAINT OBJECTING TO CLAIM, ETC.

1          • Preliminary cost estimates for project

2          • Estimated schedule to construct project

3      13.    The Work Order included the implied covenant on the part of Defendant

4  IRZ to perform its services in a competent manner, consistent with the skill, diligence,

5  and expertise of licensed contractors providing wastewater management and irrigation

6  construction services in the Pacific Northwest.

7      14.    The Work Order further included a provision purporting to limit Defendant

8  IRZ's damages for negligence (though not breach of contract), providing in 6 point type,

9  "**Liabilities**. The client agrees to limit ICD's liability to the client and to all construction

10 contractors and subcontractors on the project, due to ICD's or any employee of ICD's

11 negligent acts, errors, or omissions, such that the total aggregate limit of ICD to all those

12 names shall not exceed $50,000, or the amount of ICD's fees, whichever is less."

13     15.    Following the execution of the Work Order, Defendant provided certain

14 services to the Debtor, including a preliminary plan for the development and construction

15 of the wastewater management and irrigation aspects of the dairy the Debtor hoped to

16 construct.  Based on IRZ's opinion and services, the Debtor concluded that he could

17 likely obtain a CAFO and purchase and develop the Lost Valley Farm into a 30,000 cow

18 dairy in an environmentally and economically sustainable manner.

19     16.    In particular, Defendant IRZ proposed a development and construction

20 scheme whereby minimal dairy waste from a large dairy herd would be released directly

21 on to the ground where it had the potential to leach to groundwater.  Instead, the waste

22 from the large confined dairy stalls holding thousands of animals was to drain by a timed

23 water pressure flushing system over impermeable surfaces and collect in catch basins.

24 From there it was to be piped to a concrete-lined "sand lane" settling area and separated

25 into liquid and solid components. The liquid components were to be pumped into two (2)

26 massive settling basins, where they would further separate and settle and then the liquid

27 would drain into six (6) massive lined lagoons.  All of the solid materials generated by

28 the process was to be turned into high grade commercial compost.  The liquid

COMPLAINT OBJECTING TO CLAIM, ETC.

1    components, once sufficiently diluted, were to be pumped out of the lagoons and "land

2    applied" at regulated rates by huge irrigation pivots over the thousands of acres of land

3    not used by the dairy and wastewater processing facilities.  Both the processed liquid

4    and solid wastes would act as fertilizer to grow feed for the dairy cattle and other

5    commercial crops.

6         17.    In summary, the point of the development and construction scheme was to

7    make the anticipated dairy operation at the Lost Valley Farm a self-contained waste-

8    recycling system, dispersing the huge amount of waste over such a large area that the

9    nitrogen and other nutrients contained in the waste could be absorbed by the growing

10   crops without polluting the groundwater.

11        18.    Based on, and in reliance of the preliminary development and construction

12   scheme devised by the Defendant IRZ, the Debtor completed an application for an an

13   individual CAFO permit from the ODA and the Oregon Department of Environmental

14   Quality (DEQ).

15       **C.    The Debtor's Purchase and Leaseback of the Lost Valley Farm**

16        19.    Further, also in reliance on the preliminary development and construction

17   scheme devised by the Defendant IRZ, on November 12, 2015, the Debtor purchased

18   the Lost Valley Farm from Boardman Tree Farm, LLC for the sum of $65 Million, payable

19   by a $10 Million down payment and a $55 Million purchase money note and deed of

20   trust.

21        20.    As part of this purchase transaction, the Debtor executed an "Agricultural

22   Lease" for a portion of the land back to BTF.  The provisions of the Agricultural Lease

23   provided that BTF would have a diminishing leasehold on the subject property through

24   2026, commencing with an initial leasehold of 3566 acres for which it would pay $37.50

25   acre per month.  As BTF harvested trees, it would release the harvested land back to

26   the Debtor for a corresponding reduction of rent, diminishing to a few hundred acres in

27   2026.  The Debtor agreed to this arrangement to be able to offset the debt service due

28

COMPLAINT OBJECTING TO CLAIM, ETC.

1  BTF under the purchase money note and deed of trust during the period of time he
2  planned to bring the dairy operation to full capacity.

