**3**
WANGER JONES HELSLEY PC
Kurt F. Vote #160496
265 E. River Park Circle, Ste. 310
Fresno, CA 93720
Telephone: (559) 233-4800
Email: kvote@wjhattorneys.com

John H. MacConaghy [083684]
Jean Barnier [231683]
MacCONAGHY & BARNIER, PLC
645 First St. West
Sonoma, CA 95476
Telephone: (707) 935-3205
Facsimile: (707) 935-7051
Email: macclaw@macbarlaw.com

Attorneys for Plaintiff
RANDY SUGARMAN, LIQUIDATING TRUSTEE OF
THE ESTATE OF GREGORY J. TE VELDE

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

# FRESNO DIVISION

| | |
|---|---|
| In re | Case No.: 18-11651-B-11 |
| GREGORY JOHN te VELDE, | Chapter 11 |
| Debtor. | Adv No. 19-01033 |
| | MCN: MB-5 |
| RANDY SUGARMAN, Trustee in Bankruptcy of the Estate of GREGORY J. te VELDE, | **DECLARATION OF RANDY SUGARMAN IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiff. | |
| v. | Date: October 26, 2022 |
| IRZ CONSULTING, LLC; aka IRZ CONSTRUCTION DIVISION, LLC | Time: 11:00 a.m |
| | Place: 2500 Tulare Street |
| | Fresno, CA 93721 |
| Defendant | 5th Floor, Courtroom 13 |
| AND RELATED THIRD PARTY COMPLAINT | Judge: Honorable Rene Lastreto II |

I, Randy Sugarman, state:

1. I am the Liquidating Trustee of the reorganized estate and the Plaintiff in this action. I was originally appointed as Chapter 11 Trustee for this case on September 21, 2018. On November 25, 2019, my Chapter 11 Trustee's Plan of Reorganization was confirmed by the Court. Plan transferred all assets, including litigation claims, into a Liquidating Trust and appointed me Liquidating Trustee, with all of the powers of a Chapter 11 Trustee. I am still serving in that capacity.

2. When I was appointed Chapter 11 Trustee I quickly determined that the situation with the Lost Valley Farm was critical and needed immediate attention, due in large part to the regulatory environment in which the LVF operated.

3. The design and construction of the LVF was highly regulated because its operations had great public health and environmental ramifications.

4. I learned that the Debtor had gone through a lengthy process with a number of public hearings to obtain the required "Confined Animal Feeding Operation" permit ("CAFO") from the Oregon Department of Agriculture and other entitlements from the Oregon Department of Environmental Quality. The reason for this scrutiny is that the LVF was located in an environmentally sensitive area with a relatively high water table, and the Debtor planned to have approximately 30,000 dairy cattle on the site, which would generate tons of manure and liquid waste on a daily basis. For this reason, the Debtor was required to design and construct a sophisticated waste management system which required all effluent from the cattle to remain on a concrete on neoprene lined surface where it would ultimately be processed into fertilizer and remain out of contact with the ground and the ground water.

5. Within a few days of my appointment, I arrived at the LVF and immediately learned that the waste management system was not properly designed or working and was causing

back-ups and spills on a daily basis that, if left unchecked, would contaminate the ground water. These spills also resulted in unsafe working conditions and daily violations of the dairy's CAFO permit.

6. Due to this state of affairs, the Estate's relationship with the ODA was abysmal. The ODA, the Oregon Department of Environmental Quality, and the Oregon Department of Justice had commenced and were prosecuting legal proceedings to revoke the CAFO permit and shut the dairy down.

7. A revocation of the CAFO permit would have required the estate to remove all of the cows, millions of gallons of liquid manure stored in large lagoons, and thousands of tons of solid waste from the dairy within 60 days of revocation. Revocation would have also required demolishing all of the buildings, removing and disposing of the lagoon liners, filling and regrading the lagoons back to the original grade and compaction with outside landfill, and scraping all outside pends back to native soil. My environmental consultant Farallon Consultants estimated that the construction costs of performing this shut down would be approximately $70 million.

8. With new dairy management and my team of professionals, I was able to negotiate a less onerous clean up plan with a deadline of November 1, 2019, rather than the 60 day period specified in the CAFO. This highly detailed clean-up plan was memorialized in the "Order and Mutual Agreement" attached as Exhibit 2 to the Complaint in this action ("OMA"). The tasks required to comply with this modified decommissioning plan and clean up standards were completed by both my management team and the buyer of the LVF after closing. Some of the cost was funded by the Estate, and in a "Post Closing Agreement" authorized by the Court, the Buyer agreed to spend at least $10,000,000 on the required remediation.

9. After the OMA was approved by both the Oregon state court where the ODA's enforcement action were pending, and this Court, the work was completed to the satisfaction of

the ODA and the Estate was released from further liability.

    10.    The direct costs of remediating the flawed design of the LVF are approximately $3,987,000, consisting of construction costs, professional fees, and ODA fines. Additionally, I estimate that the impairment in value of the Lost Valley Farm caused by these problems was approximately $12,000,000. Finally, when allowed to operate, the LVF generated approximately $60,000,000 per annum in gross revenues. I estimate that our lost profits caused by the early termination of operations were at least $3,000,000. The total damages were are seeking are $19,837,000.

    I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, that I have personal first hand knowledge thereto, and that this declaration is executed on September 14, 2022, at Seattle, Washington.

    /s/ Randy Sugarman
    Randy Sugarman

4
DECLARATION OF JOHN H. MacCONAGHY IN SUPPORT OF
PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT