15

MacCONAGHY & BARNIER, PLC
JOHN H. MacCONAGHY, State Bar No. 83684
JEAN BARNIER, State Bar No. 231683
645 First Street West, Suite D
Sonoma, CA 95476
Telephone: (707) 935-3205
Email: macclaw@macbarlaw.com

WANGER JONES HELSELY PC
KURT F. VOTE, State Bar No. 160496
265 East River Park Circle, Ste. 310
Fresno, CA 93720
Telephone: (559) 233-4800
Email: rwalter@wjhattorneys.com

Attorneys for Plaintiff,
RANDY SUGARMAN, Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>GREGORY J. te VELDE,<br><br>            Debtor.<br>_____ | Case No. 18-11651- B<br>(Chapter 11)<br><br>AP Case No. 19-01033-B<br><br>DCN: MB-5 |
| RANDY SUGARMAN, Chapter 11 Trustee in Bankruptcy of the Estate of GREGORY J. te VELDE,<br><br>            Plaintiff,<br><br>v.<br><br>IRZ CONSULTING SERVICES, LLC;<br><br>            Defendant.<br><br>AND RELATED THIRD PARTY COMPLAINT | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: 10/26/22<br>Time: 11:00 a.m.<br>Place: 2500 Tulare St., 5th Flr.<br>      Courtroom 13<br>Hon. Rene Lastreto II |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY JUDGMENT STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1.      UNDER ESTABLISHED PRINCIPLES OF CONTRACT INTERPRETATION,  AS
        APPLIED BY OREGON COURTS, THE LIMITATION OF LIABILITY PROVISIONS
        DO NOT BAR PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT . . . . . . . . . . . 8

2.      UNDER THE PECULIAR FACTS OF THIS CASE, THE LIMITATION OF
        LIABILITY PROVISIONS ARE VOID AS AGAINST PUBLIC POLICY . . . . . . . . . . 11

        A.      The Limitation of Liability Provisions Are Void Because the Services
                Specified in the Two Contracts Affect the Public Welfare. . . . . . . . . . . . . . . . . . 11

        B.      The Limitation of Liability Provision in the 9/30/15 Work Order is
                Void Because That Contract Was Illegal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

3.      THE LIMITATION OF LIABILITY PROVISIONS DO NOT BAR
        ANY OF PLAINTIFF'S CLAIMS FOR RELIEF UNDER THE OREGON DOCTRINE
        OF PROCEDURAL UNCONSCIONABILITY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*A.J. Properties, LLC v. Stanley Black & Decker Inc.*,
　　989 F.Supp.2d 156 (D. Mass 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Anderson v. Ashland Rental, Inc.,*
　　122 Or.App.508, 510 (1993)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Anderson v., Liberty Lobby, Inc.*
　　477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed 2d 202 (1986) . . . . . . . . . . . . . . . 8

*Bagley v. Mt. Bachelor, Inc.,*
　　356 Or. 543, 557- 558 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Celotex Corp. v. Catrett*
　　477 U.S. 317, 323-324, 106 S.Ct. 2548, 2553, 91 L.Ed 2d 265 (1986) . . . . . . . . . . . . . 8

*Creditors' Protective Assn v. Baksay,*
　　32 Or. App. 323 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Estey v. MacKenzie Engineering,*
　　324 Or. 372, 927 P.2d 86 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10,11

*Hoskins v. Inspector, LLC*,
　　154 Or.App.136, 961 P.2d 261 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

*J. Lilly, LLC v. Clearspan Fabric Structures International Inc.*,
　　2020 WL 1855190 (D.C. D. Or. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,14

*Kaste v. Land O'Lake Purina Feeds, LLC,*
　　284 Or.App. 233 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kennan v. Allen*
　　91 F.3d 1275, 1279 (9th Cir. 1996 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mann v. Wetter*,
　　100 Or. App. 184, 187 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Metro Prop. & Cas. v. Harper*,
　　168 Or. App. 358, 369, 7 P.2d 541, 548 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pincetech v. Nolan*,
　　252 Or.App. 42, 285 P.3d 759 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Roberts v. Heating Specialist, Inc.*,
　　2014 WL 3845877 (D.C. D.Or. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10

*Tarin v. County of Los Angeles*,
　　123 F.3d 1259, 1263 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Tokyo Ohka Kogyo America v. Huntsman Propylene Oxide, LLC*,
　　35 F.Supp.3d 1314 (D. Or. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,14

**STATUTES AND RULES**

Federal Rules of Civil Procedure
     Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rules of Bankruptcy Procedure
     Rule 7056 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**TEXTS**

*Restatement.2d. Contracts*. Section 195(2)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

The question presented by this Motion is whether a two provisions in the design and construction contracts executed by the Debtor which purport to limit the Plaintiff Trustee's damages to $550,000 are enforceable under Oregon law.  As will be shown below, the answer to that question is "No".

