<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                ) Case No.  18-11651-B-11
                                     )
GREGORY JOHN te VELDE,               )
                                     )
            Debtor.                  )
                                     )
_____)
                                     )
RANDY SUGARMAN, Ch. 11 Trustee,      ) Adv. Proceeding No. 19-1033
                                     ) (Consolidated by Order (Doc.
            Plaintiff,               ) #94) for trial purposes only)
                                     )
     v.                              ) DCN:    MB-5
                                     )
IRZ CONSULTING, LLC (aka) IRZ        )
Construction Division LLC,           ) Date:   October 26, 2022
                                     ) Time:   11:00 a.m.
            Defendant.               ) Place:  U.S. Courthouse
                                     )         2500 Tulare Street
                                     )         Courtroom 13, 5th Floor
_____)         Fresno, California
                                     ) Judge:  Hon. René Lastreto II
IRZ CONSULTING, LLC                  )
(aka) IRZ Construction Division      )
LLC,                                 )
                                     )
            Third-Party Plaintiff,   )
                                     )
     v.                              )
                                     )
U.S. FARM SYSTEMS; 4 CREEKS,         )
INC., JOHN FAZIO (dba Fazio          )
Engineering); DARI-TECH, INC.;       )
LASER LAND LEVELING, INC.; MAAS      )
ENERGY WORKS, INC.; GEORGE           )
CHADWICK (dba George Chadwick        )
Consulting); VALMONT NORTHWEST,      )
INC.; NUCOR BUILDING SYSTEMS         )
UTAH LLC,                            )
                                     )
            Third-Party Defendants.  )
                                     )
_____)


**REPORT AND RECOMMENDATION ON PLAINTIFF RANDY SUGARMAN'S
SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**

1

1

2  John MacConaghy, MacCONAGHY & BARNIER, PLC, Sonoma, CA, for
   chapter 11 trustee Randy Sugarman, Plaintiff.
3
   Benjamin P. Tarczy, MILLER NASH LLP, Portland, OR, for IRZ
4  Consulting, LLC, Defendant/Third-Party Plaintiff.

5

6  RENÉ LASTRETO II, Bankruptcy Judge:

7

8                          **INTRODUCTION**

9       Summary judgment should not be granted unless the moving

10 party shows both that there is no genuine dispute as to *any*

11 material fact and that movant is entitled to judgment as a

12 matter of law.[1] Civ. Rule 56 (Rule 7056) (emphasis added). Here,

13 the plaintiff chapter 11 liquidating trustee asks for partial

14 summary judgment declaring that the limitation of damages

15 provisions contained in the underlying Work Order and Contract

16 are unenforceable for a variety of reasons. The defendant

17 disagrees, insisting that the limitations on damages must be

18 upheld.

19      As outlined below, the court recommends this motion for

20 partial summary judgment be GRANTED IN PART and DENIED IN PART.

21

22                      **PROCEDURAL HISTORY**

23      Chapter 11 liquidating trustee Randy Sugarman ("Plaintiff")

24 moves for partial summary judgment against IRZ Consulting, LLC

25

26      [1] Unless otherwise indicated, references to: (i) "Civ. Rule" will be to
   the Federal Rules of Civil Procedure; (ii) "Rule" will be to the Federal
   Rules of Bankruptcy Procedure; (iii) "FRE" will be to the Federal Rules of
27 Evidence; (iv) "LBR" will be to the Local Rules of Practice for the United
   States Bankruptcy Court, Eastern District of California; and (v) all chapter
28 and section references will be to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

("Defendant" or "IRZ"), declaring that the limitation of damages provisions contained in the September 30, 2015 *Work Order* ("Work Order") and the November 17, 2015, *Design, Engineer, and Project Management Services for Greg Tevelde Willow Creek Dairy Construction Project November 2015* ("Contract") purporting to limit Plaintiff's damages to $550,000.00 are unenforceable. Pl.'s Mot. Summ. J., Doc. #440.

Defendant responded, objecting to Plaintiff's evidence and opposing summary judgment. Def.'s Evid. Objs. & Mem. P. & A., Docs. #465 & #467.

Plaintiff replied and submitted his own evidentiary objections.[2] Pl.'s Reply & Evid. Objs. & Mem. P. & A., Docs. #482 & #484.

This motion for summary judgment was filed on 42 days' notice as required by Local Rule of Practice ("LBR") 7056-1 and in conformance with Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56.

This motion for summary judgment was filed on 42 days' notice as required by LBR 7056-1 and in conformance with Rule 7056 and Civ. Rule 56. This matter was originally scheduled to be heard on October 26, 2022. Notice, Doc. #441. The court took the matter under submission and indicated that it would subsequently issue a report and recommendation to the District Court. Civ. Mins. (Oct. 26, 2022), Doc. #521.

These are the court's findings and recommendations for *de novo* consideration by the District Court as to Plaintiff's

____

[2] The court granted Plaintiff's request for an extension of time to October 15, 2022, to file his reply to Defendant's opposition. Order, Doc. #491.

1  motion for partial summary judgment. The rulings on the
2  evidentiary objections are included at the end of the report.

3

4                          **JURISDICTION**

5       The United States District Court for the Eastern District
6  of California has jurisdiction of this adversary proceeding
7  under 28 U.S.C. § 1334(b) because this adversary proceeding
8  arises in and is related to a case under title 11 of the United
9  States Code. Under 28 U.S.C. § 157(a), the District Court has
10 referred this matter to this court. Part of this proceeding –
11 the claim objection - is "core" under 28 U.S.C. § 157(b)(2)(B).
12 Furthermore, the District Court denied an early motion to
13 withdraw the reference under 28 U.S.C. § 157(c)(1) and allowed
14 this court to supervise discovery, rule on non-dispositive
15 motions, and issue a Report and Recommendation for *de novo*
16 review to the District Court on dispositive motions.[3] Venue is
17 proper in this district pursuant to 28 U.S.C. §§ 1408 and
18 1409(a).

19

20                          **BACKGROUND**

21      On September 30, 2015, Gregory te Velde ("Debtor") and "IRZ
22 Construction Division, an Oregon limited liability company"
23 ("ICD") executed the Work Order providing that ICD would provide
24 certain construction design services to Debtor for the "Willow
25 Creek Dairy" on a time and material basis. Work Order,
26 Docs. #444, *Ex. 1*, #469, *Ex. A*. The price was not to exceed

27
          _____
28       [3] *See Order Denying Defendant's Motion to Withdraw Reference*, Doc. #162;
   *cf.* Civ. Mins. (Apr. 28, 2021), Doc. #198

$100,000.00. *Id.* The Work Order was signed by Debtor and Fred Ziari, as an agent of ICD. *Id.* at 3.

The Work Order provided that ICD would furnish the following services to Debtor over a three-month period:

- GPS generated site map with elevations
- Site Plan with structure, corral, and waste handling component location
- Preliminary grading plan to be used for mass excavation calculations
- Preliminary infrastructure plan to include on site drain lines, underground water lines and underground power lines
- Preliminary effluent water flow line plan to include lines from site drainage, structures, corrals, and effluent handling components to the lagoon system
- Preliminary lagoon design detailed enough to satisfy CAFO application requirements
- Preliminary cost estimates for project (already provided)
- Estimated schedule to construct project (already provided)
- All information provided by OWNER and others are assumed to be accurate.

*Id.* at 1. The estimated cost of these services was $100,000. *Ibid.* The Work Order contained the following provision concerning liabilities:

**Liabilities:** The client agrees to limit ICD's liability to the client and to all construction contractors and subcontractors on the project, due to ICD's or any employee of ICD's negligent acts, errors, or omissions, such that the total aggregate limit of ICD to all of those named shall not exceed $50,000, or the amount of ICD's fees, whichever is less.

*Id.* at 2.

