NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                ) Case No.  18-11651-B-11
                                     )
GREGORY JOHN te Velde,               )
                                     )
              Debtor.                )
                                     )
_____)
                                     )
RANDY SUGARMAN, CHAPTER 11           )
TRUSTEE,                             ) Adv. Proc. No. 19-01033
                                     ) (Consolidated by Doc. #94 for
         Plaintiff,                  ) trial purposes only)
                                     )
      v.                             ) DCN:     MBB-7
                                     )
IRZ CONSULTING, LLC; aka IRZ         )
CONSTRUCTION DIVISION, LLC,          )
                                     )
         Defendant.                  )
                                     )
_____)
                                     )
IRZ CONSULTING, LLC, aka IRZ         )
CONSTRUCTION DIVISION, LLC,          )
                                     )
         Third-Party Plaintiff,      )
                                     )
      v.                             )
                                     )
U.S. FARM SYSTEMS; 4 CREEKS,         )
INC.; JOHN FAZIO dba FAZIO           )
ENGINEERING; DARI-TECH, INC.;        )
LASER LAND LEVELING, INC.; MAAS      )
ENERGY WORKS, INC.; GEROGE           )
CHADWICH dba GEORGE CHADWICK         )
CONSULTING; VALMONT NURTHWEST,       )
INC.; and NUCO BUILDING SYSTEMS      )
UTAH LLC,                            )
                                     )
         Third-Party Defendants.)
                                     )
_____)

**REPORT AND RECOMMENDATION ON U.S. FARM'S
MOTION FOR ORDER ESTABLISHING GOOD FAITH SETTLEMENT**

1

2  Michael Brown, LAW OFFICES OF MICHAEL BROWN, Visalia, CA, for
   U.S. Farm Systems, Inc., Third-Party Defendant.

3

4  Benjamin P. Tarczy, MILLER NASH LLP, Portland, OR, for IRZ
   Consulting, LLC, Defendant/Third-Party Plaintiff.

5

6  RENÉ LASTRETO II, Bankruptcy Judge:

7

8                          INTRODUCTION

9      Third Party Defendant U.S. Farm Systems aka Valmetal Tulare

10  ("U.S. Farm") moves for an order (a) establishing that U.S. Farm

11  settled the adversary proceeding in good faith with chapter 11

12  liquidating trustee Randy Sugarman ("Plaintiff" or "Trustee"),

13  and (b) barring cross-complaints against U.S. Farm. Doc. #451.

14      Third Party Plaintiff IRZ Consulting, LLC ("IRZ") timely

15  filed written opposition. Doc. #539.

16      U.S. Farm replied. Doc. #545.

17      This motion was filed on 28 days' notice pursuant to Local

18  Rule of Practice ("LBR") 9014-1(f)(1). At the November 16, 2022

19  hearing, the court took the matter under submission and

20  indicated that it would issue a report and recommendation for *de*

21  *novo* consideration by the District Court because the outcome of

22  this motion is dispositive as to U.S. Farm's involvement in this

23  proceeding. Doc. #569. For the reasons stated below, the court

24  recommends that this motion be DENIED.

25

26                          BACKGROUND

27      The underlying facts in this case are largely undisputed.

28  Contrast that with the substantial disputes concerning liability

1   for the damages to the bankruptcy estate asserted by the
2   liquidating trustee.

3        This case derives from the chapter 11 bankruptcy of Gregory
4   John te Velde ("Debtor"). Before filing, Debtor owned and
5   operated several large dairies spanning thousands of acres of
6   land across the Western United States. In late-2015, Debtor
7   hired IRZ to provide construction management services for the
8   construction of a new dairy operation in Boardman, Oregon
9   colloquially referred to as Lost Valley Farm ("LVF"). IRZ, in
10  turn, hired subcontractors to perform certain services. U.S.
11  Farm was hired by Debtor directly to install a mechanical
12  separator, which was part of a waste disposal system.

