**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | ) Case No.  18-11651-B-11 |
| | ) |
| GREGORY JOHN te Velde, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| ——————————————————— | ) |
| | ) |
| RANDY SUGARMAN, CHAPTER 11 | ) |
| TRUSTEE, | ) Adv. Proc. No. 19-01033 |
| | ) (Consolidated by Doc. #94 for |
| Plaintiff, | ) trial purposes only) |
| | ) |
| v. | ) DCN:     DLF-2 |
| | ) |
| IRZ CONSULTING, LLC; aka IRZ | ) |
| CONSTRUCTION DIVISION, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| ——————————————————— | ) |
| | ) |
| IRZ CONSULTING, LLC, aka IRZ | ) |
| CONSTRUCTION DIVISION, LLC, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| U.S. FARM SYSTEMS; 4 CREEKS, | ) |
| INC.; JOHN FAZIO dba FAZIO | ) |
| ENGINEERING; DARI-TECH, INC.; | ) |
| LASER LAND LEVELING, INC.; MAAS | ) |
| ENERGY WORKS, INC.; GEORGE | ) |
| CHADWICK dba GEORGE CHADWICK | ) |
| CONSULTING; VALMONT NURTHWEST, | ) |
| INC.; and NUCO BUILDING SYSTEMS | ) |
| UTAH LLC, | ) |
| | ) |
| Third-Party Defendants. | ) |
| | ) |
| ——————————————————— | ) |

**REPORT AND RECOMMENDATION ON GEORGE CHADWICK dba GEORGE CHADWICK CONSULTING'S MOTION FOR ORDER ESTABLISHING GOOD FAITH SETTLEMENT**

---

Steven Alfieris, DIAS LAW FIRM, INC., Hanford, CA, for George Chadwick dba Chadwick Consulting, Third-Party Defendant.

Benjamin P. Tarczy, MILLER NASH LLP, Portland, OR, for IRZ Consulting, LLC, Defendant/Third-Party Plaintiff.

---

RENÉ LASTRETO II, Bankruptcy Judge:

INTRODUCTION

Third Party Defendant George Chadwick dba Chadwick Consulting, Inc. ("Chadwick"), moves for an order: (a) establishing that Chadwick settled the adversary proceeding in good faith with chapter 11 liquidating trustee Randy Sugarman ("Plaintiff" or "Trustee"), (b) barring cross-complaints against Chadwick by granting Chadwick a full release of all claims with a waiver of the provisions of Cal. Civ. Code § 1542 wherein each side shall bear its own attorney's fees and costs, and (c) dismissing this case with prejudice as to Chadwick.[1]

Third Party Plaintiff IRZ Consulting, LLC ("IRZ") timely filed written opposition.[2]

Chadwick replied.[3]

This motion was filed on 28 days' notice pursuant to Local Rule of Practice ("LBR") 9014-1(f)(1). At the December 20, 2022 hearing, the court took the matter under submission and indicated that it would issue a report and recommendation for *de novo* consideration by the District Court because the outcome of this motion is dispositive as to Chadwick's involvement in this

---

[1] Mot., Doc. #579.
[2] IRZ's Mem. P. & A., Doc. #609.
[3] Reply, Doc. #620.

proceeding.[4] For the reasons stated below, the court recommends that this motion be GRANTED.

BACKGROUND

The underlying facts in this case are largely undisputed. In contrast, substantial disputes exist concerning liability for the damages to the bankruptcy estate asserted by the liquidating trustee.

This case derives from the chapter 11 bankruptcy of Gregory John te Velde ("Debtor").[5] Before filing, Debtor owned and operated several large dairies spanning thousands of acres of land across the Western United States. In late-2015, Debtor hired IRZ to provide construction management services for the construction of a new dairy operation in Boardman, Oregon colloquially referred to as Lost Valley Farm ("LVF"). IRZ, in turn, hired subcontractors to perform certain services. Chadwick was not one of these subcontractors; instead, Chadwick was hired by Debtor directly, and later by Plaintiff Trustee.

Debtor's goal was to build a waste disposal system at the LVF dairy that would separate solids from usable effluent. The fully filtered effluent was to be used to irrigate adjacent land. However, the operation failed, and an environmental catastrophe followed, which ultimately became a substantial factor in Debtor's filing of a chapter 11 bankruptcy case in 2018.

///

[4] Civ. Mins. (Dec. 12, 2022), Doc. #623.
[5] Case No. 18-11651 (Bankr. E.D. Cal.) ("Bankr.") Doc. #1.

Chadwick was hired for two tasks. First, Chadwick was to perform a hydrogeologic characterization to estimate where monitoring wells should be drilled to comply with the Oregon Department of Agriculture's ("ODA") guidelines for Debtor's Confined Animal Feeding Operation ("CAFO") permit.[6] The purpose of the investigation and models was to determine flow directions, pathways, and rates of groundwater flow, potential receptors of groundwater, potential contaminates, and the extent of contamination in the sub-surface environment.[7]

Second, in working with the ODA, Chadwick took the lead on monitoring water contamination in various monitoring wells drilled around the dairy site.

After Debtor filed chapter 11 bankruptcy, Plaintiff was appointed as liquidating trustee.[8] He proposed and confirmed a *Plan of Reorganization* in November 2019 (the "Plan").[9] Plaintiff hired Chadwick to continue groundwater monitoring and reporting for CAFO compliance. Chadwick did not file a proof of claim in the bankruptcy case.

Plaintiff filed this adversary proceeding in 2019 objecting to the claim filed by IRZ and asserting claims related to alleged construction defects in the waste system, which resulted in approximately $19 million in damages.[10]

IRZ subsequently filed a third-party complaint against nine third-party defendants, including Chadwick, asserting claims for

---

[6] Edmonds Decl., Doc. #584.
[7] *Hydrogeological Characterization and Modeling*, Geosyntec Consultants, https://geosyntec.com/practices/contaminated-site-assessment-and-cleanup/hydrogeological-characterization-and-modeling (visited Jan. 9, 2023).
[8] Bankr. Docs. #841; #850.
[9] Bankr. Doc. #2975
[10] Compl., Doc. #1.

4

negligence, contribution, and indemnity.[11]

After being served with IRZ's third-party complaint, Chadwick moved to dismiss himself for IRZ's failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. ("Civ. Rule") 12(b)(6).[12] IRZ opposed.[13] Chadwick's motion was denied based on allegations that Chadwick provided assistance to determine feasibility of the design of the wastewater management system, prepared the groundwater monitoring plan, supervised construction of several wells on the dairy, and prepared a survey that was part of the process for environmental certification and ODA review.[14] Chadwick promptly filed an Answer.[15] Litigation, including discovery, ensued.