3

4              **D. The 11/17/15 Agreement with Defendant IRZ**

5      21.    On November 17, 2015, shortly after the Debtor closed the purchase on
6  the Lost Valley Farm, the Debtor entered into a second written contract with the
7  Defendant IRZ entitled "Agreement Between Owner And ICD For Services".  The
8  11/17/15 Agreement provided that the Defendant would provide the services described
9  in the "SCOPE OF WORK" on an hourly basis listed on a "Service Fee Schedule 2015"
10 attached to the Agreement.

11     22.    However, there was no written "SCOPE OF WORK" included in or attached
12 to the 11/17/15 Agreement.  Plaintiff is informed and believes and on that basis alleges
13 that the Defendant IRZ and the Debtor orally agreed that the "SCOPE OF WORK"
14 included the performance of the following services in a competent manner, consistent
15 with the skill, diligence, and expertise of licensed contractors providing dairy wastewater
16 management and irrigation construction services in the Pacific Northwest :

17         • Final site plan with structure, corral, and waste handling locations
18         • Final grading plan to be used for mass excavation calculations
19         • Final infrastructure plan to include onsite drain lines, underground water
20            lines and underground power lines
21         • Final effluent water flow line plan to include lines from site drainage,
22            structures, corrals, and effluent handling components to lagoon
23            systems
24         • Final lagoon design sufficient to satisfy CAFO requirements
25         • All construction management and oversight of the Debtor's
26            subcontractors and materialmen to ensure that the construction was
27            undertaken in accordance with Defendant's plans and in a manner

28

COMPLAINT OBJECTING TO CLAIM, ETC.

1 | which would enable the Debtor to lawfully operate under his CAFO
2 | once the dairy was commissioned.

3 |     23.    The 11/17/15 Agreement further included a provision purporting to limit
4 | Defendant IRZ's damages for negligence (though not breach of contract), providing in 6
5 | point type at Section 6.01 A "**ICD Liability**. It is agreed by OWNER that ICD may be
6 | liable for damages directly caused by negligent acts, errors, or omissions made by ICD.
7 | Under no circumstances shall that amount exceed $500,000 or the amount of ICD's fees
8 | whichever is lower. Under no circumstances shall ICD be liable for negligent acts, errors,
9 | and omissions of OWNER or SUBCONTRACTORS".

10 |     24.    The Debtor performed all conditions precedent and concurrent to the
11 | Estates' right to enforce the Work Order and the 11/17/15 Agreement against IRZ, except
12 | those conditions which were excused by the material breaches of IRZ described below.

13 |     25.    As of the date of the 11/17/15 Agreement, Defendant IRZ knew or should
14 | have known of the existence of the Agriculture Lease with BTF and the fact the BTF was
15 | still occupying approximately half of the Lost Valley Farm for its commercial tree farming
16 | operation. The vast stands of BTF's trees on the Lost Valley Farm, generally 50 feet tall,
17 | were and are readily and easily noticeable by an inspection of the site.

18 |     26.    Also as of the date of the 11/17/15 Agreement, Defendant IRZ knew or
19 | should have known of (a) the estimated daily volume of liquid and solid waste the
20 | Debtor's planned dairy herd was likely to produce, (b) the estimated acreage and number
21 | of irrigation pivots required to disperse the liquid waste in a lawful manner, (c) the fact
22 | that "land application" of the liquid waste required that the irrigation system be regularly
23 | flushed out with massive amounts of fresh water, (d) fresh water in these amounts was
24 | available to the Lost Valley Farm only for the period from April 1 through October 31 of
25 | each each year due to its limited irrigation rights with the Columbia Improvement District,
26 | and (e) during the period November 1 through March 31 of each year, all liquid waste
27 | would need to be stored in the settling lagoons in an environmentally responsible manner
28 |

COMPLAINT OBJECTING TO CLAIM, ETC.

-8-

1   until fresh water was available to resume land application, at rates allowed by the CAFO

2   permit and its accompanying Animal Waste Management Plan ("AWMP").

3       27.     From and after the 11/17/15 Agreement, the Defendant IRZ performed

4   certain services for the Debtor and was paid approximately $850,000 by the Debtor for

5   those services. Concurrently with the performance by IRZ of its services, and in reliance

6   that those services would be performed in accordance with the 11/17/15 Agreement, the

7   Debtor incurred  additional debts of not less than $25 Million in completing the mega

8   dairy encompassed by the Defendant IRZ's development and construction scheme

9   which he used for various purposes, including funding the construction of dairy buildings

10   and improvements on the site, funding the purchase and installation of the pivot irrigation

11   system, assembling a dairy herd of approximately 12,000 animals, and funding the

12   construction of the waste water system included within Defendant IRZ's services under

13   the 11/17/15 Agreement.