**FACTUAL AND PROCEDURAL BACKGROUND**

The Debtor Gregory te Velde was an experienced third generation dairyman who owned and operated two large dairies in Tulare County. Realizing the dim long-term water situation in the Central Valley, he sought to expand his operations to the Columbia River basin in Eastern Oregon near the Tillamook facilities.

In mid 2015, te Velde sought to develop a 7500 +/- tree farm, "the Lost Valley Farm", into a state- of-the art dairy capable of supporting a herd of 30,000 cattle.  Unlike the Debtor's Central Valley dairies, the Lost Valley Farm had essentially unlimited access to water.  However, it was located in an environmentally sensitive area subject to intense regulation from various agencies of the State of Oregon.  This required the installation of an extremely effective waste management system.  (Statement of Undisputed Facts 5, 10 & 11).

On September 30, 2015, the te Velde entered into a "Work Order" with a company known as "IRZ Construction Division, an Oregon limited liability company ("ICD")"  to provide what was essentially a feasibility study for the design of the dairy and the qualification for the necessary governmental entitlements.  (SUF 1).  The 9/30/15 "Work Order"  provided that ICD would furnish  the following services to teVelde over a 3 month period:

•        "GPS generated site map with elevations

•        Site Plan with structure, corral, and waste handling component location

•        Preliminary grading plan to be used for mass excavation calculations

•        Preliminary infrastructure plan to include on site drain lines, underground

         water lines and underground power lines

•        Preliminary effluent water flow line plan to include lines from site drainage,

structures, corrals, and effluent handling components to the lagoon system

•    Preliminary lagoon design detailed enough to satisfy CAFO application

requirements..." (Declaration of John MacConaghy, Ex. 1, IRZ bates stamp

p. 1487)

The estimated costs of these services was $100,000. *Id.*

The contract contained the following provision concerning liabilities:

> **Liabilities**: The client agrees to limit ICD's liability to the client and to all construction contractors and subcontractors on the project, due to ICD's or any employee of ICD's negligent acts, errors, or omissions, such that the total aggregate limit of ICD to all of those names shall not exceed $50,000, or the amount of ICD's fees, whichever is less.

See Declaration of John MacConaghy, Ex. , IRZ bates stamp p. 1488).

As of 9/30/15, ICD was not a recognized legal entity in the State of Oregon or anywhere else. According to a recent Westlaw search, it was not organized as an Oregon LLC until 10/31/17; nor has it ever been a licensed contractor in the State of Oregon. (SUF 4).

On November 17, 2015, the parties signed a second agreement. This one was with "IRZ Consulting, LLC (DBA IRZ Construction Division)" ("Consulting") The first section of the Agreement was entitled "Design, Engineer, and Project Management Services for Greg Tevelde Willow Creek Dairy Construction Project November 2015". It set forth the following general obligation on behalf of Consulting:

## PROJECT OBJECTIVE

> ICD will assist the OWNER to make sure that the project is designed and constructed to operate at maximum efficiencies while using quality materials and qualified personnel to minimize costs and achieve a long lasting and sustainable project.

> ICD will act on behalf of Owner and will oversee all tasks associated with the project. These tasks may include but are not limited to, maintaining relationships with all governmental entities and assist in securing all necessary permits and approvals.....Insure that the project is constructed to the quality and standards set forth by the industry... (SUF 6; Decl. MacConaghy, Ex. 4, IRZ bates stamp p.1426).

The Agreement goes on to list 21 specific tasks, including site design, structure design, "Review and engineer all relevant structural designs...", "Review and engineer all relevant civil site design...", and a number of other "design", "engineering", and "construction" tasks. It was

10715.msj.mpa.2.wpd        6

estimated that the process would take 24-28 months. (SUF 6; Decl. MacConaghy, Ex. 4, IRZ bates stamp pp. 1426 - 1434).