On or about November 17, 2015, Debtor and Ziari executed the Contract, which provided that Defendant would perform 21 separate construction related tasks for the Willow Creek Dairy. Contract, Docs. #444, *Ex. 4*, #469, *Ex. B.*

The second part of the agreement, starting at page 10, was entitled "AGREEMENT BETWEEN OWNER AND ICD FOR SERVICES" and includes Article 6, which contains the following limitation on damages in Section 6.01:

> A. **ICD LIABILITY:** It is agreed by OWNER and ICD that ICD may be liable for damages directly caused by negligent acts, errors, and omissions made by ICD. Under no circumstances shall that amount exceed $500,000 or the amount of ICD's fees, whichever is lower. Under no circumstances shall ICD be liable for negligent acts, errors and omissions of OWNER or SUB-CONTRACTORS.

*Id.* at 13. Although the Contract expressly refers to ICD, it is signed by Ziari as President of "IRZ Consulting, LLC (d/b/a IRZ Construction Division through Wayne Downey as Director of Construction)[,]" which is a duly licensed Oregon contractor and a duly organized Oregon limited liability company. *Id.* at 15.

Debtor defaulted on his obligation to timely pay for Defendant's services. Downey Decl., Doc. #468, ¶ 9. On July 12, 2017, ICD and Defendant stopped their work on the project. *Ibid.* Defendant recorded an Oregon form *Construction Claim of Lien* on the project, alleging that it "furnished labor, equipment, material, services, supervision, and plans, drawings and surveys actually used in the construction of improvements" on the subject real property ". . . commencing on or about September 30, 2015." *Id.* at ¶ 10; Constr. Claim of Lien, Doc. #469, *Ex. C.* On November 2, 2017, Defendant filed a *Complaint (Construction Lien Foreclosure; Breach of Contract; Quantum Meruit)* against Debtor and others, seeking the principal sum of $393,476.81 for the cost of "labor, equipment, material, services, supervision, plans, drawings, and surveys . . . used for the benefit of the

Property" from "September 30, 2015, through August 3, 2017." *Id.*, *Ex. D* at 2. The complaint includes the Work Order and Contract as exhibits.

Debtor filed chapter 11 bankruptcy on April 26, 2018. Pet., Bankr. Case No. 18-11651 ("Bankr.") Doc. #1. On June 4, 2018, Defendant filed its Proof of Secured Claim in the amount of $347,057.56, attaching its mechanics' lien complaint as an exhibit. *See* Bankr. Claim 19.

On February 11, 2019, Plaintiff sold the property subject to Defendant's claim of lien under an *Order Authorizing Sale of Real Property Free and Clear of Liens*. Order, Doc. #432, *Ex. 3* (Bankr. Doc. #1607). The court directed Plaintiff to disburse most of the sales proceeds of the Lost Valley Farm to various parties in interest; however, the court directed Trustee to hold back funds to provide "adequate protection" to Defendant on account of its disputed secured claim. Stip. Order, *Id.*, *Ex. 4* (Bankr. Doc. #1799).

Plaintiff filed this instant action against Defendant on March 8, 2019. The complaint alleges claims for (1) an objection to Claim 19; (2) damages for breach of contract; (3) damages for negligence; and (4) avoidance of fraudulent transfers. Compl., Doc. #1.

Defendant has asserted in its Answer that the limitation of liability language set forth above is enforceable against the estate. Answer, Doc. #137. Plaintiff now seeks a determination that the limitation of liability language is unenforceable. Pl.'s Mot. Summ. J., Doc. #440.

///

## DISCUSSION

### I. Summary Judgment Standard

Civ. Rule 56, *as incorporated by* Rule 7056, applies in adversary proceedings. Under Civ. Rule 56(a), summary judgment should be granted only if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.

When considering a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Civ. Rule 56(c); *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are

irrelevant that governs." *Ibid.*

The movant may not argue that its evidence is the most persuasive or "explain away" evidence unfavorable to its defenses; rather, it must show that there are no material facts in dispute, or which can be reasonably resolved by a fact finder. *Id.* at 250-51, 106 S. Ct. at 2511; *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) ("Summary judgment is not appropriate" if a reasonable jury *could* find in the plaintiff's favor.) (emphasis added).

As the movant, the burden of proof is on Plaintiff. The court must draw all reasonable inferences in the light most favorable to the non-moving party, and therefore in favor of denying summary judgment. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513-14. Further, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Hutchins v. TNT/Reddaway Truck Line, Inc.*, 939 F. Supp. 721, 723 (N.D. Cal. 1996).

If a summary judgment motion is properly submitted, the burden shifts to the opposing party to rebut with a showing that there is a genuine issue of material fact. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002). "The nonmoving party 'may not rely on denials in the pleadings but must produce specific evidence . . . to show that the dispute exists.'" *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008), quoting *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

Ultimately, the court must grant summary judgment if the movant shows that the record, taken as a whole, could not lead a

rational trier of fact to find for the nonmoving party as to any
fact that might affect the outcome of the suit under the
governing law, and the nonmovant does not meet their burden of
proof to refute the movant's claims.

### II. Limitations on Liability for Breach of Contract

Under the principles of contract interpretation as applied
by Oregon courts, Plaintiff argues that the liability limitation
provisions do not bar its claims for breach of contract. Pl.'s
Mem. P. & A., Doc. #445.

Plaintiff relies on *Estey v. MacKenzie Eng'g*, 324 Or. 372,
927 P.2d 86 (1996), *rev'g* 137 Or. App. 1, 902 P.2d 1220 (1995),
*reh'g granted*, 322 Or. 425, 909 P.2d 161 (1996), as the leading
case in Oregon on the enforceability of liability/damages
limitations. In that case, the plaintiff contracted with the
defendant, a licensed professional engineer, to perform a pre-
sale property inspection. *Id.* at 374, 927 P.2d at 87. After
purchasing the property, the plaintiff discovered that he would
be obligated to pay $340,000 to repair defects not discovered by
the defendant. As a result, the plaintiff sued for breach of
contract and negligence. In its defense, the defendant relied on
a limitation of liability provision in the contract, which
stated, "[t]he liability of [the defendant] and the liability of
its employees are limited to the Contract Sum [i.e., $200.00]."
*Ibid.* The trial court granted summary judgment for the
defendant, but the Oregon Supreme Court reversed, stating:

> Defendants argue that the clause at issue in
> this case clearly and unequivocally expresses
> the parties' intent that defendants' liability

for negligence be limited to the contract sum and, therefore, it is unenforceable. Defendants further argue that they did not assume a duty of public service by entering into the contract and, therefore, principals of public policy do not justify the validation of the clause.

In *K-Lines Inc. v. Roberts Motor Co.*, 273 Ore. 242, 248, 541 P.2d 1378 (1975), this court held: "Agreements to exonerate a party from liability or to limit the extent of the party's liability for tortious conduct are not favorites of the courts but neither are they automatically voided. The treatment courts accord such agreements depends upon the subject and terms of the agreement and the relationship of the parties."

*Id.* at 375-76, 927 P.2d at 88. The *Estey* court concluded that it would not enforce the limitation on liability for two reasons:

First, the word "liability," standing alone, is less encompassing than the broad disclaimer found in *Layman*, which was held not to apply against a negligence claim. In this case, plaintiff might have reasonably interpreted "liability" to refer only to liability arising from breach of contract, or from a reasonable failure to discover latent defects, or from property damage resulting from the review itself. Given the reasonable possibility of such limited interpretations, we cannot conclude that the parties "clearly and unequivocally" intended a broader interpretation that would have required plaintiff to bear the risk of defendants' negligence.