13       Debtor's intention was to build a waste disposal system at
14  the LVF dairy that would separate solids from usable effluent.
15  The final filtered effluent was to be used to irrigate adjacent
16  land. However, the operation failed resulting in an
17  environmental catastrophe, which ultimately became a substantial
18  factor in Debtor's filing of a chapter 11 bankruptcy case in
19  2018.

20       After Debtor filed chapter 11 bankruptcy, Plaintiff was
21  appointed as trustee. He proposed and confirmed a *Plan of*
22  *Reorganization* in November 2019 (the "Plan"). U.S. Farm filed
23  two proofs of claim, each in the amount of $187,559.73, to
24  recover the amounts owed for the services it performed with
25  respect to Lost Valley Farm. Claims 74-75.

26       Plaintiff filed this adversary proceeding in 2019 objecting
27  to the claim filed by IRZ and asserting claims raising alleged
28  ///

construction defects in the waste system, which resulted in approximately $19 million in damages.

IRZ subsequently filed a third-party complaint against nine third-party defendants, including U.S. Farm, asserting claims for contribution, indemnity, and negligence.

Recently, U.S. Farm entered into a *Settlement Agreement and Release of Claims* ("Settlement Agreement") with Plaintiff on or about September 14, 2022. A copy of the Settlement Agreement was included with this motion as an exhibit. Settlement Agreement, Doc. #454, *Ex. A*. Plaintiff has authority under the Plan to settle litigation related to claims without notice and without bankruptcy court approval. Plan ¶ 6.8, Bankr. Doc. #2975.

Under the terms of the Settlement Agreement, U.S. Farm will pay $20,000 to settle any and all claims by Plaintiff, inclusive of all derivative claims by IRZ. *Id.* The Settlement Agreement states that U.S. Farm's Claim 74 shall be deemed to be an Allowed General Unsecured Claim in the original amount of $187,559.73 and U.S. Farm shall be entitled to receive any further pro rata dividends payable to other general unsecured creditors. The Settlement Agreement contains the following release clause:

> Except for any liability expressly created or reserved by virtue of this Agreement, each Party hereby remises, releases, and forever discharges each other, their officers, directors, shareholders, members, managers, partners, employees, consultants, insurers, attorneys, experts, and anyone who has acted for or on their behalf relative to the Dispute, from all past, present, and future claims, demands, actions, causes of action of any nature, and for all liabilities and obligations of every kind and character, including without limitation and by way of

example only, claims for payments due or to
become due, or other claims for legal or
equitable relief which in any way directly or
indirectly relate to or arise out of the
Dispute, as well as all claims which are,
were, or could have been asserted by or
between them in any litigation, alternative
dispute resolution, proceeding, or court
proceeding filed in connection with any matter
arising out of or related in any way to the
Dispute, including but not limited to claims,
demands, causes of action, defenses,
indemnity, damages, compensation, or counter-
claims therein (the "Released Claims").

This is a full and final release of all unknown
and unanticipated injuries, and damages,
arising out of or related to the claims for
which releases have been given, as well as
those now known or disclosed, and the Parties
hereby waive all rights or benefits which they
now have or in the future may have pursuant to
the claims for which releases have been given
under the terms of Section 1542 of the Civil
Code, which provides as follows:

A general release does not extend to claims
that the creditor or releasing party does not
know or suspect to exist in his or her favor
at the time of executing the release and that,
if known by him or her, would have materially
affected his or her settlement with the debtor
or released party.

*Id.* at 2-3.