Recently, Chadwick entered into a *Settlement Agreement and Release of Claims* ("Settlement Agreement") with Plaintiff on or about September 6, 2022, a copy of which was included with this motion as an exhibit.[16] Plaintiff has authority under the Plan to settle litigation related to claims without notice and without bankruptcy court approval.[17]

Under the settlement, the parties agreed that there were no claims against Chadwick, and Chadwick will be dismissed from this action.[18] The parties agreed to a "walk-away" settlement to allow Chadwick to avoid spending his funds preparing and serving a motion for summary judgment, and so that the Plaintiff can

---

[11] Third-Party Compl., Doc. #163.
[12] Mot., Doc. #194.
[13] Opp., Doc. #222.
[14] Civ. Mins. (June 5, 2021), Doc. #237; Order, Doc. #241.
[15] Answer, Doc. #251.
[16] Settlement Agreement, *Ex. A*, Doc. #582.
[17] Plan ¶ 6.8, Bankr. Doc. #2975.
[18] Settlement Agreement, *Ex. A*, Doc. #582.

avoid spending his funds opposing the same.[19] The Settlement

contained a broad mutual release between Plaintiff and Chadwick

over claims "relative to the Dispute." The mutual release

included unknown claims under Cal. Civ. Code § 1542.

As evidence of good faith, Chadwick presented the

declarations of (a) Plaintiff, (b) LVF dairy General Manager

Joel Edmonds, and (c) Chadwick's attorney Michael A. Dias.

Plaintiff's declaration describes the formation of the

Settlement Agreement:

- On August 31, 2022, Plaintiff participated in mediation
  with Chadwick, which resulted in the Settlement Agreement.
- Plaintiff and Chadwick agreed that there were no claims
  against Chadwick, and therefore he should be dismissed from
  this action.
- The release and covenant not to sue were negotiated and
  intended by the parties to release Chadwick from claims of
  the Debtor's estate and all parties related to the LVF
  dairy, including indemnity and contribution claims arising
  from any claim brought by Plaintiff against third parties,
  such as IRZ, for their role in LVF dairy.
- At no time did Plaintiff find any fault with Chadwick's
  work. In fact, Chadwick performed work for Plaintiff while
  LVF dairy was readied and sold.
- Chadwick continued to perform the groundwater monitoring
  and associated reporting that was required by the ODA-
  approved groundwater plan and reporting required by the
  CAFO permit, and also prepared hydrogeologic
  characterization reports for LVF dairy, which were a
  necessary component of the dairy's regulatory compliance.
- Plaintiff believes the Settlement Agreement represents a
  good faith arms-length resolution of the litigation against
  Chadwick and saves both Chadwick and Plaintiff from
  incurring additional attorney's fees should Chadwick file a
  motion for summary judgment.[20]

Since all of IRZ's claims against Chadwick are derivative

of Plaintiff's claims against IRZ, Chadwick requests to be

dismissed from this lawsuit.[21]

///

---

[19] *Id*. at 2.
[20] Sugarman Decl., Doc. #583.
[21] Chadwick's Mem. P. & A., Doc. #585.

1

CONTENTIONS

2    Chadwick contends that the Settlement Agreement with
3    Plaintiff meets the requirements of a "good faith" settlement
4    set forth in Cal. Code Civ. Proc. ("CCP") §§ 877 & 877.6.[22]
5    Additionally, under applicable Oregon law, Chadwick contends
6    that IRZ has failed to plead its claims for negligence,
7    indemnity, and contribution. Since judicial policies favor
8    approval of the Settlement Agreement, the Settlement Agreement
9    meets the requirements of CCP § 877.6, and the Settlement
10   Agreement will not impose hardship on IRZ, Chadwick requests
11   this motion to be granted. *Id.*

12   In response, IRZ argues that this motion should be denied
13   for multiple reasons.[23] Specifically, (i) the Settlement
14   Agreement between Plaintiff and Chadwick was not in good faith
15   under the standards set forth under California law, (ii) the
16   settlement is not supported by consideration and is therefore
17   void, (iii) Chadwick's proportionate share of liability does not
18   suggest good faith, (iv) the amount paid in settlement does not
19   suggest good faith, (v) a settlor paying nothing in settlement
20   does not suggest good faith, (vi) the existence of collusion,
21   fraud, or tortious conduct aimed at injuring non-settling
22   defendants does not suggest good faith, (vii) the potential
23   liability for indemnity to IRZ does not suggest good faith,
24   (viii) Chadwick's affidavits do not support that he has no
25   liability, and (ix) Chadwick's references to Oregon law are a
26   procedurally inappropriate motion for summary judgment.

27

28
[22] *Id.*
[23] IRZ's Mem. P. & A, Doc. #609.

1    Chadwick replies, (i) IRZ cannot meet its burden of proof

2  on its assertion of the lack of good faith, (ii) the Settlement

3  Agreement accurately reflects Chadwick's proportionate share of

4  liability and demonstrates good faith, (iii) consideration

5  exists in the form of mutual release of claims, (iv)

6  consideration is sufficient because Chadwick is waiving any

7  right to future benefit from this bankruptcy case, (v)

8  Chadwick's declarations are relevant, and (vi) although

9  California law applies with respect to approval of the

10  settlement, Oregon law is applicable to substantive claims, and

11  therefore relevant to this motion.[24]

12

13                              DISCUSSION

14  Good faith determination

15    Even though the substantive claims in this case involve

16  Oregon law, both parties agree the good faith determination

17  should be decided under California law.[25] CCP § 877 requires any

18  settlement cutting off the right of contribution by non-settling

19  defendants to be executed in good faith. *Fed. Sav. & Loan Ins.*

20  *Corp. v. Butler,* 904 F.2d 505, 511 (9th Cir. 1990). CCP 877

21  provides, in relevant part:

22             Where a release, dismissal with or without
             prejudice, or a covenant not to sue or not to
23             enforce a judgment is given in good faith
             before verdict or judgment to one or more of
24             a number of tortfeasors claimed to be liable
             for the same tort, or to one or more other co-
25             obligors mutually subject to contribution
             rights, it shall have the following effect:
26

27  ───────────────
       [24] Reply, Doc. #620.
28       [25] At the hearing, Chadwick's counsel also argued that the Settlement
    Agreement could be approved under Oregon law.

> (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is greater.
>
> (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

CCP § 877(a)-(b).