14       28.     Following the issuance of the Debtor's CAFO and other entitlements on

15   March 31, 2017,  the Debtor partially commissioned the dairy by mid- 2017 it was

16   operating at 40% capacity.

17    **E. Defendant IRZ's Breach of Contract and the Estate's General Damages**

18       29.     Some time after 9/30/15 and 11/17/15, as applicable, Defendant IRZ

19   breached its obligations under the Work Order and the 11/17/15 Agreement by failing to

20   provide competent services to the Debtor consistent with the skill, diligence, and

21   expertise of licensed contractors providing wastewater management and irrigation

22   construction services in the Pacific Northwest, and by billing the Debtor for services

23   incompetently performed.  Specifically and without limitation, Defendant IRZ committed

24   the following acts and omissions:

25          •   Failed to prepare an adequate and competent preliminary and/or final

26             site plan with structure, corral, and waste handling locations

27          •   Failed to prepare an adequate and competent preliminary and/or final

28             grading plan to be used for mass excavation calculations

COMPLAINT OBJECTING TO CLAIM, ETC.

- Failed to prepare an adequate and competent preliminary and/or final infrastructure plan to include adequate onsite drain lines, underground water lines and underground power lines

- Failed to prepare an adequate and competent preliminary and/or final effluent water flow line plan to include adequate lines for site drainage, structures, corrals, and effluent handling components to the lagoon systems

- Failed to prepare an adequate and competent preliminary and/or final lagoon design sufficient to satisfy the Debtor's obligations under his CAFO permit and other dairy entitlements

- Most egregiously, prepared a defective irrigation plan and failed to advise the Debtor that there were too many acres under lease to Boardman Tree Farm, LLC to enable the Debtor to install a sufficient number of irrigation pivots to properly dispose of the effluent from a 12,000 head dairy herd.

- Prepared a defective site plan which provided insufficient grade in the dairy stalls and an inadequate flushing system for the waste to flow into the catch basins

- Specified the use of porous decomposed granite for the bedding of the dairy stalls, which absorbed and became saturated with the waste, preventing the waste from flowing by gravity into the catch basins

- Specified underground piping of insufficient diameter and flow, so that the underground waste pipes consistently clogged and backed up

- Specified inadequate impermeable surface areas throughout the system, particularly at the sand lane, so that waste regularly came in contact with unprotected soil

- Specified overflow pipes and drains at improper heights so that effluent improperly spilled out of the lagoons and the sand lane areas.

COMPLAINT OBJECTING TO CLAIM, ETC.

- • Failed to adequately perform its construction management and oversight of the Debtor's subcontractors and materialmen to ensure that the construction was undertaken in accordance with Defendant's plans, to the extent those plans were not defective, and in a manner which would enable the Debtor to lawfully operate under his CAFO once the dairy was commissioned.

30. Due to the development process of the Lost Valley Farm, these breaches of contract could not have been discovered through the exercise of reasonable diligence prior to April 27, 2016.

31. The contract price for these defective and incompetent services was the approximate sum of $1,243,476.80, of which approximately $850,000 has been paid.

32. As a direct and proximate result of the Defendant IRZ's breach of contract, as alleged above, the Estate has been generally damaged in the amount of $850,000, representing the amount paid by the Debtor to Defendant IRZ for its worthless services.

### F. The Estate's Consequential Damages

33. The Plaintiff Trustee is informed and believes and on that basis alleges that had the Defendant IRZ complied with its contractual obligations to the Debtor and the Estate to properly perform the services described in the Work Order and 11/17/15 Agreement, the current value of the Lost Valley Farm would be not less than $85 Million.

34. At all relevant times, Defendant IRZ was aware of the enforcement sanctions of the ODA's CAFO program and the Debtor's obligations under the CAFO, as evidenced by the fact that the Work Order expressly refers to Defendant IRZ providing services related to the CAFO program.