The second part of the agreement starting at page 10 of the printed document was entitled "Agreement between Owner and ICD for Services". This contained largely boilerplate and provided for payment on a time incurred basis.

Section 6.01 A of this part contained the following provision:

> **ICD Liability**: It is agreed by OWNER and ICD that ICD may be liable for damages directly caused by negligent acts, errors, and omissions made by ICD. Under no circumstances shall that amount exceed $500,000 or the amount of ICD's fees, whichever is lower. Under no circumstances shall ICD be liable for negligent acts, errors and omissions of OWNER or SUBCONTRACTORS. (SUF 7; Decl. MacConaghy, Ex. 4, IRZ bates stamp p. 1438)

Although it uses the term "ICD", the 11/17/15 Agreement states that it is executed by IRZ Consulting, LLC dba IRZ Construction Division. (*Id*, IRZ bates stamp p. 1440). At the time, Consulting was a duly organized Oregon LLC and a licensed contractor.

Consulting commenced work. TeVelde defaulted in payment. In mid-2017, Consulting walked off the job for nonpayment. Consulting had been paid approximately $850,000, but claimed to be owed $393,000 as of that date. On 9/25/17 they recorded a mechanics lien, and on 9/27/17 they filed their Morrow Superior Court action to enforce the lien and recover $393,000 plus interest at 18%. (See IRZ Main Case Proof of Claim No. 19, attached as Exhibit 1 to the Complaint herein). This action was stayed by the filing of TeVelde's Chapter 11.

After the Chapter 11 was filed, IRZ filed a Proof of Claim for the amounts allegedly owed. On March 8, 2019, the Trustee filed his action objecting to the claim of IRZ and seeking damages for negligence and breach of contract in excess of $18 million.

IRZ has asserted in its Answer that the limitation of liability language set forth above is enforceable against the Estate, Dkt. No. 137 herein, p. 2:1-3

**SUMMARY JUDGMENT STANDARD**

Bankruptcy Rule 7056 and F.R.Civ.P 56(c) require summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that

there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law, *Tarin v. County of Los Angeles* 123 F.3d 1259, 1263 (9th Cir. 1997). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett* 477 U.S. 317, 323-324, 106 S.Ct. 2548, 2553, 91 L.Ed 2d 265 (1986).

That burden may be met by "showing" — that is, pointing out to the court — that there is an absence of evidence to support the nonmoving party's case, *id* at 325, 106 S.Ct. at 2554. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts that show a genuine issue for trial, *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed 2d 202 (1986).

In deciding a motion for summary judgment, the Court is not obligated "to scour the record in search of a genuine issue of triable fact. [The Court relies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Kennan v. Allen* 91 F.3d 1275, 1279 (9th Cir. 1996). Only genuine disputes — where the evidence is such that a reasonable trier of fact could return a decision for the nonmoving party will properly preclude the entry of summary judgment, *Anderson, supra,* at 477 U.S. p. 248, 106 S.Ct. at 2510. F.R.Civ.P. 56(g) provides that when summary judgment as to the entire case is inappropriate, the Court "...may enter an order stating any material fact – including an item of damages or other relief –that is not genuinely in dispute and treating the fact as established in the case."

Here, as will be shown below, a number of the cases adjudicating the enforceability of these limitation of liability clauses did so on a Motion for Summary Judgment. This issue is amenable for resolution by summary adjudication.

## ARGUMENT

1.      **UNDER ESTABLISHED PRINCIPLES OF CONTRACT INTERPRETATION, AS APPLIED BY OREGON COURTS, THE LIMITATION OF LIABILITY PROVISIONS DO NOT BAR PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT**

Under Oregon law, these limitation of liability/damages clauses are analyzed on two separate criteria. The first is contract interpretation to determine whether the language in question

covers the claims at issue.