Second, . . . [i]n the context of having to make such an important decision [buy a house], plaintiff most likely would not have understood the limitation of liability clause to effectively immunize defendants from liability for negligently rendering a flawed report. Defendants' attempt to characterize the contract as a "high-risk, low cost" transaction does not persuade us that plaintiff, as a lay consumer, should bear the risk of the alleged negligence of a licensed professional engineer.

*Id.* at 378-79, 927 P.2d at 89-90.

Following the *Estey* decision, the Oregon Appellate Court decided *Hoskins v. Inspector LLC*, 154 Or. App. 136, 141, 961 P.2d 261, 263 (1998) (refusing to enforce a more detailed waiver of all liability for any damages in a home inspection report), citing *Estey*, 324 Or. at 376, 927 P.2d at 88; *Yogman v. Parrott*, 325 Or. 358, 364, 937 P.2d 1019, 1022 (1997).

Plaintiff also cites to an unpublished decision in which a Federal Court applied Oregon law and declined to enforce a broader clause. *Roberts v. Heating Specialist Inc.*, No. 3:12-cv-01820-SI, 2014 U.S. Dist. LEXIS 107022 (D. Or. Aug. 5, 2014). The defendant in that case installed a new boiler in a building owned by a chapter 11 trustee. After a subsequent mercury leak, the EPA made a claim for $124,000 in clean-up costs. The chapter 11 trustee sued the heating contractor. The defendant relied on the following release language in the service contract:

> Liability Disclaimer — in no event shall The Heating Specialist Inc. be liable for any incidental or consequential damages resulting from the use, misuse, or inability to use the products and services of the Company. This exclusion applies regardless of whether such damages are based on breach of warranty, breach of contract, negligence, strict liability in tort, or any other legal theory. Should The Heating Specialist Inc. be found liable for any such damages, they shall be limited to the purchase price of the equipment.

*Id.* at *42.

The District Court concluded that the most reasonable interpretation of this language is that it only protected the contractor from claims arising out of the customer's use or misuse of the boiler, and it did not apply to environmental contamination caused by the defendant. *Id.* at *49.

Another case cited by Plaintiff in which a court voided a limitation of liability clause is *Kaste v. Land O'Lakes Purina Feed, LLC*, 284 Or. App. 233, 392 P.3d 805 (2017) (plaintiff entitled to recover breach of contract damages up to the limit in the contract, but also unlimited tort damages).

Relying on the above cases, Plaintiff argues that breach of contract damages are available because the limitation of liability clauses used by ICD and Defendant expressly use the word "negligence." In the reverse of *Estey* and *Hoskins*, there is nothing in either contract that releases ICD/Defendant from liability for general and consequential damages for breach of contract. Here, Defendant undertook a contractual obligation "to make sure that the project is designed and constructed to operate at maximum efficiencies while using quality materials and qualified personnel to minimize costs and achieve a long lasting and sustainable project." Contract, Doc. #444, *Ex. 4*, at 1. Therefore, Defendant had an implied covenant to perform the services listed competently. The disclaimer language inserted by ICD and Defendant purports to limit recovery for "negligent acts, errors, and omissions" only, not breach of contract. *Id.* at 13. So, under *Estey*, *Hoskins*, and *Roberts*, Plaintiff argues that the failure to include disclaimer language to expressly reference a breach of contract cause of action allows Plaintiff's breach of contract cause of action here to proceed unimpeded. Pl.'s Mem. P. & A., Doc. #445.

In response, Defendant maintains that a plain reading of the Work Order and Contract indicate that both exculpatory clauses contemplated limiting the damages for a cause of action

based on its alleged acts and omissions, which includes breach of contracts damage. Def.'s Mem. P. & A., Doc. #467. Attempting to distinguish *Estey*, Defendant notes that it only addressed a negligence cause of action, stating that "[w]e hold that the clause does not limit defendants' liability for negligence." *Estey*, 324 Or. at 374, 927 P.2d at 87. Thus, Plaintiff's reliance on the *Estey* court's reasoning regarding a "party's liability for tortious conduct" is misplaced with respect to a breach of contract cause of action. *Kaste* is also inapplicable, says Defendant, because it held that the liability limitation clause at issue did limit the liability for plaintiff's breach of contract cause of action. *Kaste*, 284 Or. App. at 240, 392 P.3d at 809.

Applying *Roberts*, Defendant asserts that the release provision is "subject to the ordinary rules of contract construction and interpretation." Def.'s Mem. P. & A., Doc. #467; *cf. Roberts*, 2014 U.S. Dist. LEXIS 107022 at *15, quoting *Patterson v. Am. Med. Sys., Inc.*, 141 Or. App. 50, 53, 916 P.2d 881, 882 (1996). Thus, the court must, if possible, construe the agreements so as to give effect to all of its provisions. *Id.*

Under this standard, Defendant pronounces that the "negligent acts, errors, or omissions" language does not explicitly refer to only the negligence cause of action and instead must be interpreted that the parties intended the clauses to encompass all causes of action resulting from such alleged "acts, errors, or omissions."

*///*

Plaintiff's breach of contract cause of action in the complaint alleges:

> Some time after 9/30/15 and 11/17/15, as applicable, Defendant IRZ breached its obligations under the Work Order and the 11/17/15 Agreement by failing to provide competent services to the Debtor consistent with the skill, diligence, and expertise of licensed contractors providing wastewater management and irrigation construction services in the Pacific Northwest, and by billing the Debtor for services incompetently performed.

Compl., Doc. #1 at ¶ 29. But with respect to the negligence cause of action, the complaint alleges:

> Sometime after 9/30/15, Defendant IRZ breached its duty of care to the Debtor by failing to provide competent services to the Debtor, consistent with the skill, diligence, and expertise of licensed contractors providing wastewater management and irrigation construction services in the Pacific Northwest, and by billing the Debtor for services incompetently performed.

*Id.* at ¶ 51. Twelve identical, specific acts and omissions follow as the bases for Defendant's breach of duty. Defendant insists that these are identical to the types of acts or omissions contemplated in the exculpatory clauses because the court must construe the agreements to give effect to all of their provisions. Def.'s Mem. P. & A., Doc. #467. If the parties had intended to limit liability only to the negligence cause of action, such intent would have been expressed in the parties' agreements, says Defendant. Instead, the parties mutually bargained to limit damages from "acts, errors, and omissions made by ICD[,]" which "clearly" encompass both negligence and contract causes of action if based upon the same alleged acts, errors, and/or omissions. *Id.*

15

1    In reply, Plaintiff emphasizes that negligence is
2  specifically referenced in the parties' agreements. The phrasing
3  is "negligent acts, errors, and omissions[,]" and the terms
4  "breach of contract", "fraud", "recission", "unfair business
5  practices", or "any and all causes of action of any kind or
6  nature" are not included or mentioned. Pl.'s Reply, Doc. #482;
7  *see also* Work Order & Contract, Docs. #444, *Exs. 1 & 4*, #469,
8  *Exs. A-B*. Thus, under *Estey*, Defendant cannot expand the
9  limitation of liability language by implication and there is no
10 monetary limit for breach of contract, says Plaintiff. *Id.*

11   The court agrees with Plaintiff here. Based on a plain
12 reading of the agreements, "negligent" is used as an adjective
13 that modifies or describes the type of "acts, errors, or
14 omissions" to which the parties agreed to limit liability. Thus,
15 the reasonable interpretation of the two clauses at issue is
16 that they are limited in scope to encompass only "acts, errors,
17 or omissions" relating to negligence. Based on this language, we
18 cannot conclude that the parties "clearly and unequivocally"
19 intended for that language to be broader and encompass all types
20 of acts, errors, or omissions.