    As evidence, U.S. Farm presented the declaration of

Plaintiff Trustee, which states, in part:

  - Under the chapter 11 plan, Plaintiff was appointed as
    Liquidating Trustee to manage the assets of the estate,
    including litigation claims.
  - Through the end of 2019, substantially all of Plaintiff's
    time was devoted to managing the LVF, most of which was
    devoted to addressing the regulatory and other waste-water
    problems at the farm. Plaintiff was regularly onsite and
    acquired significant personal knowledge of the causes and
    consequences of LVF's wastewater problems.
  - Plaintiff concluded that the party principally responsible
    for the "poor design" of the dairy was IRZ. Plaintiff
    considered naming other co-defendants with IRZ but
    concluded that there was no substantial factual basis to do
    so.

- All of the wastewater problems at LVF arose out of defects in the waste management "stream" before and after it was processed by the separator fabricated by U.S. Farm. Plaintiff and his onsite staff did not observe any problems with the separator itself.
- The settlement reached in this case was made at arm's length and there was no side dealing or other conduct which would have unfairly prejudiced IRZ or any other party in the lawsuit.

Doc. #455.

Since all of IRZ's claims against U.S. Farm are derivative of Plaintiff's claims against IRZ, U.S. Farm requests to be dismissed from this lawsuit. Doc. #451. U.S. Farm states that fair notice of the settlement was given to IRZ through its counsel via email. A copy of the email chain is attached in which IRZ responds that any settlement should be resolved globally. Doc. #454, *Ex. 2.*


## CONTENTIONS

First, U.S. Farm contends that the Settlement Agreement with Plaintiff meets the requirements of a "good faith" settlement set forth in Cal. Code Civ. Proc. ("CCP") §§ 877 & 877.6, which will bar any cross-complaints against U.S. Farm. Doc. #456. Second, U.S. Farm argues that IRZ was given fair notice of the settlement but indicated that they wanted a global settlement before any third-party defendants would be released. Lastly, U.S. Farm insists that it must be dismissed from this adversary proceeding as to all of the third-party claims asserted by IRZ because they are derivative of the Plaintiff's claims against IRZ.

In response, IRZ argues that this motion should be denied because the Settlement Agreement between Plaintiff and U.S. Farm

was not in good faith under the standards set forth under California law as evidenced by the proportionately low amount U.S. Farm is to pay under the Settlement Agreement. Doc. #539.

U.S. Farm replies that it cannot be liable because operational manuals were available to Debtor and claims that caselaw supports approval of its settlement unless fraud is substantially alleged, which it is not. Doc. #545.

DISCUSSION

Neither party has suggested that this dispute should be decided under Oregon law. Under California law, CCP 877 requires that any settlement cutting off the right of contribution by non-settling defendants must be executed in good faith. *Fed. Sav. & Loan Ins. Corp. v. Butler,* 904 F.2d 505, 511 (9th Cir. 1990). CCP 877 provides, in relevant part:

> Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce a judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:
>
> (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is greater.
>
> (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

CCP § 877(a)-(b).

///

The Ninth Circuit has held that the procedures contained in CCP § 877.6 for making a motion for a "good faith" settlement determination are not binding on federal courts, but the provisions do create a "substantive" law that must be applied in an action in the federal courts to which California substantive law applies. *Butler*, 904 F.2d at 511 ("nothing is to prevent the district court from granting a motion for an early determination of the good faith question. In fact, it makes eminent good sense to do so."); *see also Trujillo v. Crescent Jewelers*, No. 99-55914, 2000 U.S. App. LEXIS 30235 (9th Cir. Nov. 29, 2000); *Medina v. Argent Mortg. Co.*, No. C05-02905 HRL, 2007 U.S. Dist. LEXIS 48312 (N.D. Cal. June 27, 2007). CCP § 877.6 provides, in relevant part:

> b) The issue of good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response, or the court may, in its discretion, receive other evidence at the hearing.

> (c) A determination by the court that the settlement was made in good faith shall bear any other tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

CCP § 877.6(b) & (c).

Though procedural, the Ninth Circuit has determined that it "makes eminent sense" for a good faith determination under this statute to be made by a federal trial court. *Butler*, 904 F.2d at 511. The party asserting the lack of good faith has the burden of proof on that issue. CCP 877.6(d); *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499-500, 698 P.2d 159,

166-67 (1985). However, the party seeking a good faith determination has the initial burden of presenting a *prima facie* case.