The Ninth Circuit has held that the procedures contained in CCP § 877.6 for making a motion for a "good faith" settlement determination are not binding on federal courts, but the provisions do create a "substantive" law that must be applied in an action in the federal courts to which California substantive law applies. *Butler*, 904 F.2d at 511 ("[N]othing is to prevent the district court from granting a motion for an early determination of the good faith question. In fact, it makes eminent good sense to do so."); *see also Trujillo v. Crescent Jewelers*, No. 99-55914, 2000 U.S. App. LEXIS 30235 (9th Cir. Nov. 29, 2000); *Medina v. Argent Mortg. Co.*, No. C05-02905 HRL, 2007 U.S. Dist. LEXIS 48312 (N.D. Cal. June 27, 2007).

CCP § 877.6 provides, in relevant part:

> (b) The issue of good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response, or the court may, in its discretion, receive other evidence at the hearing.
>
> (c) A determination by the court that the settlement was made in good faith shall bar any other tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

CCP § 877.6(b) & (c).

Though procedural, the Ninth Circuit has determined that it "makes eminent sense" for a good faith determination under this statute to be made by a federal trial court. *Butler*, 904 F.2d at 511. The party asserting the lack of good faith has the burden of proof on that issue. CCP 877.6(d); *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499-500, 698 P.2d 159, 166-67 (1985). However, the party seeking a good faith determination has the initial burden of presenting a *prima facie* case.

CCP § 877.6 requires complete notice to non-settling parties as a prerequisite to a determination of good faith. Assuming adequate notice is given, the California Supreme Court has outlined four factors a court should consider in determining good faith of a settlement, as well as two additional considerations:

- A rough approximation of plaintiff's total recovery and the settlor's proportionate liability.
- The amount paid in settlement.
- The allocation of settlement proceeds among plaintiffs.
- A recognition that a settlor should pay less in settlement than he would if he were found liable after a trial.
- The financial condition and insurance policy limits of the settling tortfeasor.
- The existence of collusion, fraud, or tortious conduct intended to injure the interests of the non-settling parties.

*Tech-Bilt*, 38 Cal. 3d at 499-500, 698 P.2d at 167. These statutes serve the policies under California law of sharing liability among parties potentially jointly at fault, while encouraging reasonable settlements. *Id.* at 494, 698 P.2d at 162.

///

///

1   A finding of good faith under CCP § 877 is a finding of

2   fact for the trial court to be made under the factors stated in

3   *Tech-Bilt. See*, *Owen v. United States*, 713 F.2d 1461, 1466 (9th

4   Cir. 1983)

5       The California Supreme Court has also stated that bad faith

6   is not necessarily "established by a showing that a settling

7   defendant paid less than his theoretical proportionate or fair

8   share." *Tech-Bilt*, 38 Cal. 3d at 499, 698 P.2d at 166. "Such a

9   rule would unduly discourage settlements" because it would not

10  consider various unknown and speculative factors such as the

11  amount of damages, probability of legal liability, the solvency

12  of the defendant, and the risk of going through trial. *Ibid.*

13      1. Rough approximation of Plaintiff's total recovery and

14  the settlor's proportionate liability. A settling party's

15  proportionate liability is one of the most important factors in

16  making a good faith determination. *Toyota Motor Sales U.S.A. v.*

17  *Superior Ct.*, 220 Cal. App. 3d 864, 871, 269 Cal. Rptr. 647, 650

18  (1990). There must be "substantial evidence to support a

19  critical assumption as to the nature and extent of a settling

20  defendant's liability . . ." *Toyota Motor Sales*, 220 Cal. App.

21  3d at 871, 269 Cal. Rptr. at 651 (substantial is not "any"

22  evidence; it must be "reasonable in nature, credible, and of

23  solid value, . . . [and] must actually be substantial proof of

24  the essentials which the law requires in a particular case.")

25  (internal quotations omitted).

26      Here, Chadwick oversaw the installation of the alluvial

27  monitoring wells at the direction of the ODA and monitored the

28  groundwater and associated reporting required by the ODA

11

pursuant to Debtor's CAFO permit.[26] In contrast to the groundwater supply wells, the alluvial monitoring wells are small in diameter (*i.e.*, 2-inch), and are only used to measure groundwater levels and water quality of the alluvial aquifer. Post-bankruptcy, Plaintiff continued to use Chadwick's services to remediate and sell the LVF dairy.[27] Since Chadwick was not involved in the construction or planning of the waste disposal system, did not drill any wells, and was solely involved in groundwater monitoring and reporting for CAFO permit compliance, Chadwick contends that IRZ cannot proportion any liability to Chadwick on its claims for negligence, contribution, and indemnity brought under Oregon law.[28] Therefore, Chadwick argues the $0.00 "walk-away" settlement is proportionate to his share of liability.

IRZ responds that Chadwick's proportionate settlement amount is zero percent (0%) of Plaintiff's claimed $18.8 million dollars in damages.[29] Chadwick has conceded that he provided hydrogeologic characterization and groundwater monitoring, including oversight on the installation of alluvial monitoring wells, and preparing a groundwater monitoring plan relied upon by Debtor for the LVF dairy. Meanwhile, Plaintiff's claims are based on the allegation that the water management system of the dairy failed.[30] If, based on Chadwick's involvement with the dairy, he is found to be one percent (1%) liable, then his liability would be $188,000, which vastly exceeds the $0.00

---

[26] Sugarman Decl., Doc. #583; Edmonds Decl., Doc. #584.
[27] Sugarman Decl., Doc. #583.
[28] Chadwick's Mem. P. & A., Doc. #585; Reply, Doc. #620.
[29] IRZ's Mem. P. & A., Doc. #609.
[30] Compl., Doc. #1.

settlement. Since substantial evidence supporting a critical
assumption as to the nature and extent of Chadwick's liability
has not been provided, IRZ contends this factor supports denial
of this motion.

Chadwick replies that IRZ has not, nor can it, proportion
any liability to Chadwick.[31] Plaintiff accepted the Settlement
Agreement, which demonstrates that Plaintiff has estimated
Chadwick's proportionate liability to be zero. Plaintiff found
no fault in Chadwick's work at any time, including when he
engaged Chadwick to continue monitoring the groundwater during
the pendency of the sale.[32]

Moreover, Chadwick contends that IRZ has not plead,
discovered, disclosed, or otherwise established that the
services performed by Chadwick were in any way connected to the
failure of the LVF dairy's failed waste-water management
system.[33] IRZ addresses the hydrogeologic characterization and
groundwater monitoring performed by Chadwick as required by and
under the supervision of the ODA, but IRZ has not made any
connection between that characterization and monitoring to the
failure of the waste-water management system. Further, IRZ
ignores that groundwater monitoring is different than dairy
waste-water management, and IRZ has not explained how Chadwick's
supply and installation of four alluvial monitoring wells is
relevant to the failure of the waste-water management system.