35. Shortly after substantial dairy operations commenced at the Lost Valley Farm, the waste water management system failed in multiple respects. Large amounts of liquid and solid dairy waste backed up, overflowed, and were released onto bare soil. As required by his CAFO, the Debtor self-reported most of these incidents, resulting in extremely aggressive enforcement action taken by the ODA against the Debtor, including

1  fines in the approximate amount of $187,000, the largest ever issued in the CAFO

2  program.

3       36.     More importantly, the net result of Defendant IRZ's multiple breaches of

4  contact is that, over time, millions and millions of gallons of dairy waste backed up in the

5  lagoons, since more waste was being created on a daily basis than could be "land

6  applied", given the inadequate number of irrigation pivots specified by Defendant IRZ .

7       37.     Due to the fact that this imbalance of waste production over lawful waste

8  treatment and removal, if left unchecked, would result in an overflow of thousands of

9
   gallons of liquid waste and manure out of the lagoons and onto unprotected areas, the
10
   ODA filed administrative and judicial proceedings against the Debtor and the Estate to
11
12 revoke the CAFO permit and compel a decommissioning of the dairy.

13      38.     The regulatory enforcement actions by the ODA and the resulting

14 revocation of the CAFO permit, both the direct, foreseeable,  and proximate cause of

15 the breach of contract by Defendant  IRZ as alleged above, substantially impaired the

16
   value of the Lost Valley Farm by requiring the Plaintiff Trustee to shut down all revenue
17
18 producing dairy operations, liquidate the dairy herd at depressed auction prices, perform

19 extensive remediation of the backed up dairy waste and sell the Lost Valley Farm at a

20 significant loss. . The ODA's regulatory actions against the Debtor and the Estate

21 culminated in an Order and Mutual Agreement between the Plaintiff and the ODA, a

22
   correct copy of which is attached to this Complaint and labeled Exhibit 2.
23

24      39.     Thus, as a direct, foreseeable, and proximate cause of the Defendant IRZ's

25 breach of contract, the Estate has suffered consequential damages  in an amount not

26 less  $18,887,000 consisting of the following: (1) direct remediation costs of the excess

27 effluent on the Lost Valley Farm in the approximate amount of $3,500,000, (2) loss of

28 profits from dairy revenues in the approximate amount of $3,000,000, (3) professional

COMPLAINT OBJECTING TO CLAIM, ETC.

-12-

fees to counsel and environmental consultants in responding to the ODA's enforcement actions in the approximate amount of $200,000, (4) fines assessed by the ODA in the approximate amount of $187,000, and (5) loss of value to the Lost Valley Farm land in the approximate amount of $12,000,000.

### FIRST CLAIM FOR RELIEF
(Objection to Proof of Claim - 11 U.S.C § 502(b))

40.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 39, inclusive.

41.     On June 4, 2018, the Defendant IRZ filed its Proof of Claim No. 19 in the Main Case herein the amount of $347,057.56 for breach of contract and quantum meruit. A correct copy of that Proof of Claim is attached to this Complaint and labeled Exhibit 1.

42.     Pursuant to the provisions of Section 502(b)(1) this Proof of Claim is entirely unenforceable against the Debtor, and the property of the Debtor due to the fact that it was the Defendant IRZ who breached the Work Order and the 11/17/15 Agreement, as alleged in detail above, and no further sums are due the Defendant from the Estate.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### SECOND CLAIM FOR RELIEF
(Counterclaim for Breach of Contract – FRBP 7001, 7013, and 3007)

43.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 42, inclusive.

44.     At the times and in the manner alleged above, Defendant IRZ breached its obligations under the Work Order and the 11/17/18 Agreement to the Debtor and the Estate.

45.     The Debtor performed all conditions precedent and concurrent to the Estates' right to enforce the Work Order and the 11/17/15 Agreement against IRZ, except those conditions which were excused by the material breaches of IRZ described above.

COMPLAINT OBJECTING TO CLAIM, ETC.

46.     As a direct and proximate result of the Defendant IRZ's breach of contract, as alleged above, the Estate has been generally damaged in the amount of $850,000, representing the amount paid by the Debtor to Defendant IRZ for its worthless services.

47.     Further, as a direct, foreseeable, and proximate cause of the Defendant IRZ's breach of contract, the Estate has suffered consequential damages in an amount not less $18,887,000 consisting of the following: (1) direct remediation costs of the excess effluent on the Lost Valley Farm in the approximate amount of $3,500,000, (2) loss of profits from dairy revenues in the approximate amount of $3,000,000, (3) professional fees to counsel and environmental consultants in responding to the ODA's enforcement actions in the approximate amount of $200,000, (4) fines assessed by the ODA in the approximate amount of $187,000, and (5) loss of value to the Lost Valley Farm land in the approximate amount of $12,000,000.