The leading case in Oregon on the enforceability of liability/damages limitations using this criterium is *Estey v. MacKenzie Engineering*, 324 Or. 372, 927 P.2d 86 (1996). In that case the Plaintiff contracted with the Defendant, a licensed PE, to perform a pre-sale property inspection. After the Plaintiff purchased the property he discovered that he would be obligated to pay $340,000 to repair defects not picked up by the Defendant. He then sued for breach of contract and negligence. It its defense, the Defendant relied on a limitation of liability provision in the contract which stated, "The liability of MEI and the liability of its employees are limited to the Contract Sum [i.e., $200.00]." The trial court granted summary judgment for the Defendant, but the Oregon Supreme Court reversed, stating at p. 376:

> Defendants argue that the clause at issue in this case clearly and unequivocally expresses the parties' intent that defendants' liability for negligence be limited to the contract sum and, therefore, it is unenforceable. Defendants further argue that they did not assume a duty of public service by entering into the contract and, therefore, principles of public policy do not justify the validation of the clause.

> In *K-Lines Inc c. Roberts Motor Co.*, 273 Or. 242, 248, 541 P.2d 1378. (1975), this court held, "Agreements to exonerate a party from liability or to limit the extent of the party's liability for tortious conduct are not favorites of the courts but neither are they automatically voided. The treatment courts accord such agreements depends upon the subject and terms of the agreement and the relationship of the parties.

The *Estey* court concluded that in that particular case it would not enforce the limitation of liability for two reasons, stating at p. 379:

> First, the word "liability" standing alone, is less encompassing than the broad disclaimer found in *Layman,* which was held not to apply against a negligence claim. In this case, plaintiff might have reasonably interpreted "liability" to refer only to liability arising from breach of contract, or from a reasonable failure to discover latent defects, or from property damage resulting from the review itself. Given the reasonable possibility of such limited interpretations, we cannot conclude that the parties "clearly and unequivocally" intended a broader interpretation that would have required plaintiff to bear the risk of defendants' negligence.

> Second,...in the context of having to make such an important decision [buy a house], plaintiff would most likely not have understood the limitation of liability clause to effectively immunize defendants from liability for negligently rendering a flawed report.

1

>Defendants' attempt to characterize the contract as a "high-risk, low
>cost" transaction does not persuade us that plaintiff, a lay consumer,
>should bear the risk of the alleged negligence of a licensed
>professional engineer.

2

3     *Estey* was followed in *Hoskins v. Inspector, LLC*, 154 Or.App.136, 961 P.2d 261 (1998),

4     where the Court refused to enforce a more detailed waiver of liability in a home inspection report.

5     Applying Oregon law, a Federal Court declined to enforce an even broader clause in *Roberts v.*

6     *Heating Specialist, Inc.*, 2014 WL 3845877 (D.C. D.Or. 2014), The Defendant in that case

7     installed a new boiler in a building owned by a Chapter 11 Trustee.  There was a subsequent

8     mercury leak.  The EPA made a claim for $124,000 in clean up costs.  The Trustee then sued the

9     heating contractor.  The defendant relied on the following release language contained in the

10    service contract:

11

12    >Liability Disclaimer – in no event shall The Heating Specialist Inc.
>be liable for any incidental or consequential damages resulting from
>the use, misuse, or inability to use the products and services of the
>Company.  This exclusion applies regardless of whether such
>damages are sought based on breach of warranty, breach of contract,
>negligence, strict liability in tort, or any other legal theory.  Should
>The Heating Specialist Inc. be found liable for any such damages,
>they shall be limited to the purchase price of the equipment.

13

14

15

16    The District Court concluded that the most reasonable interpretation of this language is

17    that it only protected the contractor from claims arising out of the customer's use or misuse of the

18    boiler, and it did not apply to environmental contamination caused by the defendant.  Another case

19    voiding a limitation of liability clause based on *Estey* is *Kaste v. Land O'Lake Purina Feeds, LLC,*

20    284 Or.App. 233 (2017), where the Plaintiff was entitled to recover breach of contract damages up

21    to the limit in the contract, but also unlimited tort damages.

22    Turning to our case, the  limitation of liability clauses used by both ICD and Consulting do

23    expressly use the  word "negligence."  However, in the reverse of *Estey* and *Hoskins*, there is

24    nothing in either  contract that releases ICD/Consulting  from liability for general and

25    consequential damages for breach of contract.   Here, Consulting undertook a contractual

26    obligation "...to make sure that the project is designed and constructed to operate a maximum

27    efficiencies while using quality materials and qualified personnel to minimize costs and achieve a

28    long lasting and sustainable project."  (Decl. MacConaghy, Ex. 4, IRZ bates stamp p.1426).