21   As the drafter of the limitation on liability language, why
22 specify a limit for "negligent" acts, errors, and omissions if
23 the parties intended to limit liability with respect to all
24 acts, errors, and omissions? If Defendant is correct, then
25 giving effect "to all of the contract provisions" would create
26 an ambiguity that would be construed against the drafter. The
27 components of that ambiguity were just described above.
28 *///*

But the court need not reach that threshold, here. The language in both the Work Order and Contract, as reasonably applied, is limited to negligent acts, errors, and omissions. It will be up to the Plaintiff at trial to present proof of the alleged breaches of contract.

For this reason, the court recommends summary judgment be GRANTED IN PART as to a determination that the effect of the limitation of liability clauses in the Work Order and the Contract do not limit Plaintiff's breach of contract cause of action. Since this language refers specifically to negligent acts, errors, and omissions, Plaintiff's breach of contract claim can proceed uninhibited.

### III. Public Policy

Second, Plaintiff seeks a determination that the two limitation of liability provisions are void as against public policy because the services specified in the contracts affect the public welfare. *Id.*, citing *Restatement.2d. Contracts*, Section 195(2)(b) ("A term exempting a party from tort liability for harm caused negligently is unenforceable on grounds of public policy if (b) the term exempts one charged with a duty of public service from liability to one that duty is owed for compensation for breach of that duty.").

In support, Plaintiff cites *Metro. Prop. & Cas. v. Harper*, 168 Or. App. 358, 7 P.3d 541 (2000). In *Harper*, the appellate court reversed and remanded a directed verdict on a subrogee's contract claim, which also alleged negligence. However, the *Harper* court cautioned that "the amount of damages sought must

1  be consistent with the theory pleaded." *Harper*, 168 Or. App. at

2  369, 7 P.3d 549.

3      Plaintiff also cites *Bagley v. Mt. Bachelor, Inc.*, 356 Or.

4  543, 340 P.2d 27 (2014) (en banc). The actual holding in *Bagley*

5  was the Oregon Supreme Court finding the exculpatory clause

6  unconscionable, thereby reversing the trial court's ruling on

7  the defendant's motion for summary judgment and the appellate

8  court's affirmance of that ruling. The court did not rely on

9  public policy in reversing the summary judgment, but it did note

10 that substantive unconscionability "focuses on whether the

11 substantive terms contravene the public interest or public

12 policy." *Bagley*, 356 Or. at 555, 340 P.2d at 36. *Bagley* is

13 discussed further below in the section on unconscionability.

14     On the issue of application of the exculpatory provisions,

15 Plaintiff cited *Mann v. Wetter*, 100 Or. App. 184, 785 P.2d 1064,

16 *rev. den.*, 309 Or. 645, 789 P.2d 1387 (1990). *Mann* involved a

17 wrongful death in a diving accident at a diving school in which

18 the decedent signed a release before attending the school.

19 Notably, the appellate court stated that "there are no public

20 policy considerations that prevent a diving school from limiting

21 liability for its own negligence" because the school "does not

22 provide an essential public service . . ." *Id.* at 187, 785 P.2d

23 at 1066. The holding in *Mann* was to reverse the trial court's

24 summary judgment for defendant after finding an ambiguity in the

25 exculpatory clause. The ambiguity was whether the clause was

26 meant to apply to employees and agents of a national diving

27 organization in which the diving school was a member, or those

28 of a specific diving school. *Id.* at 189, 785 P.2d at 1067-68.

The *Mann* court went on to make two important statements regarding contract construction under Oregon law. First, construction of a contract is a question of law for the court except when the language of the contract is ambiguous. *Id.* at 188, 785 P.2d at 1067. Second, whether a contract is ambiguous is a question of law for the court. *Ibid.* ("A contract provision is ambiguous if it is capable of more than one sensible and reasonable interpretation; it is unambiguous if its meaning is clear enough to preclude doubt by a reasonable person."), citing *Deerfield Commodities, Ltd. v. Nerco, Inc.*, 72 Or. App. 305, 317, 696 P.2d 1096, 1104-05, *rev. den.*, 299 Or. 313 (1985).

Lastly, Plaintiff cites to *A.J. Props., LLC v. Stanley Black & Decker, Inc.*, 469 Mass. 581, 15 N.E. 3d 198 (2014). There, a party under a contract requiring him to perform environmental remediation was sued and sought to enforce a waiver of remedies. The Massachusetts District Court held that the waiver of liability for future harm caused intentionally, recklessly, or with gross negligence was unenforceable as a matter of public policy. However, that case focused on release of liability for future intentional torts that did not exist at the time the release was executed.

Defendant responds that the clauses are not against public policy. Def.'s Mem. P. & A., Doc. #467. Defendant claims *Bagley* supports the enforceability of the two clauses at issue here. The *Bagley* court held that "[t]here is nothing inherently bad about a contract provision which exempts one of the parties from liability. The parties are free to contract as they please, unless to permit them to do so would contravene the public

interest." *Bagley*, 356 Or. at 559, quoting *K-Lines v. Roberts Motor Co.*, 273 Or. 242, 248, 541 P.2d 1378 (1975) (liability limitation not against public policy "[w]hen the parties are business concerns dealing in a commercial setting.").

Defendant distinguishes *A.J. Props.* from the case at bar in that it analyzed only Massachusetts law, not Oregon law, and the release clause at issue referred only to intentional torts. Def.'s Mem. P. & A., Doc. #467, citing *A.J. Props.*, 989 F. Supp. 2d at 163. Further, the only holding in *A.J. Props.* was "a release of liability for future harm caused intentionally, recklessly, or with gross negligence is unenforceable as against public policy." *Id.* Since this holding is entirely unrelated to the facts at hand, Defendant contests its applicability and insists that Plaintiff has cited no authority or evidence to suggest the clauses here are against public policy.

Plaintiff replies that the clauses cannot be enforced because they affect the public welfare. Pl.'s Reply, Doc. #482. Since Defendant provided "design and engineering services" to build a dairy that required a Confined Animal Feeding Operation ("CAFO") permit issued by the Oregon Department of Agriculture to, in part, protect local ground water, and Defendant's alleged mismanagement of the project resulted in the need for environmental remediation, Plaintiff insists that the agreements affected the public welfare.

However, the underlying Work Order and Contract contemplated services performed by Defendant for Debtor. Both parties were commercial businesses operating in a commercial setting. The dairy on which Defendant performed its services did

require a CAFO permit, and the issuance of the CAFO permit did affect the public welfare. But the CAFO permit was between the Debtor and the State of Oregon. Debtor's obligations to the State of Oregon are not Defendant's obligations.

Here, nothing in the Work Order or the Contract suggest that Defendant's agreements with Debtor were anything other than two commercial businesses entering into commercial agreements. There is no evidence Defendant has a duty of public service to either the State of Oregon or Plaintiff.

Therefore, genuine issues of material fact exist with respect to whether the two clauses at issue are against public policy. On this record, public policy does not appear to be implicated that would prevent Defendant from limiting liability for its own negligence. For this reason, the court recommends that summary judgment be DENIED as to this count.

**IV. Illegal Contract with an Unlicensed, Non-Existent Entity**

Next, Plaintiff argues that the September 30, 2015 Work Order is void because ICD is an unlicensed entity. Oregon has a public policy concern in preventing unlicensed, non-existent construction companies from entering into construction contracts. Pl.'s Mem. P. & A., Doc. #445, citing *Pincetech v. Nolan*, 252 Or. App. 42, 285 P.3d 759 (2012). Further, an entity that is not duly organized or incorporated has no power to contract or be sued. *Creditors Protective Ass'n v. Baksay*, 32 Or. App. 223, 225-26, 573 P.2d 766, 767 (1978).

Insisting that ICD was an unlicensed, non-existent legal entity at the time it executed the Work Order with Debtor,

Plaintiff maintains that the Work Order was an illegal contract which cannot be enforced against the estate. Pl.'s Mem. P. & A., Doc. #445.