CCP § 877.6 requires complete notice to non-settling parties as a prerequisite to a determination of good faith. Assuming adequate notice is given, the California Supreme Court has outlined four factors a court should consider in determining good faith of a settlement:

- A rough approximation of plaintiff's total recovery and the settlor's proportionate liability.
- The amount paid in settlement.
- The allocation of settlement proceeds among plaintiffs.
- A recognition that a settlor should pay less in settlement than he would if he were found liable after a trial.
- The financial condition and insurance policy limits of the settling tortfeasor.
- The existence of collusion, fraud, or tortious conduct intended to injure the interests of the non-settling parties.

*Tech-Bilt*, 38 Cal. 3d at 499-500, 698 P.2d at 167. These statutes serve the policies under California law of sharing liability among parties potentially jointly at fault, while encouraging reasonable settlements. *Id.* at 494, 698 P.2d at 162.

A finding of good faith under CCP § 877 is a finding of fact for the trial court to be made under the factors stated in *Tech-Bilt. See*, *Owen v. United States*, 713 F.2d 1461, 1466 (9th Cir. 1983)

The California Supreme Court has also stated that bad faith is not necessarily "established by a showing that a settling defendant paid less than his theoretical proportionate or fair share." *Tech-Bilt*, 38 Cal. 3d at 499, 698 P.2d at 166. "Such a rule would unduly discourage settlements" because it would not consider various unknown and speculative factors such as the

amount of damages, probability of legal liability, the solvency
of the defendant, and the risk of going through trial. *Ibid.*

    1. <u>Rough approximation of Plaintiff's total recovery and
the settlor's proportionate liability</u>. A settling party's
proportionate liability is one of the most important factors in
making a good faith determination. *Toyota Motor Sales U.S.A.,
Inc. v. Superior Ct.*, 220 Cal. App. 3d 864, 871, 269 Cal. Rptr.
647, 650 (1990). In *Mattco*, the court held that a $250,000
settlement out of a $39 million claim (0.006%) was not within
the reasonable range or "ballpark" of their share of
proportionate liability. *Mattco Forge, Inc. v. Arthur Young &
Co.*, 38 Cal. App. 4th 1337, 1351, 45 Cal. Rptr. 2d 581, 589
(1995), *reh'g denied*, 39 Cal. App. 4th 1210.

    Here, U.S. Farm reasons that if the case were to proceed to
trial, damages were $18 million, and it were found 1% liable, it
would be responsible for $180,000 in damages. Doc. #456. But
since it is settling the claim for $20,000, if it were found to
be 1% liable, it must only pay $20,000 under the Settlement
Agreement. *Id.* at 6. A more likely outcome, says U.S. Farm, is
that it will be found 0% liable and would owe $0, but it is
willing to pay this settlement amount regardless of the eventual
outcome.

    IRZ responds that U.S. Farm is settling for one-tenth of a
percent (0.001%) of Plaintiff's claimed $18.8 million dollars in
damages. If U.S. Farm were determined to be 1% liable by a jury,
it would be avoiding at least $160,000 in damages, or eight
times the $20,000 provided in the Settlement Agreement.
///

1    U.S. Farm replies that *Tech-Bilt*, rather than *Mattco*, is a

2    more comparable case to the issues present here. Doc. #545. In

3    *Mattco*, a plaintiff contractor had its suit dismissed because

4    they fabricated estimate sheets to increases damages. *Mattco*, 38

5    Cal. App. 4th at 1354, 45 Cal. Rptr. 2d at 591. The court

6    ordered Mattco to pay $1.4 million in sanctions or the matter

7    would be dismissed. Mattco entered into a mutual release and

8    sued its accounting firm. The good faith settlement in question

9    was between Mattco and its own attorney for malpractice, and the

10   court refused to approve the good faith settlement because the

11   allegations against the settlement included fraud. *Id.* at 1357,

12   45 Cal. Rptr. 2d at 593.