The complaint alleges nearly $19 million dollars in *alleged*
damages, but there is no basis from Plaintiff that can be

---

[31] Reply, Doc. #620.
[32] Sugarman Decl. ¶ 8 at 3, Doc. #583.
[33] Reply at 4-5, Doc. #620.

construed as evidence of possible recovery. Plaintiff's and his general counsel's experience has never been presented to the court as "in depth" in litigation matters concerning dairy construction processes. In fact, Plaintiff has special counsel representing him in this litigation.

Though Mr. Sugarman certainly had much time observing the damage the failed system caused, his declaration suffers from foundational problems with respect to Chadwick's pre-petition services.[34] That said, Plaintiff hired Chadwick post-bankruptcy to continue his work while Plaintiff endeavored to bring the dairy into compliance with ODA's demands. Mr. Sugarman does have personal knowledge of Chadwick's post-petition services. He has opined his finding of no fault with Chadwick's work, and likely would not want to continue using Chadwick's services if there were issues about his performance.

Chadwick also includes the declaration of Joel Edmonds, the General Manager of LVF dairy, in support of this motion. As General Manager, Mr. Edmonds had the opportunity to work with Chadwick during the time he performed the groundwater monitoring and associated reporting required by the ODA and CAFO permit, and such work product was "impeccable."[35] Chadwick monitored water quality and water wells, which required running numerous tests on the water for nitrogen concentrations and other parameters. Chadwick did not drill any wells.[36]

Unlike other third-party defendants, Chadwick was on the periphery of the dairy and physically far away from it. Chadwick

---

[34] Sugarman Decl., Doc. #583.
[35] Edmonds Decl. ¶ 2 at 2, Doc. #584.
[36] *Id.* ¶ 3.

1  did not prepare the final lagoon design, did not design the

2  irrigation plan, was not retained to design lagoons, did not

3  design lagoons, did not design piping for waste pipes, did not

4  design the overflow pipes relates to the effluent, and did not

5  design the overflow drains related to the effluent system.

6       When pressed at the hearing, IRZ was unable to say with any

7  specificity anything Chadwick did or did not do that could have

8  contributed to failure of the waste-water management system. IRZ

9  did not allege that Chadwick failed to report on anything with

10 respect to water quality, nor that such reporting directly or

11 indirectly resulted in the system's failure. IRZ repeated prior

12 arguments that allowed the third-party complaint to survive

13 Chadwick's motion to dismiss, but such arguments were previously

14 presented pre-discovery and are less persuasive now. Since then,

15 it has become clear that Chadwick's planning pertained to

16 monitoring only, rather than to the design, planning, or

17 installation of the system, and Chadwick's alluvial wells were

18 separate monitoring wells that did not affect the operation of

19 the system itself.

20      Meanwhile at the hearing, Chadwick's counsel clarified that

21 Chadwick was not testing the effluent leaving the dairy. The

22 path of the effluent and its effect on the groundwater was a

23 critical component of the dairy's compliance with the CAFO

24 permit. Obviously, the dairy did not comply with the CAFO

25 permit, but there does not appear to be any evidence that

26 Chadwick had any hand in that. Since Chadwick was not involved

27 in either the design, planning, installation, or operation of

28 the waste-water management system, it seems far-fetched that he

would have any liability unless he failed to properly report what his monitoring revealed, and such failed reporting contributed to failure of the system itself. IRZ could not point to any specifics.

This contrasts Chadwick's situation from the other third-party defendants who were part of the design and operation of the waste-water management system itself. The only area that may be questionable is whether Chadwick was asked to opine whether the hydrogeologic characterization of the groundwater flow made the dairy site improper for such a large operation. Chadwick's attorney was unable to tell the court whether Chadwick had any involvement of that sort. But nothing in IRZ's presentation suggested Chadwick was so involved.

The inquiry is the proportionate liability of the settling party estimated by a reasonable person at the time of the settlement. *Torres v. Union Pac. R.R. Co.*, 157 Cal. App. 3d 499, 508, 203 Cal. Rptr. 825, 831 (1984). Based on the evidence at the time of the Settlement Agreement, it appears that Chadwick had no liability since he was not involved in the design, construction, or operation of the waste-water management system; instead, he merely monitored the groundwater.

Under CCP § 877.6(d), IRZ has the burden of proof on the lack of good faith issue. IRZ has presented no proof establishing Chadwick's potential proportionate share of liability. The lack of proof is a flaw in IRZ's position.

2. <u>Amount paid in settlement</u>: IRZ says that the amount paid in settlement does not suggest good faith.[37] Relying on *Mattco*,

---

[37] IRZ's Mem. P. & A., Doc. #609.

1   IRZ contends here that Chadwick's $0.00 settlement is not within

2   the reasonable range of its share of the $18.8 million in

3   liability alleged by the Plaintiff. *Mattco Forge, Inc. v. Arthur*

4   *Young & Co.*, 38 Cal. App. 4th 1337, 1351, 45 Cal. Rptr. 2d 581,

5   589 (1995), *reh'g denied*, 39 Cal. App. 4th 1210 ($250,000

6   settlement out of a $39 million claim (0.006%) was not within

7   the reasonable range or "ballpark" of the settlor's share of

8   proportionate liability). Since paying nothing is the smallest

9   amount a party could pay in settlement, IRZ claims the

10  Settlement Agreement's terms do not suggest good faith.

11      Chadwick replies that *Mattco* is distinguishable. In *Mattco*,

12  a plaintiff contractor had its suit dismissed because they

13  fabricated estimate sheets to increase damages. *Mattco*, 38 Cal.

14  App. 4th at 1354, 45 Cal. Rptr. 2d at 591. The court ordered

15  Mattco to pay $1.4 million in sanctions or the matter would be

16  dismissed. Mattco entered into a mutual release and sued its

17  accounting firm. The good faith settlement in question was

18  between Mattco and its own attorney for malpractice, and the

19  court refused to approve the good faith settlement because the

20  allegations against the settlement included fraud. *Id.* at 1357,

21  45 Cal. Rptr. 2d at 593. The issue in *Mattco* was the

22  sufficiency, or lack thereof, of the evidence that the

23  settlement was in the "ballpark" of the proportionate liability.