WHEREFORE, Plaintiff prays for judgment as described below.

### THIRD CLAIM FOR RELIEF
(Counterclaim for Negligence – FRBP 7001, 7013, and 3007)

48.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 47, inclusive.

49.     At all relevant times, the Defendant IRZ held itself out to members of the general public to be an experienced licensed contractor with special expertise in the areas of large scale agricultural irrigation and waste water design, and large scale dairies.

50.     As such Defendant IRZ owed a duty to the Debtor to perform such services on the Debtor's behalf in a competent manner, and to exercise the diligence, care, and skill in the performance of such services, consistent with the skill, diligence, and expertise of other licensed contractors providing wastewater management and irrigation and large dairy construction services in the Pacific Northwest.

51.     Sometime after 9/30/15, Defendant IRZ breached its duty of care to the Debtor by failing to provide competent services to the Debtor, consistent with the skill,

diligence, and expertise of licensed contractors providing wastewater management and irrigation construction services in the Pacific Northwest, and by billing the Debtor for services incompetently performed.  Specifically and without limitation, Defendant IRZ committed negligently committed the following acts and omissions:

- Failed to prepare an adequate and competent preliminary and/or final site plan with structure, corral, and waste handling locations
- Failed to prepare an adequate and competent preliminary and/or final grading plan to be used for mass excavation calculations
- Failed to prepare an adequate and competent preliminary and/or final infrastructure plan to include adequate onsite drain lines, underground water lines and underground power lines
- Failed to prepare an adequate and competent preliminary and/or final effluent water flow line plan to include adequate lines for site drainage, structures, corrals, and effluent handling components to the lagoon systems
- Failed to prepare an adequate and competent preliminary and/or final lagoon design sufficient to satisfy the Debtor's obligations under his CAFO permit
- Most egregiously, prepared a defective irrigation plan and failed to advise the Debtor that there were too many acres under lease to Boardman Tree Farm, LLC to enable the Debtor to install a sufficient number of irrigation pivots to properly dispose of the effluent from a 12,000 head dairy herd.
- Prepared a defective site plan which provided insufficient grade in the dairy stalls and an inadequate flushing system for the waste to into the catch basins

COMPLAINT OBJECTING TO CLAIM, ETC.

- Specified the use of porous decomposed granite for the bedding of the dairy stalls, which absorbed and became saturated with the waste, preventing the waste from flowing into the catch basins
- Specified underground piping of insufficient diameter and flow, so that the underground waste pipes consistently clogged and backed up
- Specified inadequate impermeable surface areas throughout the system, particularly at the sand lane, so that waste regularly came in contact with unprotected soil
- Specified overflow pipes and drains at improper heights so that effluent improperly spilled out of the lagoons and the sand lane areas.
- Failed to adequately perform its construction management and oversight of the Debtor's subcontractors and materialmen to ensure that the construction was undertaken in accordance with Defendant's plans, to the extent those plans were not defective, and in a manner which would enable the Debtor to lawfully operate under his CAFO once the dairy was commissioned.

52.     Due to the development process of the Debtor, this negligence could not have been discovered through the exercise of reasonable diligence prior to April 27, 2016.

53.     As a direct and proximate result of the Defendant IRZ's negligence, as alleged above, the Estate has been generally damaged in the amount of $850,000, representing the amount paid by the Debtor to Defendant IRZ for its worthless services.

54.     Further, as a direct, foreseeable, and proximate cause of the Defendant IRZ's neglience, the Estate has suffered consequential damages in an amount not less $18,8870,000 consisting of the following: (1) direct remediation costs of the excess effluent on the Lost Valley Farm in the approximate amount of $3,500,000, (2) loss of profits from dairy revenues in the approximate amount of $3,000,000, (3) professional fees to counsel and environmental consultants in responding to the ODA's enforcement

COMPLAINT OBJECTING TO CLAIM, ETC.

1  actions in the approximate amount of $200,000, (4) fines assessed by the ODA in the

2  approximate amount of $187,000,and (5) loss of value to the Lost Valley Farm land in

3  the approximate amount of $12,000,000.