There was an implied covenant in the ICD contract that the services listed would be performed competently.  The disclaimer language inserted by ICD and Consulting purports to limit recovery for negligence only, not breach of contract.  (Decl. MacConaghy, Ex. 1, IRZ bates stamp p. 1488; Ex. 4, IRZ bates stamp p. 1436)  Under the *Estey, Hoskins,* and *Roberts* cases, the failure of the disclaimer language to expressly reference a breach of contract cause of action allows that claim to proceed unimpeded.

**2.     UNDER THE PECULIAR FACTS OF THIS CASE, THE LIMITATION OF LIABILITY PROVISIONS ARE VOID AS AGAINST PUBLIC POLICY**

**A.     The Limitation of Liability Provisions Are Void Because the Services Specified in the Two Contracts Affect the Public Welfare**

Oregon courts have repeatedly held that the general rule in that jurisdiction is that an injured party is entitled to *all* damages which flow from a breach of contract; e.g., *Metro Prop. & Cas. v. Harper*, 168 Or. App. 358, 369, 7 P.2d 541, 548 (2000). Thus, "...agreements to limit liability are not favored." *Mann v. Wetter*, 100 Or. App. 184, 187 (1990). However, as noted in *Estey*, supra, they are not void *per se.*

One instance where they are void is contracts affecting the public welfare. This rule is contained in *Restatement.2d. Contracts*. Section 195(2)(b):

> A term exempting a party from tort liability for harm caused negligently is unenforceable on grounds of public policy if ( b) the term exempts one charged with a duty of public service from liability to one that duty is owed for compensation for breach of that duty.

Oregon courts have adopted this principle of the Restatement, *Bagley v. Mt. Bachelor, Inc.*, 356 Or 543, 557- 558 (2014) [When "one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation," then "exemption from the consequences of negligence is illegal." See also, *Anderson v. Ashland Rental, Inc.,* 122 Or.App.508, 510 (1993).

A closely analogous out of state case is *A.J. Properties, LLC v. Stanley Black & Decker*

*Inc*. 989 F.Supp.2d 156 (D. Mass 2013). There, a party under a contract requiring him to perform environmental remediation was sued and sought to enforce a waiver of remedies. The Court held that the waiver was unenforceable because his contractual duties were a public service.

There is a strong public policy component to the services ICD/Consulting were to perform for te Velde. The CAFO was issued only after a period of intense public scrutiny due to the fragility of the ground water system and other environmental concerns. See Declaration of Randy Sugarman. It is clear from the text of the ICD/Consulting contracts, that protecting groundwater and other environmental compliance was a key objective (and responsibility of both te Velde and ICD/Consulting. Given these paramount public welfare concerns, ICD/Consulting could not limit their liability for their own errors and omissions.

**B.      The Limitation of Liability Provision in the 9/30/15 Work Order is Void Because That Agreement Was An Illegal Contract With An Unlicensed, Non-existent Entity**

The second public policy concern of the State of Oregon the 9/30/15 Work Order violated was the policy against construction contracts by unlicensed entities, see *Pincetech v. Nolan*, 252 Or.App. 42, 285 P.3d 759 (2012). Likewise an entity that is not duly organized or incorporated has no power to contract or be sued, *Creditors' Protective Assn v. Baksay*, 32 Or. App. 323 (1978).

Here, ICD was an unlicensed, non-existent legal entity at the time it executed the "Work Order" with the Debtor. It was thus an illegal contract which cannot be enforced against the Estate.

**3.      THE LIMITATION OF LIABILITY PROVISIONS DO NOT BAR ANY OF PLAINTIFF'S CLAIMS FOR RELIEF UNDER THE OREGON DOCTRINE OF PROCEDURAL UNCONSCIONABILITY**

Independent from the contractual interpretation theory of the *Estey* line of cases, these limitation of liability clauses are regularly attacked and voided under something called "procedural unconscionability". We normally think of "unconscionability" as a substantively oppressive consumer contract; e.g., a consumer allows a lien on his car to secure payment over

time on a defective television.  "Procedural unconcionability" is something different.