Defendant responds that *Creditors Protective Ass'n* relies on statutory law that was repealed in 1987 and has not had precedential effect for over thirty years. Def.'s Mem. P. & A., Doc. #467. Further, Defendant claims to have been a registered entity at all relevant times. *Id.*, citing Downey Decl., Doc. #468, ¶ 6. Both the Work Order and the Contract provide that Defendant's construction division, ICD, would perform the tasks set forth in those documents. *Id.;* Work Order & Contract, Docs. #444, *Exs. 1 & 4*, #469, *Exs. A-B.* ICD is the construction division of Defendant, and it is not nor ever has been a separate legal entity from Defendant. ICD currently functions as a registered Assumed Business Name of Defendant, which is a duly licensed Oregon contractor and duly organized Oregon limited liability company at the time the Work Order and Contract were entered into and at all times thereafter.

Even accepting, *arguendo*, that the Work Order was entered into by a different entity than Defendant, ORS § 648.135 allows for a party to cure any alleged incapacity by complying with ORS § 648.007 by registering its assumed business name at any time. Def.'s Mem. P. & A., Doc. #467, citing *Pac. Coast Recovery Serv., Inc. v. Johnston*, 219 Or. App. 570, 577, 184 P.3d 1127, 1131 (2008). Plaintiff concedes that ICD is and has been a registered Assumed Business Name of Defendant since 2017, so any defect in ICD's status at the time the Work Order was executed in 2015 is cured under ORS § 648.135.

Plaintiff reiterates that the signator to the Work Order was not a licensed contractor, and therefore the Work Order was an illegal contract. Pl.'s Reply, Doc. #482. Plaintiff claims that Defendant's arguments to the contrary are barred by the Oregon parol evidence rule, and Plaintiff incorporates the argument from its reply filed in support of its *First Motion for Partial Summary Judgment* (MB-3) and contends that Defendant's arguments are barred by the Oregon parol evidence rule. *Id.*; *see also* Pl.'s Reply., Doc. #473. Namely, (1) Defendant's effort to substitute a new contracting party into the Work Order is barred by the parol evidence rule (ORS § 41.740), (2) Defendant cannot avail itself of the "mistake" exception to the parol evidence rule, and (3) Defendant is judicially estopped from claiming that the work it allegedly performed did not require an Oregon contractor's license. *Id.*

As stated in the court's contemporaneous ruling on Plaintiff's first motion for partial summary judgment (MB-3), ORS § 41.740 incorporates ORS § 42.220, which states "[i]n construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting." This language "permits the judge to consider circumstances under which the instrument was executed and the relative situations of the parties." *United States Nat'l Bank v. Guiss*, 214 Or. 563, 593, 331 P.2d 865, 879 (1958).

Plaintiff's evidence seems to prove that IRZ Consulting, LLC has been licensed by the Oregon Construction Contractors

Board ("CCB") since 2011. Def.'s CCB License, Doc. #427, *Ex. 5*. The November 2015 Contract identifies the contracting parties as Debtor TeVelde and IRZ Construction Division "a division of IRZ Consulting LLC." Contract, *Id.*, *Ex. 6* (Docs. #444, *Ex. 4*, #469, *Ex. B*). Defendant's position on ICD's status is not ideal. The earlier Work Order between the parties identified ICD as "IRZ Construction Division, an Oregon limited liability company." Work Order, Docs. #444, *Ex. 1*, #469, *Ex. A*. But ICD apparently was not a limited liability company when the Work Order was signed. ICD's CCB License, *Ex. 2*.

There is a genuine factual dispute on this material issue: is ICD an independent entity performing activities requiring a contractor's license or an assumed business name and division of Defendant that is legally performing services under Defendant's contractor's license? Since the record itself contains conflicting information, it cannot be said that "no reasonable jury" would find one classification more believable than the other.

The answer to the disputed factual issue may impact the admission of evidence concerning at least the Work Order under the parol evidence rule. But the court need not reach that issue since factual disputes exist as to the license status of ICD. The same is true for Plaintiff's judicial estoppel argument raised in reply. Whether Defendant is barred by judicial estoppel from claiming an Oregon contractor's license was unnecessary will depend, in part, on ICD's license status. *See also*, *New Hampshire v. Maine*, 542 U.S. 742, 753 (2001) ("It may be appropriate to resist application of judicial estoppel when a

party's prior position was based on inadvertence or mistake.")

Another impediment to finding an absence of a material factual dispute are the terms of the "integration clauses" in both the Work Order and Contract. Work Order, Doc. #463, *Ex. A* at 5; Contract, *id.*, *Ex. B* at 21. As relevant here, the provisions state: "This writing is the full and complete agreement between the parties *concerning ICD's services to (**CLIENT/OWNER**) for the above services and work"* (emphasis added). So, the subject of the integration is limited to ICD's services to Debtor Te Velde for those "services and work" described in both agreements. The integration clause by its terms is limited to ICD's performance under the agreements. The clause includes nothing more.

Since it is disputed whether ICD was performing unlicensed contractor activities, or whether it was doing business under Defendant's valid contractor's license, the court recommends this motion be DENIED IN PART as to this count.


**V. Unconscionability**

Lastly, Plaintiff argues that the limitation of liability provisions do not bar Plaintiff's claims for relief under the doctrine of procedural unconscionability. Pl.'s Mem. P. & A., Doc. #445.

"[A]n agreement may be either procedurally or substantively unconscionable. Generally speaking, procedural unconscionability refers to the circumstances surrounding the adoption of the provision at issue and substantive unconscionability concerns the fundamental fairness of the provision itself." *Tokyo Ohka*

*Kogyo Am., Inc. v. Huntsman Propylene Oxide LLC*, 35 F. Supp. 3d 1316, 1332 (D. Or. 2014), citing *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002) & *Bagley*, 258 Or. App. at 310, 310 P.3d at 702-04. The *Tokyo Ohka Kogyo Am.* court continued:

> Under Oregon law, procedural unconscion-ability focuses on the factors of oppression and surprise. *Bagley*, 310 P.3d at 702. Oregon courts explain these factors as: Oppression exists when there is inequality of bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice. Surprise involves the question whether the allegedly unconscionable terms were hidden from the party seeking to avoid them. *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 137, 227 P.3d 796, 806 (Or. Ct. App. 2010).

*Id.* at 1333 (concluding a limitation of damages provision was unconscionable because it was "a boilerplate damages limitation attached to a Credit Application without any bargaining or discussion and without the seller calling the buyer's attention to its terms.").

Another example cited by Plaintiff is the unpublished decision in *J. Lilly*, in which a plaintiff entered into a contract to lease and have built a commercial greenhouse to grow cannabis in Oregon. *J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*, No. 3:18-cv-01104-HZ, 2020 U.S. Dist. LEXIS 64340 (D. Or. Apr. 13, 2020). The total lease payments were around $280,000, and the cost of the greenhouse was $290,000. *Id.* at **2-3. The construction contract for the greenhouse contained the following provisions:

> **Mutual Waiver of Consequential Damages.** The Lessee agrees to waive all claims against [the defendant] for all consequential damages that

26

> may arise out of or relate to this Agreement
> including but not limited to the Lessee's loss
> of use of the property, all rental expenses
> incurred, loss of service of employees, or
> loss of reputation. [The defendant] agrees to
> waive all claims against the Lessee for all
> consequential damages, other than loss of
> profits related to the Project, that may arise
> out of or relate to this Agreement including
> but not limited to the loss of business, loss
> of financing, principal office overhead, or
> loss of reputation. The provisions of this
> Section shall survive any termination of this
> Agreement.