13   Since the facts in *Mattco* are not similar to the facts in

14   this case, it should be considered dicta, claims U.S. Farm. The

15   primary reason for denying the settlement was not the size of

16   the settlement, but because it was the product of collusion

17   aimed and injuring the interests of other parties.

18   There is a lack of evidence as to what Plaintiff's total

19   recovery may be and U.S. Farm's proportionate share of

20   liability. The allegations are that nearly $19 million is the

21   *alleged* damage. But there is no basis, even from Plaintiff

22   Trustee, that is evidence of possible recovery. So, the court is

23   unable to adequately evaluate proportionate liability.

24   U.S. Farm's counsel's aspirational opinion that U.S. Farm

25   is likely to be found 0% at fault has limited factual basis.

26   Counsel's declaration (Doc. #453) says Trustee and his counsel

27   are experienced, that in discovery it has been determined that

28   IRZ directed the design and placement of the mechanical

11

separator, and that there are no specific allegations that the separator was functioning improperly.

The declaration largely is without foundation as counsel was not observing the operation of the dairy. Trustee and his general counsel's experience has never been presented to the court as "in depth" in litigation matters concerning dairy construction processes. In fact, Trustee has special counsel representing him in this litigation. The reference to discovery is hearsay. Whether IRZ designed and determined where the separator was placed does not mean the separator necessarily was up to the tasks required at LVF dairy. The lack of specific allegations about the separator does not absolve U.S. Farm. The waste management system failed, and the mechanical separator it designed was part of that system.

Mr. Sugarman's declaration (Doc. #455) suffers from the same foundational problems, though Mr. Sugarman certainly had much time observing the damage the failed system caused. Mr. Sugarman also opines that the problems related to the wastewater stream occurred before *and after* the waste was processed by the separator. This is not evidence that the separator had nothing or little to do with the doomed waste disposal system. Rather, it leads to more questions concerning causation supporting the view that there is insufficient evidence as to possible liability of U.S. Farm.

2. <u>Amount paid in settlement</u>: IRZ says that the amount paid in settlement does not suggest good faith. Doc. #539, citing *Mattco*, 38 Cal. App. 4th at 1351, 45 Cal. Rptr. 2d at 589 ($250,000 settlement out of a $39 million dollar damage claim

deemed to not be within the reasonable range or "ballpark" of
their share of liability). As in *Mattco*, IRZ contends here that
U.S. Farm's $20,000 settlement is not within the reasonable
range of its share of the $18.8 million in liability alleged by
the Trustee. Since this is only one tenth of one percent
(0.001%) of the alleged damages, the Settlement Agreement's
terms do not suggest good faith.

Additionally, the Settlement Agreement includes the
allowance of U.S. Farm's Claim 17 in the amount of $187,559.73
and permits U.S. Farm to receive a pro rata distribution of
dividends paid to allowed, general unsecured claims. Thus, U.S.
Farm may actually receive more from the settlement than it is
paying.

As noted above, U.S. Farm's reply alleges that the
proportionate damages in *Mattco* were secondary to claims of
actual fraud in rejection of the good faith of the settlement.
Doc. #545.

3. Allocation of settlement proceeds among plaintiffs:
Allocation of settlement proceeds is inapplicable because
Plaintiff Trustee is the only plaintiff here. As such, there are
no other plaintiffs with whom Plaintiff will have to share the
$20,000 settlement proceeds.