24  Additionally, the proportionate liability issues in *Mattco* were

25  secondary to claims of actual fraud in rejection of the good

26  faith of the settlement.

27      But here, Chadwick presented a declaration from LVF dairy's

28  General Manager that suggests Chadwick was likely not liable.

Chadwick has set forth an evidentiary basis for the settlement. The settlement was reached in an adversarial manner, after the third-party complaint was litigated, and after a mediation.[38]

The fact that Chadwick is paying nothing should not control. The settlement may be in good faith even if it is for a sum grossly disproportionate to what the trial court might have considered the probable recovery from the settling joint tortfeasor. *Kohn v. Superior Court*, 142 Cal. App. 3d 323, 327-28, 191 Cal. Rptr. 78, 81-82 (1983).

3. <u>Allocation of settlement proceeds among plaintiffs</u>: Allocation of settlement proceeds is inapplicable because Plaintiff Trustee is the only plaintiff here. If there were other plaintiffs, allocation would be inapplicable because the settlement is $0.00.

4. <u>Recognition that a settlor should pay less in settlement than if found liable at trial</u>: Chadwick believes that he and Plaintiff have each performed a reasonable risk analysis of potential outcomes.[39] Chadwick characterizes IRZ's position as obfuscating the nature of settlement agreements generally. The Settlement Agreement accomplishes the two objectives of CCP § 877.6: equitable sharing of costs among the parties at fault and encouragement of settlements.

Citing *Tech-Bilt*, IRZ acknowledges that a party settlor should pay less in settlement than it would if it were to be found liable after a trial, but that such recognition should not extend to the "extreme" that a settlor should pay nothing in

---

[38] Dias Decl., Doc. #581; Sugarman Decl., Doc. #583.
[39] Chadwick's Mem. P. & A., Doc. #585.

settlement.[40] *Tech-Bilt*, Cal. 3d at 499, 698 P.2d at 166.

The court must also consider not only the settlor's potential liability to the Plaintiff, but also its proportionate share of culpability as among the parties alleged to be liable for the same injury. *TSI Seismic Tenant Space, Inc. v. Superior Court*, 149 Cal. App. 4th 159, 166, 56 Cal. Rptr. 3d 751, 756 (2007).

It does not appear that any of the third-party codefendants have a problem with Chadwick's settlement. None have appeared in opposition, which suggests that none of the non-settling third-party defendants would seek indemnity against Chadwick. *See*, *Long Beach Mem'l Med. Ctr. V. Superior Court*, 172 Cal. App. 4th 865, 875, 91 Cal. Rptr. 3d 494, 502 (2009) (comparative indemnity); *TSI Seismic Tenant Space*, 149 Cal. App. 4th at 167, 56 Cal. Rptr. 3d at 756-57 (implied indemnity). Additionally, Chadwick's counsel has indicated that Chadwick is retired and has no insurance, so he is not a "deep pocket defendant." If Chadwick was in fact not responsible, his settlement would not be injurious to the interests of other third-party defendants or to IRZ. *Long Beach Mem'l Med. Ctr.*, 172 Cal. App. 4th at 875-76, 91 Cal. Rptr 3d at 502-03.

5. <u>Financial condition and insurance policy limits of settling defendants</u>: A good faith settlement can account for limitations arising from the financial condition and insurance policy limits of settling defendants. *Tech-Bilt*, 38 Cal. 3d at 499-500, 698 P.2d at 166-67. As noted above, Chadwick's counsel indicated at the hearing that Chadwick is retired, has no

---

[40] IRZ's Mem. P. & A., Doc. #609.

insurance, and has paid over $130,000.00 in legal fees so far. The lack of insurance coverage suggests a compromise in a smaller sum should be within the "range of reasonableness."

6. The existence of collusion, fraud, or tortious conduct intended to injure the interests of the non-settling defendants: The existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants is the final determining factor enumerated in *Tech-Bilt*. *Techbilt*, Cal. 3d at 499, 698 P.2d at 166. Here, the settlement was reached in an adversarial manner after the third-party complaint was litigated, and after a mediation. This suggests a lack of collusion. Chadwick's attorney, Michael A. Dias, declares that no collusion occurred during the negotiation of the Settlement Agreement.[41]

On the other hand, IRZ alleges the existence of collusion, fraud, or tortious conduct aimed to injure its interests as a non-settling party.[42] IRZ compares this matter to *Mattco*, where the plaintiff did not bring an action against the settling party, and the settling party was only involved through a cross-complaint by a non-settling defendant. *Mattco*, 38 Cal. App. 4th at 1353, 45 Cal. Rptr. 2d 590. Ultimately, the *Mattco* court found that the disproportionately low settlement was aimed at injuring the non-settling defendants' interests.

As in *Mattco*, Chadwick and Plaintiff here do not have claims against each other, and Chadwick is only involved through IRZ's third-party complaint. The purpose of the Settlement

---

[41] Dias Decl., Doc. #581.
[42] IRZ's Mem. P. & A., Doc. #609.

20

Agreement, as in *Mattco*, is to allow Chadwick to "avoid the costs of litigation" in its action with IRZ.[43] In effect, Chadwick is avoiding its defense against IRZ without IRZ's consent to dismiss. Though procuring a dismissal of IRZ's claims through a third party, such dismissal is based on the merits of Plaintiff's claim and the probability that Chadwick will not be found liable due his lack of involvement in the planning, installation, or operation of the waste-water management system.

Moreover, IRZ has failed to specifically identify any such collusion, fraud, or tortious conduct. No affirmative evidence of collusive interaction has been presented. The evidence appears to establish very little interaction between Chadwick's counsel and Plaintiff.

In sum, Chadwick has set forth an evidentiary basis for the settlement, which justifies the presumption that a reasonable valuation of the claim against Chadwick was reached. *See*, *Erreca's v. Superior Court*, 19 Cal. App. 4th 1475, 1495-96, 24 Cal. Rptr. 2d 156, 170 (1993). Having met his *prima facie* burden, we turn to whether IRZ has met its burden of proof under CCP § 877.6(d). The court finds IRZ has not.

Under CCP § 877.6(d), the party asserting the lack of good faith shall have the burden on that issue. IRZ is required to show that the Settlement Agreement is so far "out of the ballpark" in relation to the factors set forth in *Tech-Bilt* and its progeny as to be inconsistent with the equitable objectives of the statute. *Horton v. Superior Court*, 194 Cal. App. 3d 727, 735, 238 Cal. Rptr. 467, 471 (1987); *Rutgard v. Haynes*, 61 F.

---

[43] Settlement Agreement, *Ex. A*, Doc. #582.