4         55.    The two contracts executed by the Debtor in favor Defendant IRZ contain

5  provisions for a partial waiver of damages which purport to limit the recoverable damages

6  the Trustee may recover against Defendant IRZ for its negligence to the sum of

7  $550,000.00.  Plaintiff is informed and believes and on that basis alleges that these

8  partial waiver of damages provisions are void under the Oregon state law doctrine of

9  procedural unconscionability due, among other things,  to their small type face and the

10 fact that the 11/17/15 Agreement is incomplete on its face due to the lack of a description

11 of "SCOPE OF WORK".

12        WHEREFORE, Plaintiff prays for judgment as described below.

13

14                        **FOURTH CLAIM FOR RELIEF**
         (Avoidance of Fraudulent Transfer or Obligation – 11 U.S.C. Section 544(b))

15        56.    Plaintiff re-alleges and incorporates the allegations contained in

16 paragraphs 1 through 55, inclusive.

17        57.    Among the rights and powers of Plaintiff as the duly appointed Chapter

18 11 Trustee in Bankruptcy of the Estate of the Debtor are all of the rights and powers of

19 actual unsecured creditors of the Debtor as of the Petition Date, including without

20 limitation the right to avoid certain transfers or obligations by the Debtor pursuant to the

21 Uniform Avoidable Transaction Act, fka the Uniform Fraudulent Transfer Act.

22        58.    On September 30, 2015 and again on November 17, 2015, the Debtor

23 made two transfers of his intangible rights and/or incurred two obligations in favor the

24 Defendant IRZ, specifically the partial waiver of his potential damages claims for

25 negligence set forth in the "Limitation of Damages" provisions in the Work Order and

26 the 11/17/15 Agreement.

27

28

COMPLAINT OBJECTING TO CLAIM, ETC.

59.     Given the massive liabilities incurred by the Debtor through the negligence of the Defendant IRZ, these transfers or obligations, if enforced, rendered the Debtor in insolvent.

60.     Given the massive liabilities incurred by the Debtor through the negligence of Defendant IRZ, these transfers or obligations, if enforced, left the Debtor with an unreasonably small capital for his business.

61.     The Debtor failed to receive reasonably equivalent value in exchange for these transfers. Plaintiff is informed and believes, and on that basis alleges that the fees charged by the Defendant IRZ to the Debtor were no different than fees charged by professionals who do not seek to limit their liability for their negligence in advance. Further, Plaintiff is informed and believe that Defendant IRZ could have, or did, maintain liability insurance with coverage limits far in excess of its purported limited liability.

62.     There are actual creditors of the Debtor existing as of the Petition Date which had the right to avoid the transfers or obligations encompassed in the "Limitation of Liability" waivers by the Debtor pursuant to the Uniform Avoidable Transaction Act, fka the Uniform Fraudulent Transfer Act. These creditors include without limitation Rabobank, N.A., and the members of the Official Committee of Unsecured Creditors herein.

63.     Plaintiff is therefore entitled to avoid the transfers or obligations encompassed in the partial waiver of damages provisions as fraudulent transfers and preserve these transfers for the benefit of the Estate.

### **PRAYER**

WHEREFORE, the Plaintiff prays for judgment as follows:

1.     For an Order Sustaining the Plaintiff's Objection to Defendant IRZ's Proof of Claim No. 19, and disallowing the claim in full;

2.     For a judgment of general and consequential damages of not less than $18,887,000, according to proof;

COMPLAINT OBJECTING TO CLAIM, ETC.

3.     For a judgment avoiding the transfers or obligations encompassed in the partial waiver of damages provisions in the two agreements between the Debtor and Defendant IRZ as fraudulent transfers and preserving these transfers for the benefit of the Estate;

4.     For attorney's fees and the costs of suit incurred in this adversary proceeding; and

5.     For such other and further relief as is just.

Dated: March 8, 2019            WALTER WILHELM LAW GROUP
                                        A Professional Corporation

                                        and

                                        COLLINS & COLLINS, LLP

                                        and

                                        MacCONAGHY & BARNIER, PLC

                                        /s/ John H. MacConaghy
By: _____
                                        John H. MacConaghy
                                        Attorneys for Randy Sugarman,
                                        Chapter 11 Trustee

COMPLAINT OBJECTING TO CLAIM, ETC.