The doctrine is discussed in *Tokyo Ohka Kogyo America v. Huntsman Propylene Oxide, LLC*, 35 F.Supp.3d 1314 (D. Or. 2014):

> ...an agreement may be either procedurally or substantively unconscionable.  Generally speaking, procedural unconscionability refers to the circumstances surrounding the adoption of the provision at issue and substantive unconscionability refers to the fundamental fairness of the provision itself [citation].

Turning to Oregon law, the Court continued:

> Under Oregon law, procedural unconscionability focuses on the factors of oppression and surprise. [citation].  Oregon courts explain these factors as : Oppression exists when there is inequality of bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice.  Surprise involves the question whether the allegedly unconscionable terms  were hidden from the party seeking to avoid them. [citation].

The Court went on to conclude that "surprise" was involved there because, the language was "... a boilerplate damages limitation attached to a Credit Application without any bargaining or discussion and without the seller calling the buyer's attention to its terms.""  The Court further noted at the Credit Application containing the limitation was executed two years before the specific sales order involving the defective goods.  Based on these facts, the Court concluded that the limitation of damages provision was unenforceable.

An example of a recent case enforcing a limitation of liability is *J. Lilly, LLC v. Clearspan Fabric Structures International Inc.*, 2020 WL 1855190 (D.C. D. Or. 2020).   The Plaintiff in that case entered into a contract to lease and have built a commercial greenhouse to grow cannabis in Oregon.  The total lease payments were around $280,000 and the cost of the greenhouse was $290,000.  The construction contract for the greenhouse contained the following provisions:

> **Mutual Waiver of Consequential Damages.**  The Lessee agrees to waive all claims against Clearspan for all consequential damages that may arise out of our relate to this Agreement including all consequential damages that may arise out of or relate to this Agreement including but not limited to the Lessee's loss of use of the property, all rental expenses incurred, loss of services of employees, or loss of reputation....

The clause goes on to likewise limit the damages of the lessor against the lessee.

The greenhouse failed, allegedly destroying the cannabis crop. The lessee sued for breach of contract, including $5.4 Million for loss of the crop. The District Court held that the limitation of liability clause was enforceable, stating at p. *4:

> A limitation of liability provision is enforceable under Oregon law if the provision (1) was bargained for, (2) was called to the other party's attention; or (3) is conspicuous. *Anderson v. Ashland Rental, Inc.,* 122 Or.App.508, 510 (1993); *Atlas Mut. Ins. V. Moore Dry Kiln*, 38 Or App. 111, 114 (1979).

The Court then went into a detailed analysis of the structure of the contract and concluded that waiver was conspicuous. It noted that it was contained in a separate article of the contract entitled INSURANCE TO PROTECT THE PROJECT AND WAIVER OF SUBROGATION. It further reasoned that the waiver was a stand alone section of the contract with its title "Mutual Waiver of Consequential Damages" in bold face and the same type font of the next of the document. It should also be noted that the *Lilly* Court seemed hard on the Plaintiff because the commodity at issue was marijuana and the argument of lack of "conspicuousness" was not raised until oral argument.

The limitation of liability clauses in the instant case are procedurally unconscionable under these principles. They are contained on boilerplate, pre-printed forms without separate initials or interlineation, so they were not "bargained for" or "called to the other party's attention." In the case of the 11/17/15 Agreement the language is contained at the very back of the contract in an article labeled "Miscellaneous". The section at issue is not labeled "Waiver" or "Limitation" as was in the case in *J.Lilly*; rather, it is labeled "ICD Liability" and begins with the language "It is agreed by Owner and ICD that ICD may be liable for damages directly caused by the negligent acts, errors, and omissions made by ICD". Only then does the limitation on amount appear. It is not "conspicuous". It is therefore unenforceable under the Oregon doctrine of "procedural unconscionability".

## CONCLUSION

Consulting should be compelled to defeat the Plaintiff Trustee's claims on their merits in

the unlikely event it can do so.  The artificial, one-sided limitation of damages provisions in the two contracts at issue are unenforceable under Oregon law.  The Plaintiff Trustee is entitled to summary adjudication of this point.  Partial summary judgment should be entered accordingly.

Dated: September 14, 2022          Respectfully submitted,

MacCONAGHY & BARNIER, PLC


_____/s/_____ John H. MacConaghy_____
By: John H. Macconaghy
*Attorneys for Plaintiff,*
*Randy Sugarman, Liquidating Trustee*