*Id.* at **5-6. After the greenhouse failed and allegedly destroyed a cannabis crop, the lessee sued for breach of contract, including $5.4 million for loss of the crop. The *J. Lilly* District Court held that the liability clause was enforceable under the following rule:

> A limitation of liability provision is
> enforceable under Oregon law if the provision
> (1) was bargained for, (2) was called to the
> other party's attention; or (3) is
> conspicuous. *Anderson v. Ashland Rental, Inc.*,
> 122 Or. App. 508, 510, 858 P.2d 470 (1993);
> *Atlas Mut. Ins. V. Moore Dry Kiln*, 38 Or. App.
> 111, 114, 589 P.2d 1134 (1979).

*Id.* at **11-12. After analyzing the contract and concluding that the waiver was conspicuous because it was a standalone section in a brief, seven-page contract, and it was positioned and printed in a size and typeface that a reasonable person should have noticed. *Id.* at *13.

In contrast to *J. Lilly*, Plaintiff here argues that the limitation of liability provisions here are procedurally unconscionable under the same principles. Pl.'s Mem. P. & A., Doc. #445. The provisions are contained on boilerplate, pre-printed forms without separate initials or interlineation, so

they were not "bargained for" or "called to the other party's attention," says Plaintiff. In the November 17, 2015 Contract, the language is contained at the very back of the contract in an article labeled "Miscellaneous." Further, the section is labeled "ICD Liability" rather than "Waiver" or "Limitation" as was the case in *J. Lilly*. Since the clauses at issue are not conspicuous, Plaintiff contends that they are unconscionable.

Defendant responds that Plaintiff has failed to provide any evidentiary support that the limitation of liability clauses are unconscionable. Def.'s Mem. P. & A., Doc. #467. Defendant notes that the *J. Lilly* court held that a waiver with bold and capitalized heading was conspicuous. Further, the court found that "Plaintiff has produced no evidence to create a question of fact that the parties were of unequal bargaining power, Plaintiff had a lack of meaningful choice, or that the consequential damages waiver was hidden in a manner that caused surprise." *J. Lilly*, 2020 U.S. Dist. LEXIS 64340 at *15.

Additionally, the underlying case leading to the *Estey* decision in which Plaintiff relied above held that the limitation of liability clause in its contract was conspicuous even without bold typeface or capital letters. *Estey*, 137 Or. App. at 5, 902 P.2d at 1222 *rev'd on other grounds*, 324 Or. 372, 927 P.2d 86.

Here, the clauses at issue have a bold heading. The Work Order is only 3 pages long, and the Contract is only 14 pages long. Each is clearly conspicuous such that a reasonable person against which it is to operate ought to have noticed it with even a cursory review of each contract, argues Defendant. Def.'s

Mem. P. & A., Doc. #467. Since the Plaintiff has submitted no evidence to suggest that the provisions were not bargained for, that Plaintiff had a lack of meaningful choice, or that the consequential damages waiver was hidden in a manner that caused surprise, Defendant says the motion must be denied. *Id.*

Plaintiff replies that Defendant has presented no evidence that the limitation of liability language was "bargained for." Pl.'s Reply, Doc. #482. Since it was a boilerplate contract, how could it have been bargained for? Further, Defendant has failed to present any evidence that the clauses at issue were called to the Debtor's attention, such as deposition testimony from Debtor, or a declaration by Mr. Downey or Mr. Ziari. Thus, the provisions are void as procedurally unconscionable, contends Plaintiff.

In *Bagley*, cited above with respect to public policy, an experienced snow boarder signed a waiver releasing all but intentional misconduct on the part of the ski resort. *Bagley*, 356 Or. at 545-47, 340 P.2d at 30-31. The snow boarder suffered paralysis as a result of his injuries on a ski jump and subsequently sued the ski resort. The ski resort raised the release the snow boarder signed as an affirmative defense.

"Unconscionability is assessed at the time of contract formation and it applies to contract terms rather than contract performance." *Bagley*, 356 Or. at 555, 340 P.2d at 35. The *Bagley* court went on to describe procedural unconscionability, which focuses on oppression and surprise. Oppression exists when there is unequal bargaining power between the parties resulting in no real opportunity to negotiate the terms of the contract in the

absence of a meaningful choice. The issue of surprise is whether the terms were hidden or obscured from the vantage point of the party seeking to avoid them. Examples of surprise would include ambiguous language or very fine print. *Id.*

On the other hand, oppression is found if there is gross inequality of bargaining power, a "take-it-or-leave-it" bargaining stance or involving a consumer transaction. *Id.* Interestingly, the *Bagley* court noted the difficulty in upholding an exculpatory clause when the party seeking the enforcement of a clause is providing an essential public service. The Oregon Supreme Court noted that heavily regulated industries, such as banks, hospitals, nursing homes, or similar businesses provide the essential public service. *Bagley*, 356 Or. at 569, 340 P.2d at 47.

Plaintiff also relies on *Anderson v. Ashland Rental, Inc.*, 122 Or. App. 508, 858 P.2d 470 (1993). In this case, the plaintiff, a painter, was injured on a scaffold rented from the defendant. The holding in *Anderson* reversed summary judgment for the defendant. The defendant claimed that the disclaimer of liability was conspicuous. However, the court of appeal noted that the relevant contract was a typographical nightmare and the exculpatory clause "barely legible." *Id.* at 511, 858 P.2d at 471.

Notably, in *Anderson*, the court's analysis of whether the relevant exculpatory clause was conspicuous relied largely on Oregon's version of the Uniform Commercial Code ("UCC"). The court applied the UCC definition even though the contract at issue was not governed by the UCC. *Anderson*, 122 Or. App. at

513, 858 P.2d at 472 (Deits, P. J., dissenting). ORS § 71.2010

defines the term "Conspicuous" as follows:

> "Conspicuous," with reference to a term, means so written, displayed or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> > (A) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font or color to the surrounding text to the same or lesser size; and
> >
> > (B) Language in the body of the record or display in larger type than the surrounding text, or in contrasting type, font or color in the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the language.

ORS § 71.2010(j).

The disclaimers of liability here do begin with bold type, which suggests that they are conspicuous. The language is not buried in the middle of a wordy paragraph. It is also unambiguous since the only party protected by the disclaimer is ICD, the construction division of Defendant. As discussed, Plaintiff has the burden on a summary judgment motion to show the "oppression" or "surprise" under Oregon law.

That said, in one post-*Bagley* case, the Oregon Court of Appeals held that a disclaimer in a contract can limit tort liability if it was either bargained for, brought to the party's attention, or conspicuous. *Am. Wholesale Prods. v. AllState Ins. Co.*, 288 Or. App. 418, 426, 406 P.2d 163, 168 (2017) (citing *Anderson*, 122 Or. App. at 510, 858 P.2d at 470). The *Am.*

*Wholesale* court affirmed a summary judgment for a defendant when the lease agreement with the plaintiff tenant precluded the defendant's liability "for any loss or damage caused by water damage" in an action brought against the landlord and the landlord's insurer. The *Am. Wholesale* court went on to note that the intention must be clearly and unequivocally expressed. *Id.* at 423, 406 P.2d at 166. In applying that standard, courts can consider both "the language of the contract" and the "possibility of a harsh or inequitable result that would fall on one party if the other party was immunized from the consequences of its own negligence." *Ibid.*

The post-*Bagley* courts still cite an early Oregon Supreme Court decision discussed above: *K*-Lines, 273 Or. 242, 541 P.2d 1378. A court's treatment of a clause (agreements limiting a party's liability for tortious conduct) depends upon the subject and terms of the agreement and the relationship of the parties. *Id.* at 248, 541 P.2d at 1382. That latter consideration focuses on the nature of the party's obligations and expectations under the contract. *Estey*, 324 Or. at 376-77, 927 P.2d at 86.

There is a genuine issue of material fact as to whether the limitation of liability provisions are conspicuous, called to the other party's attention, or bargained for. Based on the record, the court is unable to clearly determine that the clauses are procedurally unconscionable. For this reason, the court recommends this motion be DENIED IN PART as to Plaintiff's unconscionability argument.