4. Recognition that a settlor should pay less in settlement
than if found liable at trial: U.S. Farm believes that it will
be found 0% liable at trial, but it will agree to pay $20,000
anyways regardless of the eventual outcome so that it may avoid
trial.
///

IRZ acknowledges that a party settlor should pay less in settlement than it would if it were to be found liable after a trial. *Tech-Bilt*, Cal. 3d at 499, 698 P.2d at 166. This recognition, however, should not extend to the "extreme" that a settlor should pay one tenth of one percent (0.001%) of a plaintiff's claimed damages. Plus, since the Settlement Agreement is permitting U.S. Farm's claim to proceed unimpeded and allow U.S. Farm to receive a pro rata share of the distribution to allowed unsecured claims, U.S. Farm may receive more than it is paying under the Settlement Agreement.

The court must also consider not only the settlor's potential liability to the Plaintiff, but also its proportionate share of culpability as among the parties alleged to be liable for the same injury. *TSI Seismic Tenant Space, Inc. v. Superior Court*, 149 Cal. App. 4th 159, 166, 56 Cal. Rptr. 3d 751, 756 (2007). U.S. Farm provided a critical part of the waste management system. Even assuming the separator was operationally sound, there is insufficient evidence that the separator should be evaluated in a vacuum in comparison with the rest of the wastewater system. A $20,000 settlement amount payable to a party that has not sued the settling defendant and said defendant maintaining its claim is disproportionate to the importance of the separator to the system.

5. Financial condition and insurance policy limits of settling defendants: U.S. Farm does not have errors & omissions insurance on this claim because it did not function as a contractor in this case, and only installed machinery. Doc. #456. Since U.S. Farm would not have designed the farm to

14

function as it did, it should not be subject to a long,
expensive, complicated trial of anyone associated with the farm.
That said, nothing is known of U.S. Farm's financial condition
here and its ability to respond in damages. Nevertheless, the
lack of insurance coverage does suggest a compromise in a
smaller sum should be within the "range of reasonableness." On
this record, that is not determinable.

6. The existence of collusion, fraud, or tortious conduct
intended to injure the interests of the non-settling defendants:
The existence of collusion, fraud, or tortious conduct aimed to
injure the interests of non-settling defendants is the final
determining factor enumerated in *Tech-Bilt*. *Techbilt*, Cal. 3d at
499, 698 P.2d at 166. U.S. Farm says that there should be no
allegations of sabotage or collusion because there has been very
little communication between U.S. Farm and Trustee. Doc. #456.

However, IRZ alleges the existence of collusion, fraud, or
tortious conduct aimed to injure its interests as a non-settling
party is a substantial factor and claims that the potential
indemnity liability to IRZ prevents a finding of good faith
here. Doc. #539. IRZ compares this matter to *Mattco*, where the
plaintiff did not bring an action against the settling party,
and the settling party was only involved through a cross-
complaint by a non-settling defendant. *Id.*, citing *Mattco*, 38
Cal. App. 4th at 1353, 45 Cal. Rptr. 2d 590. The settling
parties expressly noted in their Settlement Agreement that the
purpose of the agreement was to "eliminate the uncertainty
arising from the continued defense of the cross-complaint." *Id.*
Ultimately, the *Mattco* court found that the disproportionately

low settlement was aimed at injuring the non-settling
defendants' interests.

　　　As with *Mattco*, U.S. Farm and Plaintiff here do not have
claims against each other, and U.S. Farm is only involved
through IRZ's third-party complaint. As in *Mattco*, the purpose
of the Settlement Agreement is for U.S. Farm to avoid a "long,
expensive, complicated, sprawling trial" and "avoid the cost of
defending" its action with IRZ. Doc. #539, citing Mem. P. & A.,
Doc. #451, at 4:12, 6:22-25. In effect, U.S. Farm is avoiding
its defense against IRZ without IRZ's consent to dismiss. This
is not a settlement on the merits of Plaintiff's claim with U.S.
Farm, it is a settlement where U.S. Farm is procuring a
dismissal of IRZ's claims through a third party, and therefore
aimed at injuring IRZ's interests.