Supp. 2d 1082, 1086 (S.D. Cal. 1999) (finding settling defendant did not have "an integral or primary role" in prosecuting the case that led to malicious prosecution claim). IRZ has provided no declarations and has presented nothing except argument about how settling the case with no payment is bad faith. But IRZ could not even articulate how Chadwick was responsible for any part of the damage.

Consideration

    IRZ's next objection to the Settlement Agreement is lack of consideration.[44] All contracts require consideration to be legally enforceable. "Consideration is present when the promisee confers a benefit or suffers a prejudice." *Prop. Cal. SCJLW One Corp. v. Leamy*, 25 Cal. App. 5th 1155, 1165, 236 Cal. Rptr. 3d 500, 508 (2018), citing *Steiner v. Thexton*, 48 Cal. 4th 411, 420-21, 106 Cal. Rptr. 3d 252, 259-60, 226 P.3d 359, 365-66 (2010). Here, IRZ argues that Chadwick provides no benefit to Plaintiff under the Settlement Agreement, so the Settlement Agreement lacks consideration and is void. IRZ notes that no claims against Plaintiff are being released and Chadwick is not required to do anything at all, so he is neither conferring any benefit to Plaintiff, nor proffering a detriment to Chadwick. Instead, the parties have agreed to "walk away" from this action despite having no claims against each other. In effect, they have agreed that Chadwick may walk away from its defense against IRZ without IRZ's consent, says IRZ.

///

---

[44] IRZ's Mem. P. & A., Doc. #609.

Moreover, IRZ says that the attorney's fees provision within the Settlement Agreement cannot constitute a benefit granted as a waiver of costs because Plaintiff has not sued Chadwick and they are not adverse parties. Since Chadwick cannot be considered a "prevailing party" in any future judgment against Plaintiff, Chadwick cannot waive a right that he does not have—specifically, the right to fees and costs as a prevailing party.

Chadwick replies that the Settlement Agreement was entered into by Chadwick and Plaintiff after an arm's length good faith negotiation with the intent to resolve "any and all past, present, and future claims which are, were, or could have been asserted by or between them . . . which could have been filed arising out of or related to the Disputes."[45]

IRZ's claim that Plaintiff and Chadwick have no claims against each other disregards that IRZ's allegations are derivative of Plaintiff's complaint against IRZ.[46] Under the Settlement Agreement, Chadwick is expressly waiving and releasing any future claims that may arise against Plaintiff. Chadwick insists such release is neither hollow nor illusory. Additionally, Chadwick contests that he "is not required to do anything at all as a result of this agreement" because he is foregoing any remedies he may hold, now or in the future, whether or not those claims are meritorious. Chadwick has not and will not file a proof of claim in this bankruptcy as a creditor, lienholder, or any other party with standing to make

---

[45] Reply, Doc. #620, citing Settlement Agreement at 1, ¶ F.
[46] *Id.*

such claim. In contrast to the other third-party defendants,
Chadwick will never receive any benefit from this bankruptcy
case. Valid consideration exists because Chadwick has waived any
right to future benefit should facts later arise showing a
potential benefit to Chadwick.

"[S]urrender of a possibly meritless claim which is
disputed in good faith is valid consideration. The rationale of
these cases is that parties who settled in order to avoid
litigation should be given the benefit of their bargain." *Murphy
v. T. Rowe Price Prime Reserve Fund, Inc.*, 8 F.3d 1420, 1423
(9th Cir. 1993). As noted above, Chadwick did not file a proof
of claim in this bankruptcy case. He has paid over $130,000.00
in legal fees so far. The "walk away" settlement results in
waiver of any possibility of filing a claim or recovering fees,
which suffices as valid consideration.

Applicable Oregon Law

Chadwick argues that the settlement resolves all claims
asserted by IRZ under Oregon law.

*Negligence*

"[W]hen a plaintiff does not join a tortfeasor as a
defendant, the comparative negligence statutes permit the named
defendant to file a third-party complaint against the
tortfeasor." *Lasley v. Combined Transp., Inc.*, 351 Or. 1, 21-22,
261 P.3d 1215, 1227 (2011), citing Or. Rev. Stat. ("ORS")
§ 31.600(3). Such "third-party defendant will not be liable to
the defendant but, potentially, will be liable to the
plaintiff." *Id.* at 22. As noted above, Chadwick was not retained

by IRZ. Chadwick was hired by Debtor and by Plaintiff to supervise installation of alluvial groundwater monitoring wells. Chadwick did not contract with IRZ or perform services on IRZ-owned property. Therefore, Chadwick contends that IRZ's claim of negligence is derived from the Trustee's claims against IRZ, so the settlement agreement between Trustee and Chadwick resolves IRZ's negligence claim against Chadwick.[47]

IRZ responds that Chadwick's arguments are inappropriate, irrelevant, and, in effect, a dispositive motion for summary judgment under a different name.[48]

The court disagrees. IRZ attempts to reverse the burden of proof. Chadwick's involvement in the ill-fated dairy waste project was as a tangential monitoring professional. IRZ has not established any factual or legal basis for Chadwick's responsibility for the damages alleged in this case. No evidence of Chadwick's culpability has been presented by IRZ. This analysis supports a finding that the Settlement Agreement was executed in good faith because there is no evidence that Chadwick's probable, proportionate share of liability exceeds the settlement amount.

*Indemnity*

To prevail on a cause of action for indemnity, "the claimant must plead and prove that (1) it has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and

---

[47] Chadwick's Mem. P. & A., Doc. #585.
[48] IRZ's Mem. P. & A., Doc. #609.

the defendant, the obligation ought to be discharged by the latter." *Rains v. Stayton Builders Mart, Inc.*, 359 Or. 610, 640, 375 P.3d 490 (2016), quoting *Eclectic Inv., LLC v. Patterson*, 357 Or. 25, 33, 346 P.3d 468, 472 (2015), *opinion adhered to as modified on recons.*, 357 Or. 327, 354 P.3d 678 (2015).

Chadwick claims IRZ failed to plead the existence of an independent contractual relationship between IRZ and Chadwick. Since privity of contract between IRZ does not exist, Chadwick contends that IRZ's derivative indemnity claims against Chadwick are resolved by this settlement.

IRZ responds, potential liability for indemnity to a non-settling defendant is an important consideration for determining whether to approve a settlement by an alleged tortfeasor.[49] *TSI Seismic Tenant Space*, 149 Cal. App. 4th at 166, 56 Cal. Rptr. 3d at 756. The Settlement Agreement results in Chadwick sharing none of the liability alleged here. If, for example, Chadwick was found 90% liable for Plaintiff's $18.8 million dollar damage claim, he would not be required to pay anything in damages. IRZ says there must be substantial evidence to support a critical assumption as to the nature and extent of its liability, and Chadwick cannot show substantial evidence that it is not liable for indemnity in this action.