///

///

**CONCLUSION**

The court recommends GRANTING IN PART Plaintiff's second motion for summary judgment as to the effect of the limitation of liability clauses in the Work Order and the Contract. Since this language refers specifically to negligent acts, errors, and omissions only, and not breach of contract, Plaintiff's breach of contract claim can proceed.

The court recommends DENYING IN PART the remainder of Plaintiff's second motion for summary judgment. Genuine issues of material fact exist with respect to (1) whether the Work Order and Contract affect the public welfare, (2) whether ICD was performing unlicensed contractor's services, and (3) whether the limitation of liability provisions are procedurally unconscionable due to their lack of conspicuousness, and whether they were bargained for, or called to the Debtor's attention. The rulings on evidentiary objections are attached below. The court will issue a subsequent order setting deadlines for objections to this proposed report and recommendation to be heard in District Court before the Honorable Ana de Alba.

**Dated**: Nov 10, 2022                    **By the Court**

*René Lastreto II*

**René Lastreto II, Judge**
**United States Bankruptcy Court**

33

## RULINGS ON EVIDENTIARY OBJECTIONS

### Defendant's Objections to the Declaration of Randy Sugarman

| Material Objected To: | Grounds for Objections: | Court's Ruling: |
|---|---|---|
| 1. "The design and construction of the LVF was highly regulated because its operations had great public health and environmental ramifications." Sugarman, Decl., Doc. #442 at ¶ 3, Lines 2:12-14. | 1a. Irrelevant. FRE 401, 403.<br><br>1b. Lacks personal knowledge. FRE 602.<br><br>1c. Improper lay-witness testimony. FRE 701. | 1a. Overruled as to relevance. This statement is relevant to whether the exculpatory clauses are void as against public policy.<br><br>1b. Sustained as to Plaintiff's lack of personal knowledge.<br><br>1c. Sustained as to improper lay-witness testimony. |
| 2. "I learned that the Debtor had gone through a lengthy process with a number of public hearings to obtain the required "Confined Animal Feeding Operation" permit ("CAFO") from the Oregon Department of Agriculture and other entitlements from the Oregon Department of Environmental Quality. The reason for this scrutiny is that the LVF was located in an environmentally sensitive area with a relatively high water table, and the Debtor planned to have approximately 30,000 dairy cattle on the site, which would generate tons of manure and liquid waste on a daily basis. For this reason, the Debtor was required to design and construct a sophisticated waste management system which required all effluent from the cattle to remain on a concrete and neoprene lined surface where it would ultimately be processed into fertilizer and remain out of contact with the ground and the ground water." *Id.* at ¶ 4, Lines 2:14-25. | 2a. Irrelevant. FRE 401, 403.<br><br>2b. Lacks personal knowledge. FRE 602.<br><br>2c. Improper lay-witness testimony. FRE 701. | 2a. Overruled as to relevance. This statement is relevant to whether the exculpatory clauses are void as against public policy.<br><br>2b. Sustained as to Plaintiff's lack of personal knowledge.<br><br>2c. Sustained as to improper lay-witness testimony. |

| Material Objected To: | Grounds for Objections: | Court's Ruling: |
|---|---|---|
| 3. "Within a few days of my appointment, I arrived at the LVF and immediately learned that the waste management system was not properly designed or working and was causing back-ups and spills on a daily basis that, if left unchecked, would contaminate the ground water. These spills also resulted in unsafe working conditions and daily violations of the dairy's CAFO permit." *Id.* at ¶ 5, Lines 2:26-28, 3:1-4. | 3a. Irrelevant. FRE 401, 403.<br><br>3b. Lacks personal knowledge. FRE 602.<br><br>3c. Improper lay-witness testimony. FRE 701. | 3a. Overruled as to relevance. The status of the waste management system is relevant to whether the exculpatory clauses are void as against public policy.<br><br>3b. Overruled. Plaintiff has personal knowledge of his experiences upon arriving at LVF in his capacity as acting chapter 11 trustee.<br><br>3c. Sustained as to Plaintiff's conclusions as to what will happen if such back-ups and spills were to be "left unchecked," the safety of working conditions, and alleged violations of the dairy's CAFO permit. |
| 4. "Due to this state of affairs, the Estate's relationship with the ODA was abysmal. The ODA, the Oregon Department of Environmental Quality, and the Oregon Department of Justice had commenced and were prosecuting legal proceedings to revoke the CAFO permit and shut the dairy down." *Id.* at ¶ 6, Lines 3:4-8. | 4a. Irrelevant. FRE 401, 403.<br><br>4b. Argumentative. | 4a. Overruled as to relevance. Related proceedings to revoke the CAFO permit by the ODA, the Oregon Department of Environmental Quality, and the Oregon Department of Justice are relevant for determining whether the exculpatory clauses are void as against public policy.<br><br>4b. Overruled. |

///

///

///

///

///

| Material Objected To: | Grounds for Objections: | Court's Ruling: |
|---|---|---|
| 5. "A revocation of the CAFO permit would have required the estate to remove all of the cows, millions of gallons of liquid manure stored in large lagoons, and thousands of tons of solid waste from the dairy within 60 days of revocation. Revocation would have also required demolishing all of the buildings, removing and disposing of the lagoon liners, filling and regarding the lagoons back to the original grade and compaction with outside landfill, and scraping all outside pends back to native soil. My environmental consultant Faralloon Consultants estimated that the construction costs of performing this shut down would be approximately $70 million." *Id.* at ¶ 7, Liners 3:9-16. | 5a. Irrelevant. FRE 401, 403.<br><br>5b. Lacks personal knowledge of the reason for regulation. FRE 602.<br><br>5c. Inadmissible hearsay with no exception. FRE 801, 802.<br><br>5d. Improper lay-witness testimony. FRE 701. | 5a. Overruled. Related proceedings to revoke the CAFO permit by the ODA, the Oregon Dept. of Environmental Quality, and the Oregon Dept. of Justice are relevant for determining whether the exculpatory clauses are void as against public policy.<br><br>5b. Overruled. Plaintiff has personal knowledge of his experiences upon arriving at LVF in his capacity as acting chapter 11 trustee.<br><br>5c. Sustained as to Faralloon Consultants' estimate because it is hearsay.<br><br>5d. Sustained as to improper lay-witness testimony regarding the effect of revoking the CAFO permit. |
| 6. "The direct costs of remediating the flawed design of the LVF are approximately $3,987,000, consisting of construction costs, professional fees, and ODA fines. Additionally, I estimate that the impairment in value of the Lost Valley Farm caused by these problems was approximately $12,000,000. Finally, when allowed to operate, the LVF generated approximately $60,000,000 per annum in gross revenues. I estimate that our lost profits caused by the early termination of operations were at least $3,000,000. The total damages were are seeking are $19,837,000." *Id.* at ¶ 10, Lines 4:2-9. | 6a. Irrelevant. FRE 401, 403.<br><br>6b. Lacks personal knowledge of the value of lost profits. FRE 602.<br><br>6c. Improper lay-witness testimony. FRE 701. | 6a. Overruled.<br><br>6b. Overruled. Plaintiff has personal knowledge of his experiences upon arriving at LVF in his capacity as acting chapter 11 trustee.<br><br>6c. Sustained as to improper lay-witness testimony. |

Def.'s Evid. Objs., Doc. #465.