　　　IRZ has failed to specifically identify any such collusion,
fraud, or tortious conduct. No affirmative evidence of collusive
interaction has been presented. The evidence appears to
establish very little interaction between U.S. Farm's counsel
and Plaintiff. That said, U.S. Farm's desire to extricate itself
from IRZ's third party claim provides a very strong motivation
to settle.

　　　As above, U.S. Farm argues that *Mattco* should be treated as
dicta because it involved allegations of actual fraud.
Doc. #545. Instead, *Tech-Bilt* should be more controlling, and
under *Tech-Bilt*, the Settlement Agreement must be approved,
contends U.S. Farm. As mentioned, IRZ has presented no
affirmative evidence of collusion or fraud.
///

_Potential indemnity and contribution liability_

IRZ further argues that the potential liability for indemnity to a non-settling defendant is an important consideration for determining whether to approve a settlement by an alleged tortfeasor. Doc. #539, citing *TSI Seismic Tenant Space*, 149 Cal. App. 4th at 166, 56 Cal. Rptr. 3d at 756. The Settlement Agreement results in U.S. Farm sharing only 0.001% of the liability alleged here. Even if U.S. Farm were to be found 90% liable for Plaintiff's $18.8 million dollar damage claim, it would be required to pay only $20,000 in this action. Thus, there must be substantial evidence to support a critical assumption as to the nature and extent of its liability, and U.S. Farm cannot show substantial evidence that it is liable for such a negligible amount of indemnity in this action. Lastly, U.S. Farm's declarations in support of the motion were not made by an individual with personal knowledge of U.S. Farm's work on this project. Declarants Attorney Michael Brown and Plaintiff Trustee Randy Sugarman are individuals who were not involved in the operations of the farm during the relevant time period, and thus IRZ claims the declarations should be considered irrelevant as to any determination of U.S. Farm's liability.

U.S. Farm's reply includes the declaration of David Shoenhair, the project manager employed by U.S. Farm that was substantially in charge of installing the mechanical separator at Debtor's dairy. Doc. #546. Mr. Shoenhair declares that U.S. Farm did not receive complaints of the mechanical separator failing or not doing what it was designed to do. *Id.* Although he was aware that there were overall operational issues at the

Oregon dairy, Mr. Shoenhair was not aware of any particular issues with the mechanical separator, specifically. *Id.* Mr. Shoenhair acknowledges a separator drain plumbing issue, but it was fixed immediately upon being notified, and U.S. Farm personnel did make several trips to the dairy to make the mechanical separator function optimally given the lack of agitation necessary for solids to enter the separator. However, U.S. Farm was not required to provide oversite of the system, but it did so anyway on a good faith basis due to its long-standing relationship with Debtor.

Additionally, Mr. Shoenhair says that Debtor had operational manuals for the mechanical separator because they were given to him when another mechanical separator was installed at one of Debtor's other farms in California. *Id.* U.S. Farm does not create a separate operation manual for every mechanical separator it installs, but the manuals are available online to clients, including Debtor. Debtor was already familiar with the operations of the mechanical separator because he had a substantially identical separator installed at a different farm that he owned.

Even so, Mr. Shoenhair is employed by U.S. Farm. Though his testimony is useful to indicate Debtor was provided operational manuals for the mechanical separator, it is self-serving with respect to whether the mechanical separator was faulty. Plus, it is noteworthy that Mr. Shoenhair specifies a "lack of agitation" of the "solids" before "entering" the separator. This suggests either misuse of the separator as designed, or that the separator needed another process to function properly. This does

1  not absolve the separator as a contributing cause of the waste
2  system's failure.