A defendant may, as third-party plaintiff, "serve a summons and complaint on a nonparty *who is or may be liable* to it for *all or part* of the claim against it." Civ. Rule 14(a)(1) (emphasis added). "A third-party claim may be asserted under [Civ.] Rule 14(a) only when the third party's liability is in

---

[49] IRZ's Mem. P. & A., Doc. #609.

some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant. The basis of the third-party claim may be *indemnity*, subrogation, *contribution*, express or implied warranty, or some other theory." *SCD RMA, LLC v. Farsighted Enters., Inc.*, 591 F. Supp. 2d 1141, 1145 (D. Haw. 2008) (emphasis added; citations omitted). This policy is designed to "promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third party who may be derivatively liable to the defendant for all or part of the plaintiff's original claim." *Kim v. Fujikawa*, 871 F.2d 1427, 1434 (9th Cir. 1989).

"To require a defendant who raises an indemnity cross-claim to plead and prove actual discharge of a judgment before the judgment is entered against the defendant raising it would contravene the purpose and destroy the usefulness of the cross-claim rule." *Kahn v. Weldin*, 60 Or. App. 365, 371-72, 653 P.2d 1268, 1272-73 (1982).

Oregon law no longer provides for joint liability of multiple tortfeasors. "[T]he Oregon Legislative Assembly has instituted a system of comparative fault in which (1) the trier of fact allocates fault and responsibility for payment of damages between the parties; and (2) each tortfeasor is liable for damages attributable to only its own negligence." *Eclectic*, 357 Or. at 35-36, 346 P.3d at 474 ("Oregon's comparative fault system eliminates the need for judicially created indemnity in situations like this one-in which a defendant is liable, if at all, for only the damages that resulted from its own negligence[.]").

1    *Rains* involved strict products liability, which is treated

2    differently than negligence with respect to indemnity and

3    contribution. *See also*, *Wyland v. W.W. Grainger, Inc.*, 2015 U.S.

4    Dist. LEXIS 76156, at *6 (D. Or. June 11, 2015) ("[T]he Oregon

5    Legislature set product liability apart from all other tort

6    claims covered by comparative fault.").

7        When ORS § 31.610 applies, common law indemnity is not

8    available. *Eclectic*, 357 Or. at 330, 354 P.3d at 679. "Thus, in

9    the circumstances presented here—in which ORS § 31.610 applies,

10   joint tortfeasors are liable only for their own negligence, and

11   a jury determines the relative fault and responsibility of each

12   tortfeasor—a judicially created claim for common-law indemnity

13   is unnecessary." *Ibid.*

14       IRZ's indemnity claim does not initially appear to be

15   applicable under *Rains* because (1) this case does not involve

16   claims of strict products liability, and (2) ORS § 31.610

17   applies to the negligence claims. However, Trustee's second

18   cause of action against IRZ is for breach of contract under the

19   September 30, 2015 written work order and November 17, 2015

20   agreement.[50] ORS § 31.610 only applies to indemnity for

21   negligence causes of action, so indemnity may still be available

22   for contractual liability.

23              [The claim] cannot simply be an independent or
               related claim but must be based upon
24             plaintiff's claim against defendant. The
               crucial characteristic of a [Civ.] Rule 14
25             claim is that defendant is attempting to
               transfer to the third-party defendant the
26             liability asserted against [the defendant] by
               the original plaintiff. The mere fact that the
27             alleged third-party claim arises from the same

28   _____
     [50] Doc. #1.

transaction or set of facts as the original
claim is not enough.

*Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 200 (9th Cir. 1988), quoting 6 *Fed. Prac. & Proc.* § 1446 at 257 (1971 ed.).

But Chadwick was not hired by IRZ. Chadwick was first hired by Debtor, and later by Plaintiff. Since no privity of contract exists between IRZ and Chadwick, it appears that indemnity liability for breach of contract is also unavailable, which supports the finding that the Settlement Agreement was executed in good faith because there is no evidence that Chadwick's probable, proportionate share of liability exceeds the settlement amount.

*Contribution*

Under ORS § 31.800(1), contribution is available when two or more persons are liable in tort for the same injury to property. The right of contribution exists even if judgment has not yet been entered against any of them. Since Trustee asserted a claim for negligence against IRZ for construction defects, IRZ has asserted a negligence claim against third-party defendants, including Chadwick, for those same defects.

When the Oregon legislature changed its comparative negligence scheme in 1995 to eliminate joint and several liability, claims for contribution were modified as well. ORS § 31.610. The Oregon Supreme Court in *Lasley* stated:

> [U]nder Oregon's current comparative negligence scheme, no tortfeasor is liable for more than its percentage of fault, and that percentage of fault is determined in the original negligence action brought by the

> plaintiff. ORS [§] 31.610(2); ORS [§] 31.805. A defendant cannot bring a contribution action to seek a different determination of its percentage of fault. A contribution action serves only to permit a defendant who has "paid more" than its "proportional share of the common liability" to obtain contribution from another person who is also liable for the same injury or death. ORS [§] 31.800(2).

*Lasley*, 351 Or. at 19, 261 P.3d at 1226. "[M]uch like contribution, a claim of common-law indemnity is unnecessary and unjustified 'in cases . . . in which jurors allocate fault' pursuant to [ORS] § 31.605, which allows a party to pose special questions to a fact-finder as to each party's degree of fault." *Wyland v. W.W. Grainger, Inc.*, 2015 U.S. Dist. LEXIS 76156 at *6 (D. Or. June 11, 2015).

Plaintiff asserted a negligence claim against IRZ for construction defects and IRZ asserted a third-party negligence claim against Chadwick and other third-party defendants for those same construction defects. Since Chadwick's use of alluvial wells to monitor groundwater levels and quality was unrelated to the construction defects, Chadwick insists that IRZ's derivative claim of contribution is resolved by this settlement agreement.

As with negligence, Chadwick's role in the waste-water management system was as a tangential monitoring professional. No evidence of Chadwick's culpability has been presented by IRZ, so Chadwick's probable, proportionate liability appears to be zero based on this record. This supports a finding that the Settlement Agreement was executed in good faith.