**Defendant's Objections to the Declaration of John H. MacConaghy**

| Material Objected To: | Grounds for Objections: | Court's Ruling: |
|---|---|---|
| 1. "Attached to this Declaration and labeled Exhibit 2 is a correct copy of the Westlaw database printout indicating that IRZ Construction Division, LLC was not organized as an Oregon limited liability company until May 31, 2017." MacConaghy Decl., Doc. #443 at ¶ 3, Lines 2:13-16. | 1a. Parol evidence rule.<br><br>1b. Best evidence rule. FRE 1002-04. | 1a. Sustained as to lack of personal knowledge of IRZ Construction Division, LLC's and/or IRZ Consulting, LLC's status as an Oregon limited liability company.<br><br>1b. Sustained. The Westlaw corporate records and business registration search result is not an official source and cannot be used in place of an original writing, recording, or photograph, and therefore cannot be used to prove its content. |
| 2. "Attached to this Declaration and labeled Exhibit 3 is a correct copy of the "license search" database maintained by the Oregon Construction Contractors Board indicating that there is no record of IRZ Construction Division, LLC ever being a licensed contractor in the State of Oregon." *Id.* at ¶ 4, Lines 2:17-21. | 2a. Lacks personal knowledge of licensure of ICD. FRE 602.<br><br>2b. Best evidence rule. FRE 1002-04. | 2a. Sustained as to lack of personal knowledge of IRZ Construction Division, LLC's and/or IRZ Consulting, LLC's status as an Oregon limited liability company.<br><br>2b. Overruled. The printout from the Oregon Construction Contractors' license database can be used to prove whether "IRZ Construction Division LLC" is a licensed contractor. |

*Id.*

///

///

///

**Plaintiff's Objections to the Declaration of Wayne Downey**

| Material Objected To: | Grounds for Objections: | Court's Ruling: |
|---|---|---|
| 1. "Defendant entered into a short-form, 3-page work order (the "Work Order") with Gregory John te Velde. . ." Downey Decl., Doc. #462 at ¶ 2, Lines 2:18-19. | 1a. Parol evidence rule.<br><br>1b. Best evidence rule. FRE 1002-04. | 1a. Overruled. License status of ICD is still in dispute. Also, the integration clause may have limited effect. Docs. #444; #469.<br><br>1b. Overruled. A copy of the Work Order has been filed as an exhibit, which can be used to prove its contents. |
| 2. "The Work Order did not call for Defendant to arrange, undertake, offer to undertake, or submit a bid to construct, alter, repair, add to, subtract from, improve, inspect, move, wreck or demolish any structure for Debtor." *Id.* at ¶ 2, Lines 2:23-25. | 2a. Parol evidence rule.<br><br>2b. Best evidence rule. FRE 1002-04. | 2a. Overruled. Integration clause may have limited effect. Docs. #444; #469.<br><br>2b. Sustained, but a copy of the Work Order has been filed. Docs. #444; #469. |
| 3. "The Contract provided that Defendant act as "Project Manager" to perform review, oversight, design, and engineering tasks, with Debtor to act as General Contractor for the project. The Contract did not call for Defendant to arrange, undertake, offer to undertake, or submit a bid to construct, alter, repair, add to, subtract from, improve, inspect, move, wreck or demolish any structure for Debtor." *Id.* at ¶ 3, Lines 2:1-5. | 3a. Parol evidence rule.<br><br>3b. Best evidence rule. FRE 1002-04. | 3a. Overruled. Statement is not inconsistent with terms of contract.<br><br>3b. Overruled. No question raised as to authenticity of duplicate. Otherwise, sustained. |

Pl.'s Evid. Objs., Doc. #484.

///

///

///

///

| Material Objected To: | Grounds for Objections: | Court's Ruling: |
|---|---|---|
| 4. The Work Order mistakenly names "IRZ Construction Division," as opposed to the correctly named "IRZ Construction Division (ICD) (a division of IRZ Consulting LLC)" named in the Contract, as party to the Work Order." *Id.* at ¶ 5, Lines 2:8-10. | 4a. Lacks foundation/personal knowledge. FRE 602.<br><br>4b. Parol evidence rule.<br><br>4c. Best evidence rule. FRE 1002-04. | 4a. Overruled. Wayne Downey is the Director of Construction at IRZ and signed as Director on behalf of ICD in the Contract. Mr. Downey has personal knowledge as director and as IRZ's agent to know about the accuracy of the Work Order.<br><br>4b. Overruled. ICD license status is a disputed fact. Also, integration clause may have limited effect.<br><br>4c. Overruled. No genuine question as to authenticity. FRE 1003 |
| 5. "At all times, the parties understood the Work Order and Contract to be between Defendant and Debtor." *Id.* at ¶ 5, Lines 2:10-11. | 5. Lacks foundation/personal knowledge. FRE 602. | 5. Overruled as to IRZ's understanding because Wayne Downey, as director and as an agent of IRZ, has personal knowledge of IRZ's understanding of the Work Order and Contract. Sustained as to Debtor's understanding of the Work Order and Contract. |

*Id.*

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

    The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ___, via the U.S. mail.

Tracy A. Agrall
246 W. Shaw
Fresno, CA 93704-2644

Steve Alfieris
502 West Grangeville Blvd
Hanford, CA 93230-2857

Hagop T. Bedoyan
7647 N. Fresno Street
Fresno, CA 93720-2578

Michael Brown
Law Offices of Michael Brown
1809 West Main Street, Suite H
Visalia, CA 93291-4464

D. Gary Christensen
Miller Nash Graham and Dunn LLP
3400 U.S. Bancorp Tower 111 S.W. 5th Ave 93291
Portland, OR 97204

Paula C. Clark
502 West Grangeville Blvd
Hanford CA 93230

Ronald A. Clifford
1100 Town and Country Rd., Ste 1250
Orange, CA 92868

Michael A. Dias
502 W Grangeville Blvd
Hanford, CA 93230-2857

Anthony Dutra
Hanson Bridgett LLP
425 Market Street
26th Floor
San Francisco, CA 94105-5401

Mark F. Enenbach
McGrath North Mullin and Kratz, PC, LLO
First National Tower #3700
1601 Dodge St
Omaha, NE 68102-1650

```
 1   David A. Foraker
     111 SW 5th Ave #3400
 2   Portland, OR 97204

 3   Vanessa Triplett Kuchulis
     Miller Nash, LLP
 4   111 S. W. 5th Ave #3400
     Portland, OR 97204-3614
 5
     Sanford R. Landress
 6   3400 U.S. Bancorp Tower
     111 SW 5th Ave
 7   Portland, OR 97204

 8   John H. MacConaghy
     645 First St., West, Suite D
 9   Sonoma, CA 95476-7044

10   Aaron Moore
     1600 West St.
11   Redding, CA 96001-1726

12   James J. Niemeier
     First National Tower, Suite 3700
13   1601 Dodge Street
     Omaha, NE 68102-1637
14
     Kyle D. Sciuchetti
15   111 SW Fifth Ave #3400
     Portland, OR 97204-3614
16
     Lindy H. Scoffield
17   3043 Gold Canal Dr #100
     PO Box 269127
18   Sacramento, CA 95826-9127

19   Shanon J Slack
     Slack Law Group APC
20   2030 Main Street
     Suite 1300
21   Irvine, CA 92614-7220

22   Randy Sugarman
     583 1st St W
23   Sonoma, CA 95476-6638

24   Benjamin P. Tarczy
     US Bancorp Tower
25   111 SW Fifth Avenue, Suite 3400
     Portland, OR 97204
26
     Duncan C. Turner
27   Badgley Mullins Turner PLLC
     19929 Ballinger Way NE #200
28   Seattle, WA 98155-8208
```

Scot M. Tyler
Moore & Van Allen PLLC
100 N. Tryon St #4700
Charlotte, NC 28202-4003

Kurt F. Vote
265 E. River Park Circle, Suite 310
Fresno, CA 93720-1580

Riley C. Walter
265 E. River Park Circle Suite 310
Fresno, CA 93720-1580

Neal L. Wolf
425 Market St 26th Fl
San Francisco, CA 94105