3

4                          CONCLUSION
5  The record here does not support a good faith finding as a
6  matter of law. Though Plaintiff attributes the waste-water
7  management problems at LVF dairy to defects in the waste
8  management stream before and after it was processed by U.S.
9  Farm's mechanical separator, such diagnosis is speculative at
10 best. Plaintiff is not an expert. And although U.S. Farm has
11 produced the declaration of Mr. Shoenhair, he is an employee of
12 U.S. Farm, which makes his declaration unpersuasive. U.S. Farm
13 has not produced substantial evidence that there was no fault
14 with its mechanical separator. Further, by settling with
15 Plaintiff, U.S. Farm is effectively removing itself as a third-
16 party defendant from IRZ's third-party complaint without IRZ's
17 consent. Since the settlement represents a one-tenth of one
18 percent (0.001%) share of the $18.8 million in liability alleged
19 by Plaintiff, this proportionately *de minimis* share does not
20 suggest that Plaintiff and U.S. Farm executed the Settlement
21 Agreement in good faith. For these reasons the court recommends
22 this motion be DENIED.

23    The court will issue a subsequent order setting deadlines
24 for objections to this proposed report and recommendation to be
25 heard in District Court before the Honorable Ana de Alba.
26 **Dated:** Dec 06, 2022          **By the Court**

27

28

                                 René Lastreto II, Judge
                                 United States Bankruptcy Court

                          19

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

     The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ___, via the U.S. mail.

Tracy A. Agrall
246 W. Shaw
Fresno CA 93704

Steve Alfieris
502 West Grangeville Blvd
Hanford CA 93230

Hagop T. Bedoyan
7647 N. Fresno Street
Fresno CA 93720

Michael Brown
1809 West Main Street, Suite H
Visalia CA 93291

D. Gary Christensen
3400 U.S. Bancorp Tower 111 S.W. 5th Ave
Portland OR 97204

Paula C. Clark
502 West Grangeville Blvd
Hanford CA 93230

Ronald A. Clifford
1100 Town and Country Rd., Ste 1250
Orange CA 92868

Michael A. Dias
502 W Grangeville Blvd
Hanford CA 93230

Anthony Dutra
425 Market Street
26th Floor
San Francisco CA 94105

Mark F. Enenbach
First National Tower #3700
1601 Dodge St
Omaha NE 68102

David A. Foraker
111 SW 5th Ave #3400
Portland OR 97204

Vanessa Triplett Kuchulis
111 S. W. 5th Ave #3400
Portland OR 97204

Sanford R. Landress
3400 U.S. Bancorp Tower
111 SW 5th Ave
Portland OR 97204

John H. MacConaghy
645 First St., West, Suite D
Sonoma CA 95476

Randy Sugarman
583 1st St W
Sonoma CA 95476

Aaron Moore
1600 West St.
Redding CA 96001

James J. Niemeier
First National Tower, Suite 3700
1601 Dodge Street
Omaha NE 68102

Kyle D. Sciuchetti
111 SW Fifth Ave #3400
Portland OR 97204

Lindy H. Scoffield
3043 Gold Canal Dr #100
PO Box 269127
Sacramento CA 95826-9127

Shanon J Slack
2030 Main Street
Suite 1300
Irvine CA 92614

Randy Sugarman
583 1st St W
Sonoma CA 95476

Benjamin P. Tarczy
111 SW Fifth Avenue, Suite 3400
Portland OR 97204

Duncan C. Turner
Badgley Mullins Turner PLLC
19929 Ballinger Way NE #200
Seattle WA 98155

Scot M. Tyler
100 N. Tryon St #4700

1   Charlotte NC 28202

2   Kurt F. Vote
    265 E. River Park Circle, Suite 310
3   Fresno CA 93720

4   Riley C. Walter
    265 E. River Park Circle Suite 310
5   Fresno CA 93720

6   Brianna J. Wellman
    111 SW Fifth Ave #3400
7   Portland OR 97204

8   Neal L. Wolf
    425 Market St 26th Fl
9   San Francisco CA 94105

10  Tracy Hope Davis
    Gregory S. Powell
11  U.S. Trustee's Office
    2500 Tulare St #1401
12  Fresno CA 93721

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28