///

///

<u>Good faith settlement under Oregon law</u>

ORS § 31.815 (formerly § 18.455 and renumbered in 2003) provides:

> (1) When a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury to person or property or the same wrongful death or claimed to be liable in tort for the same injury or the same wrongful death:
>
> (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but the claimant's claim against all other persons specified in ORS 31.600 (2) for the injury or wrongful death is reduced by the share of the obligation of the tortfeasor who is given the covenant, as determined under ORS 31.605 and 31.610; and
>
> (b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.
>
> (2) When a covenant described in subsection (1) of this section is given, the claimant shall give notice of all of the terms of the covenant to all persons against whom the claimant makes claims.

ORS § 31.815.

Application of the law has two requisites. First, direct evidence of good faith. *State by State Acci. Ins. Fund Corp. v. Barkman*, 101 Or. App. 20, 26, 789 P.2d 8 (1990). Second, it requires notice to all persons against whom the claimant makes claims. *McCarthy v. Hensel Phelps Constr. Co.,* 64 Or. App. 256, 259, 667 P.2d 558 (1983). Though good faith is a question of fact, Oregon courts have not yet defined good faith in the settlement context.[51] *Id.*

---

[51] Neither party has provided any controlling Oregon authority to the contrary.

31

There is no dispute that Chadwick has provided proper notice.

Chadwick provided evidence of good faith. The declarations supporting the motion have been summarized above. The evidence is there was no known problem with Chadwick locating the alluvial wells or his monitoring of the groundwater connected to the failure of the waste management system. IRZ presented no facts contesting this—only vague speculation. Plaintiff himself hired Chadwick to assist in the post-petition phase of the project to help satisfy the ODA's requirements and demands during the misfortunate failure of the dairy waste system and ensuing administration of the property.

Supporting Affidavits

Lastly, IRZ contests Chadwick's declarations in support of the motion as lacking personal knowledge of Chadwick's work on this project.[52] The declarants, Attorney Michael A. Dias, Plaintiff Trustee Randy Sugarman, and General Manager Joel Edmonds are individuals who were not involved in the operations of the farm during the relevant time period, and thus IRZ claims the declarations should be considered irrelevant as to any determination of Chadwick's liability.

Chadwick replies that IRZ has failed to define the "relevant period."[53] On the contrary, Chadwick was hired by Plaintiff to work for him while the dairy was being remediated for sale. And though Joel Edmonds became involved in the dairy

---

[52] IRZ's Mem. P. & A., Doc. #609.
[53] Reply, Doc. #620.

post-petition, he managed its operations while Chadwick was still performing groundwater monitoring services. Thus, both Plaintiff and Edmonds have first-hand knowledge of the groundwater monitoring and reporting performed by Chadwick, as well as the requirements by the ODA to maintain the CAFO permit. Attorney Dias' declaration authenticates the Settlement Agreement and how it was reached.

The court agrees that the three declarations are all relevant. Further, the declarations are dispositive in the absence of contrary evidence submitted by IRZ.

## CONCLUSION

Chadwick has set forth an evidentiary basis for finding that the Settlement Agreement was executed in good faith. IRZ has failed to meet its burden of proving the Settlement Agreement was executed in bad faith. Accordingly, the court recommends the District Court GRANT the motion.

The court will issue a subsequent order setting deadlines for objections to this proposed report and recommendation to be heard in District Court before the Honorable Ana de Alba.

**Dated:** Jan 17, 2023

**By the Court**

**René Lastreto II, Judge**
**United States Bankruptcy Court**

33

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**


     The Clerk of Court is instructed to send the Order/Judgment
or other court generated document transmitted herewith to the
parties below. The Clerk of Court will send the Order via the
BNC or, if checked ___, via the U.S. mail.


Tracy A. Agrall
246 W. Shaw
Fresno CA 93704

Steve Alfieris
502 West Grangeville Blvd
Hanford CA 93230

Hagop T. Bedoyan
7647 N. Fresno Street
Fresno CA 93720

Michael Brown
1809 West Main Street, Suite H
Visalia CA 93291

D. Gary Christensen
3400 U.S. Bancorp Tower 111 S.W. 5th Ave
Portland OR 97204

Paula C. Clark
502 West Grangeville Blvd
Hanford CA 93230

Ronald A. Clifford
1100 Town and Country Rd., Ste 1250
Orange CA 92868

Michael A. Dias
502 W Grangeville Blvd
Hanford CA 93230

Anthony Dutra
425 Market Street
26th Floor
San Francisco CA 94105

Mark F. Enenbach
First National Tower #3700
1601 Dodge St
Omaha NE 68102

David A. Foraker
111 SW 5th Ave #3400
Portland OR 97204

```
 1   Vanessa Triplett Kuchulis
     111 S. W. 5th Ave #3400
 2   Portland OR 97204

 3   Sanford R. Landress
     3400 U.S. Bancorp Tower
 4   111 SW 5th Ave
     Portland OR 97204
 5
     John H. MacConaghy
 6   645 First St., West, Suite D
     Sonoma CA 95476
 7
     Randy Sugarman
 8   583 1st St W
     Sonoma CA 95476
 9
     Aaron Moore
10   1600 West St.
     Redding CA 96001
11
     James J. Niemeier
12   First National Tower, Suite 3700
     1601 Dodge Street
13   Omaha NE 68102

14   Kyle D. Sciuchetti
     111 SW Fifth Ave #3400
15   Portland OR 97204

16   Lindy H. Scoffield
     3043 Gold Canal Dr #100
17   PO Box 269127
     Sacramento CA 95826-9127
18
     Shanon J Slack
19   2030 Main Street
     Suite 1300
20   Irvine CA 92614

21   Randy Sugarman
     583 1st St W
22   Sonoma CA 95476

23   Benjamin P. Tarczy
     111 SW Fifth Avenue, Suite 3400
24   Portland OR 97204

25   Duncan C. Turner
     Badgley Mullins Turner PLLC
26   19929 Ballinger Way NE #200
     Seattle WA 98155
27

28
```

1  Scot M. Tyler
   100 N. Tryon St #4700
2  Charlotte NC 28202

3  Kurt F. Vote
   265 E. River Park Circle, Suite 310
4  Fresno CA 93720

5  Riley C. Walter
   265 E. River Park Circle Suite 310
6  Fresno CA 93720

7  Brianna J. Wellman
   111 SW Fifth Ave #3400
8  Portland OR 97204

9  Neal L. Wolf
   425 Market St 26th Fl
10 San Francisco CA 94105

11 Tracy Hope Davis
   Gregory S. Powell
12 U.S. Trustee's Office
   2500 Tulare St #1401
13 Fresno CA 93721

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28