**WANGER JONES HELSLEY PC**
Riley C. Walter  #91839
Kurt F. Vote   #160496
265 E. River Park Circle, Suite 310
Fresno, CA  93720
Telephone:	(559) 233-4800
Facsimile:	(559) 233-9330
Email:	rwalter@wjhattorneys.com
	kvote@wjhattorneys.com

**ZUCKERMAN SPAEDER LLP**
Carl S. Kravitz, *pro hac vice pending*
R. Miles Clark, *pro hac vice pending*
1800 M Street, NW, Suite 1000
Washington, DC 20036
Telephone:	(202) 778-1800
Facsimile:	(202) 822-8106
Email:	ckravitz@zuckerman.com
	mclark@zuckerman.com

Attorneys for:  Plaintiff RANDY SUGARMAN, Liquidating Trustee

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DIVISION OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| In re<br><br>GREGORY JOHN TE VELDE,<br><br>       Debtor.<br><hr>RANDY SUGARMAN, Chapter 11 Trustee,<br><br>       Plaintiff,<br><br>       v.<br><br>IRZ CONSULTING, LLC aka IRC CONSTRUCTION DIVISION, LLC,<br><br>       Defendants.<br><hr>AND RELATED THIRD PARTY COMPLAINT AND CONSOLIDATED ACTIONS. | Bankruptcy Case No. 18-11651-A-11<br><br>Chapter 11<br><br>Adv. Pro. No. 19-01033-B<br><br>DCN: WJH-4<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  April 23, 2025<br>Time:  11:00 a.m.<br>Place:  2500 Tulare Street<br>       Fresno, CA 93721<br>       5th Floor, Courtroom 13<br>Judge:  Honorable Rene Lastreto II |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 5

FACTUAL AND PROCEDURAL BACKGROUND................................................................... 6

SUMMARY JUDGMENT STANDARD ..................................................................................... 8

ARGUMENT ................................................................................................................................. 8

    I.    UNDER THE "DESIGN, ENGINEER, AND PROJECT MANAGEMENT SERVICES CONTRACT," IRZ AGREED TO PERFORM A SERIES OF ENGINEERING TASKS ................................................................................................... 8

    II.    DEFENDANTS ADMIT THAT IRZ PERFORMED NO ENGINEERING TASKS ........................................................................................................................... 12

    III.    IRZ FAILED TO PERFORM ADDITIONAL CONTRACTUAL OBLIGATIONS ................................................................................................................ 13

    IV.    DEFENDANTS HAVE WAIVED ANY ARGUMENT THAT THE CONTRACT HAS BEEN MODIFIED BY THE PARTIES ........................................ 14

    V.    COMPARATIVE FAULT DOES NOT APPLY TO PLAINTIFF'S BREACH OF CONTRACT CLAIM AS A MATTER OF LAW ............................................ 16

    VI.    THERE IS NO EVIDENCE TO SUPPORT APPLICATION OF THE DOCTRINES OF WAIVER OR ESTOPPEL TO PLAINTIFF'S BREACH OF CONTRACT CLAIM ................................................................................................ 16

    VII.    LINDSAY HAS AGREED TO INDEMNIFY IRZ FOR ANY LOSSES INCURRED IN THIS LAWSUIT ......................................................................... 18

CONCLUSION ............................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986) ............................................................................................................ 8

*Barinaga v. JP Morgan Chase & Co.*,
　749 F. Supp. 2d 1164 (D. Or. 2010) ................................................................................. 15

*Bennett v. Farmers Ins. Co.*,
　26 P.3d 785 (Or. 2001) ..................................................................................................... 17

*Brownlee v. Brownlee*,
　665 S.W.2d 111 (Tex. 1984) ............................................................................................ 15

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986) ........................................................................................................... 8

*Carothers v. Carothers*,
　488 P.2d 1185 (Or. 1971) ........................................................................................... 14, 17

*Drummond Am., LLC v. Share Corp.*,
　692 F. Supp. 2d 650 (E.D. Tex. 2010) ............................................................................. 15

*Hale v. Groce*,
　744 P.2d 1289 (Or. 1987) ................................................................................................. 16

*Hampton Tree Farms, Inc.*,
　974 P.2d 738 (Or. Ct. App. 1999) .................................................................................... 16

*Henderson v. City of Simi Valley*,
　305 F.3d 1052 (9th Cir. 2002) ............................................................................................ 8

*In re te Velde*,
　2022 WL 16943918 (Bankr. E.D. Cal. Nov. 10, 2022) ...................................................... 7

*John R. Sand & Gravel v. United States*,
　552 U.S. 130 (2008) ......................................................................................................... 15

*KST Data, Inc. v. DXC Tech. Co.*,
　980 F.3d 709 (9th Cir. 2020) ............................................................................................ 15

*Lowes v. Thompson*,
　546 P.3d 311 (Or. App. Ct. 2024) ................................................................................... 5, 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
　475 U.S. 574 (1986) ........................................................................................................... 8

*Mitchell v. Hughes*,
  157 P. 965 (Or. 1916) .................................................................................................... 17, 18

*Oregon v. Gutierrez-Medina*,
  403 P.3d 462 (Or. Ct. App. 2017) ........................................................................................ 16

*PacifiCorp v. Northwest Pipeline GP*,
  879 F. Supp. 2d 1171 (D. Or. 2012) ..................................................................................... 16

*Pakootas v. Teck Cominco Metals, Ltd.*,
  905 F.3d 565 (9th Cir. 2018) .................................................................................................. 8

*Waterway Terminals Co. v. P.S. Lord Mech. Contractors*,
  406 P.2d 556 (Or. 1965) ................................................................................................ 17, 18

*Young v. Allstate Co.*,
  662 F. Supp. 3d 1066 (C.D. Cal. 2023) ............................................................................... 15

**Rules**

Fed. R. Civ. P. 8(c) ...................................................................................................................... 14

Fed. R. Bankr. P. 7008 ................................................................................................................. 14

Fed. R. Bankr. P. 7056 ................................................................................................................... 8

Fed. R. Civ. P. 56(a) ...................................................................................................................... 8

## PRELIMINARY STATEMENT

Plaintiff Randy Sugarman ("Plaintiff"), Liquidating Trustee, hereby submits this Memorandum of Points and Authorities in Support of Plaintiff's Third Motion for Partial Summary Judgment. The matters raised in the motion relate to Plaintiff's breach of contract claim (the Second Claim for Relief in the First Amended Complaint), certain affirmative defenses as they relate to the contract claim, and the indemnity provision in the agreement in which the founder of Defendant IRZ Consulting, LLC ("IRZ") repurchased the company in 2021. The purpose of the motion is to streamline the issues to be tried before the District Court. Resolution of the motion also may assist the parties in their ongoing but recently stalled efforts to resolve this long-pending dispute.

As explained below, the unambiguous terms of the operative written contract between Mr. te Velde and IRZ obligated IRZ to provide engineering services in connection with the design and construction of the Willow Creek Dairy, including by specifying the particular engineering tasks IRZ was to perform. IRZ, in turn, freely admits that it did no engineering work whatsoever on the project, thereby conceding breach. The undisputed record further reveals that IRZ, which drafted the contract, never intended to provide engineering services when it executed the agreement.

With respect to affirmative defenses that could relate to the contract claim, Defendants' pleadings nowhere allege that the parties subsequently modified the agreement, thereby precluding them from raising such an argument in opposition to this motion or at trial. In any event, there is not a shred of evidence in the record that the agreement ever was modified or that Mr. te Velde ever waived any of its terms—including, specifically, the provisions requiring IRZ to provide engineering services. Indeed, Defendants never even deposed Mr. te Velde. Furthermore, because comparative fault does not apply to breach of contract claims as a matter of law, Plaintiff is entitled to summary judgment on Defendants' Second and Fourth Affirmative Defenses, as applied to Plaintiff's contract claim.

In short, if Plaintiff's motion is granted, the remaining issues to be tried on Plaintiff's contract claim will be narrowed significantly. To succeed on a breach of contract claim under Oregon law, a plaintiff must prove "the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach[,] and defendant's breach resulting in damage to plaintiff." *Lowes v. Thompson*, 546 P.3d

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT

311, 317 (Or. App. Ct. 2024). As summarized above and explained further below, among other rulings, Plaintiff's motion seeks partial summary judgment in his favor on three of these elements: the existence of a contract, its relevant terms, and IRZ's breach.

Finally, Plaintiff's motion also seeks an order confirming that IRZ's former corporate parent, Defendant Lindsay Corporation ("Lindsay"), has agreed to indemnify IRZ for any losses incurred in this lawsuit, including any judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 30, 2015, Mr. te Velde and IRZ executed a "Work Order," pursuant to which IRZ agreed that its Construction Division, referred to as "ICD," would perform certain preliminary work in connection with a dairy facility Mr. te Velde hoped to build on land he was considering purchasing near Boardman, Oregon. SUF ¶ 6, 7; Ex. A (Work Order).[1]

On November 17, 2015, the parties entered into a second, broader agreement titled "Design, Engineer, and Project Management Services for Greg Tevelde Willow Creek Dairy Construction Project November 2015." (hereinafter, the "Design, Engineer, and PM Services Contract" or simply the "Contract"). SUF ¶ 12; Ex. B (Contract). The Contract is the agreement that is the subject of this motion. Among other things, the Contract identifies twenty-one (21) phases of work, each with enumerated tasks to be completed by ICD "for the successful completion of the project." SUF ¶¶ 22-31; Ex. B at 3-8. Pursuant to its express terms, ICD commenced work under the Contract upon its execution. SUF ¶ 32.

The events that subsequently brought the parties to these adversary proceedings are summarized in this Court's Report and Recommendation on Plaintiff's Second Motion for Partial Summary Judgment:

> [According to IRZ], Debtor defaulted on his obligation to timely pay for [IRZ's] services. Downey Decl., Doc. #468, ¶ 9. On July 12, 2017, ICD and [IRZ] stopped their

---

[1] All references to "SUF ¶ __" refer to the corresponding paragraphs in Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Third Motion for Partial Summary Judgment. All references to "Ex. __" refer to the Exhibits to the accompanying Declaration of R. Miles Clark.

6
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT

work on the project. *Ibid.* [IRZ] recorded an Oregon form *Construction Claim of Lien* on the project, alleging that it "furnished labor, equipment, material, services, supervision, and plans, drawings and surveys actually used in the construction of improvements" on the subject real property "…commencing on or about September 30, 2015." *Id.* at ¶ 10; Constr. Claim of Lien, Doc. #469, *Ex. C*. On November 2, 2017, [IRZ] filed a *Complaint (Construction Lien Foreclosure; Breach of Contract; Quantum Meruit)* against Debtor and others, seeking the principal sum of $393,476.81 for the cost of "labor, equipment, material, services, supervision, plans, drawings, and surveys … used for the benefit of the Property" from "September 30, 2015, through August 3, 2017." *Id.*, *Ex. D* at 2. The complaint included the Work Order and Contract as exhibits.

Debtor filed chapter 11 bankruptcy on April 26, 2018. Pet., Bankr. Case No. 18-11651 ("Bankr.") Dec. #1. On June 4, 2018, [IRZ] filed its Proof of Secured Claim in the amount of $347,057.56, attaching its mechanics' lien complaint as an exhibit. *See* Bankr. Claim 19.

On February 11, 2019, Plaintiff sold the property subject to [IRZ's] claim of lien under an *Order Authorizing Sale of Real Property Free and Clear of Liens*. Order, Dec. #423, *Ex. 3* (Bankr. Doc. #1607). The court directed Plaintiff to disburse most of the sales proceeds of the Lost Valley Farm to various parties in interest; however, the court directed Trustee to hold back funds to provide "adequate protection" to [IRZ] on account of its disputed secured claim. Stip. Order, *Id.*, *Ex. 4* (Bankr. Doc. #1799).

Plaintiff filed this instant action against [IRZ] on March 8, 2019. The complaint alleges claims for (1) an objection to Claim 19; (2) damages for breach of contract; (3) damages for negligence; and (4) avoidance of fraudulent transfers. Compl., Dec. #1.

Report and Recommendation on Plaintiff' Randy Sugarman's Second Motion for Partial Summary Judgment, at 6-7 (Dkt. No. 556); *In re te Velde*, 2022 WL 16943918, at *3 (Bankr. E.D. Cal. Nov. 10, 2022).

As alleged in Plaintiff's Complaint, IRZ breached its duties under the Work Order and Contract, which caused, among other harms, the dairy's waste management system to be "improperly designed and constructed," which, in turn, "result[ed] in catastrophic environmental liabilities, lost operating revenues, and loss of land value to the estate" in an amount then unknown, "but estimated to be in excess of $18,550,000." Compl., ¶ 1 (Dkt. No. 1). On October 30, 2022, Plaintiff filed his First Amended Complaint, which did not alter the causes of action asserted but simply added Lindsay Corporation ("Lindsay"), IRZ's parent corporation during all relevant times, as a party-defendant. First Amend. Compl. (Dkt. No. 533).

Now that fact discovery and expert discovery have closed, Plaintiff files this Third Motion for Partial Summary Judgment. As noted above, the motion primarily seeks to streamline the issues to be tried on Plaintiff's breach of contract claim. First Am. Compl., Second Claim for Relief (Dkt. No. 533).

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Fed. R. Bankr. P. 7056 ("Fed. R. Civ. P. 56 applies in an adversary proceeding."). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id* at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

While the "movant has the burden of showing that there is no genuine issue of fact," *Anderson.*, 477 U.S. at 256, "an adverse party may not rest upon the mere allegations or denials," and must instead "set forth specific facts showing that there is a genuine issue for trial." *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1056 (9th Cir. 2002). When a moving party points "to an absence of evidence sufficient to support" an affirmative defense, the responding party must "make a showing sufficient to establish the existence of [the] element[s] essential to" its defense. *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 590 (9th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ARGUMENT

**I. UNDER THE "DESIGN, ENGINEER, AND PROJECT MANAGEMENT SERVICES CONTRACT," IRZ AGREED TO PERFORM A SERIES OF ENGINEERING TASKS.**

As noted above, on November 17, 2015, Mr. te Velde and IRZ entered into the Design, Engineer, and PM Services Contract. SUF ¶ 12; Ex. B. The Contract was drafted by IRZ. SUF ¶ 13. Consistent with its title, the Contract indisputably provides that Mr. te Velde hired IRZ to perform ***engineering*** services, among others, in connection with the design and construction of the Willow Creek Dairy. Indeed, IRZ has admitted as much in prior submissions to this Court. *See* Def. IRZ Consulting's Mem. of Points and Authorities in Opp'n to Pl.'s Mot. for Partial SJ, at 6 (Dkt. No. 461) (acknowledging that the Contract obligated IRZ "to perform review, oversight, design, and engineering tasks"); Decl. of

Wayne Downey in Supp. of Def. IRZ Consulting's Opp'n to Pl.'s Mot. for Partial SJ, ¶ 3 (Dkt. No. 462) (stating that the Contract obligated IRZ "to perform review, oversight, design, and engineering tasks").

For example, the opening paragraph of the Contract provides that Mr. te Velde "intends to design[,] engineer[,] and construct a dairy facility," and that "IRZ Construction Division (ICD) (a division of IRZ Consulting LLC) is pleased to offer our professional design, engineering, and project management services to assist OWNER in accomplishing this goal." SUF ¶ 15 (quoting Ex. B at 1); *see also* SUF ¶ 16 ("ICD will assist the OWNER … by completing a series of design and engineering tasks… .") (quoting Ex. B at 1). Elsewhere, the Contract expressly provides that "OWNER retains ICD to perform design, engineering, and project management services, in connection with the design, engineering, and construction of The Willow Creek Dairy Construction Project as described in the enclosed Scope of Work ('Assignment')." SUF ¶ 17 (quoting Ex. B at 10); *see also* SUF ¶ 18 ("ICD shall provide the services set forth in SCOPE OF WORK.") (quoting Ex. B at 10, § 1.01(A)).

As contemplated, the Contract contains a "SCOPE OF WORK." SUF ¶ 19; Ex. B at 2-8. It is divided into two subsections. The first, titled "1 – Project Management Services," provides that "[t]he project will be undertaken under the supervision and control of ICD as **Project Manager**" and sets forth ICD's general duties as Project Manager. SUF ¶¶ 20-21 (quoting Ex. B at 2). These very first duty listed is the following: "1. ICD will oversee the design and engineering of this project … to insure [sic] that all objectives of the project are met in the final and complete design." SUF ¶ 21 (quoting Ex. B at 2).

The second subsection of the Contract's Scope of Work, titled "2 – Work Phases to Be Performed During Project," lists twenty-one (21) separate phases of work to be performed by ICD "for the successful completion of the project." SUF ¶ 22; *see* Ex, B at 3-8. Each work phase contains multiple specific tasks to be performed by ICD. *See id.* Many of the work phases and associated tasks expressly require ICD's provision of engineering services. *See id.*

For example, the Contract's Scope of Work includes the following work phases and tasks to be performed by ICD:

4. **Engineered structure designs ready for construction**

- Meet with OWNER to finalize structure layout and details sufficient enough to design and engineer drawings for building permits and review and approval of OWNER.
- After review and approval of drawings by the OWNER and the building authority make any necessary modifications and make drawings ready for construction.

\* \* \*

5. **Engineered site design ready for construction**

- Meet with OWNER to finalize the site design, and layout of all structures, facilities, and infrastructure to be placed on the site so that final grading can be designed for the site.
- After site is designed meet with OWNER and ODA [Oregon Department of Agriculture] to get approval of the final design.
- Make drawings ready for construction.

\* \* \*

7. **Design and engineer underground infrastructure**

- Meet with OWNER and service providers to determine appropriate routes for all underground infrastructure. Underground infrastructure to include but are not limited to electrical, water, communication, drain, effluent and sanitary sewer lines.
- After determining routes to be taken ICD will oversee the design & engineering of all conduit cable and pipe to insure [sic] that they will appropriately handle the demand and loads required.
- Meet with the service providers, permitting agencies and assist OWNER to get necessary approvals.
- After review and approval of drawings by the service providers, OWNER and permitting agencies, make any necessary modifications and make drawings ready for construction.

\* \* \*

9. **Engineered lagoon design ready for construction**

- Meet with OWNER, to determine final design of lagoon system.
- Oversee lagoon design and engineering to insure [sic] proper design.
- Meet with OWNER and permitting agencies to obtain necessary approvals.
- After review and approval of drawings by the OWNER and permitting agencies, make any necessary modifications and make drawings ready for construction.

\* \* \*

11. **Engineered open lot replacement facility design ready for construction**

- Meet with OWNER to finalize facility layout and details sufficient enough to design and engineer drawings for review and approval by OWNER and ODA [Oregon Department of Agriculture].

- After review and approval of drawings by the OWNER and ODA make any necessary modifications and make drawings ready for construction.

\* \* \*

19. **Engineered freestall cow housing facilities design ready for construction**
    - Meet with OWNER and permitting authorities to finalize freestall cow housing facilities layout and details, sufficient enough to design and engineer drawings for review and approval by OWNER and permitting authorities.
    - After review and approval of drawings by the OWNER and permitting authorities make any necessary modifications and make drawings ready for construction.

\* \* \*

21. **Design and engineer concrete construction**
    - Design and engineer all types of concrete construction for the project. This is to include all slab on grade, poured in place walls, footings, and any other type of concrete construction to be used on the project.
    - After review and approval of drawings by the OWNER and permitting authorities make and necessary modifications and make drawings ready for construction.

SUF ¶¶ 23-29 (quoting Ex. B at 4-8) (emphasis in original); *see also* SUF ¶ 30; Ex. B at 6, ¶ 13 ("**Engineered calf facility design ready for construction**"); *id.* at 7, ¶ 15 ("**Engineered commodity storage and processing facility design ready for construction**"); *id.* at 7, ¶ 17 ("**Engineered milking facility designs ready for construction**").

Additional provisions of the Contract further confirm that Mr. te Velde hired IRZ to provide *engineering* services. For instance, as to its timing and duration, the Contract provides that "[t]he design, engineering and project management services work will begin immediately upon approval of this Agreement," and "the Scope of Work" will remain "in effect through the completion of the design, engineering, construction, commissioning and into actual facilities operation, as needed." SUF ¶ 32 (quoting Ex. B at 9). Even further confirmation appears in the Contract's payment provisions. The Contract provides that, for the "**DESIGN, ENGINEERING AND PROJECT MANAGEMENT SERVICES**" set forth in the "Scope of Work, OWNER shall compensate ICD in accordance with ICD's standard hourly rate schedule attached herein, plus expenses." SUF ¶ 33 (quoting Ex. B at 12, § 5.01(A)). That rate schedule, titled "Service Fee Schedule 2015 Design, Engineer and Project Management Services," appears immediately before the Contract's signature page. SUF ¶ 34; Ex. B at

14. It includes the hourly rates for multiple engineering positions at IRZ, including "Senior Engineer (PE)," "Senior Hydrologist," and "Project Engineer." SUF ¶ 35.[2]

## II. DEFENDANTS ADMIT THAT IRZ PERFORMED NO ENGINEERING TASKS.

Wayne Downey, IRZ's Director of Construction and the corporate representative designated by both IRZ *and* Lindsay to testify about IRZ's obligations under the Contract and the work IRZ performed under the Contract, admitted repeatedly under oath that IRZ did **_no engineering work whatsoever_**. *See* SUF ¶¶ 42-53 and accompanying deposition transcript excerpts, *e.g.*, Ex. D (Downey Rule 30(b)(6) Dep.) at 110:24-25 ("IRZ did not do any engineering work on this project.").[3] Among other things, Mr. Downey testified that IRZ did not design or engineer any drawings ready for construction with respect to any of the project's twenty-one (21) work phases identified in the Contract's Scope of Work. SUF ¶ 43; *see* Ex. D at 78:22-79:22, 81:15-25, 91:24-92:10, 95:13-96:2, 115:2-7, 118:4-12, 118:20-24, 119:9-120:9. Further admissions by Mr. Downey regarding IRZ's complete failure to provide any of the agreed upon engineering services include the following:

- IRZ did no engineering work, and performed no hydraulic studies, in connection with the dairy's waste management infrastructure, including with respect to the underground piping, catch basins, sand lanes, reception pits, and separator pad. SUF ¶ 44; Ex. D at 91:18-23, 92:20-93:4, 94:11-14, 95:13-96:2, 107:15-23, 110:22-25.

---

[2] Further confirmation still that Mr. te Velde hired IRZ to provide **_engineering_** services can be found in the Contract's drafting history. All drafts of the Contract produced by IRZ in discovery, including initial drafts proposing that ICD would serve as "General Contractor" (as opposed to "Project Manager"), provide that IRZ (through ICD) would perform "design," "engineer," and "project management" services in connection with the "design, engineering, and construction of The Willow Creek Dairy Construction Project as described in [a] Scope of Work." SUF ¶ 38. All such drafts include a "Scope of Work" providing that ICD would "oversee the design and engineering" of the project and describing, in virtually identical terms, the same twenty-one (21) work phases and associated tasks to be performed by ICD that are included in the final, executed Contract. SUF ¶¶ 39, 40. All such drafts were drafted by IRZ. SUF ¶ 41.

[3] IRZ previously admitted, in a written submission to this Court, that it performed no engineering work under the Contract. *See* Def. IRZ Consulting, LLC's Mem. of Law in Supp. of Mot. to Dismiss Pl.'s Compl. (Dkt. No. 23), at 3, ¶ 7 ("Central to plaintiff's claims for breach of contract and negligence, plaintiff alleges that IRZ improperly 'designed' the entirety of the waste water treatment and disposal system that was intended to serve a 30,000 cow dairy (the 'Project'). **_IRZ did no such design or engineering work_**.") (emphasis added).

Filed 02/14/25     Case 19-01033     Doc 766

- IRZ made no drawings ready for construction for any aspect of the dairy's waste management infrastructure or lagoon system. SUF ¶¶ 45, 46; Ex. D at 91:24-92:10, 114:9-115:7.
- IRZ did not review any engineering work that subcontractor John Fazio may have performed with respect to the dairy's lagoon system. SUF ¶ 47; Ex. D at 114:9-20; *see also id.* at 35:19-23.
- IRZ did not design or engineer any aspect of the project's massive concrete construction. SUF ¶ 48; Ex. D at 119:16-18.[4]

It gets even worse. This was not simply a circumstance where IRZ contractually agreed to provide engineering services and then, for one reason or another, failed to perform. Instead, the record reveals that IRZ never intended to do any engineering work in the first place. As Mr. Downey further testified, although IRZ did, in fact, have engineers on staff at the time that IRZ executed the Contract, none of those engineers worked in IRZ's Construction Division (ICD). SUF ¶ 50; Ex. D at 35:19-36:3, 80:3-81:14. Indeed, according to Mr. Downey, management at Lindsay and IRZ had decided to keep ICD separated from IRZ's engineering business. SUF ¶ 51. And, despite the fact that no one at IRZ had any prior experience designing large commercial dairies or their waste management systems, IRZ did not hire any engineers or other subject matter experts to assist ICD in the performance of IRZ's duties under the Contract. SUF ¶¶ 52-55; Ex. D at 126:1-7, 132:24-133:3, 134:24-135:5.[5]

### III. IRZ FAILED TO PERFORM ADDITIONAL CONTRACTUAL OBLIGATIONS.

Under each work phase in the Contract's Scope of Work that included engineering tasks, IRZ also agreed to "[p]repare bid package and review with OWNER," "[s]ubmit bid package to contractors for bid," and "[m]eet with OWNER to review bids and select contractor" for the particular construction and/or installation projects associated with the work phase. SUF ¶ 56 (quoting Ex. B at 4-8, ¶¶ 4, 5, 7, 9, 11, 13, 15, 17, 19, 21). There is no evidence, however, that IRZ ever prepared a single bid package

---

[4] Mr. Downey admitted that engineering work is required for sound concrete construction. SUF ¶ 49; Ex. D at 119:22-120:9.

[5] The Contract's Scope of Work also contains the same tasks that are set forth in the Work Order. *See* Ex. B at 3, ¶ 1 (IRZ001381) ("**Preliminary Site Design**") and *compare with id.*, Ex. A at 1 (IRZ001459). IRZ did not do any engineering work or utilize the services of any engineers in performing the tasks it agreed to perform under the Work Order. SUF ¶¶ 10, 11.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT

for a single subcontractor, that IRZ ever received any bids submitted by subcontractors, or that IRZ ever met with Mr. te Velde to review bids and to help select subcontractors for the project. SUF ¶ 57; *see* Ex. D (Downey Rule 30(b)(6) Dep.) at 78:4-21.

In Article 7 ("**Deliverable**"), the Contract provides that IRZ will provide Mr. te Velde with, among other things, "[p]rintable, electronic copies of all completed construction As-Built drawings, and relevant data for this project in PDF format." SUF ¶ 58 (quoting Ex. B at 13, § 7.01(B)). In sworn testimony, on behalf of both Lindsay and IRZ, Mr. Downey admitted that IRZ did not prepare as-built drawings for any of the structures or facilities that were constructed or installed at the Willow Creek Dairy, including the waste management infrastructure. SUF ¶¶ 59, 60; *see* Ex. D at 25:24-25 ("IRZ did not do any."). Thus, in addition to failing to prepare any engineered drawings in advance of construction, IRZ failed to prepare any engineered drawings that would show Mr. te Velde what was actually built, and—with respect to underground infrastructure that subsequently failed—where it was located.

## IV. DEFENDANTS HAVE WAIVED ANY ARGUMENT THAT THE CONTRACT HAS BEEN MODIFIED BY THE PARTIES.

By its express terms, the Contract is fully integrated and only may be modified by a written agreement signed by both parties. *See* SOF ¶ 61 ("This writing is the full and complete agreement between the parties concerning ICD's services to OWNER for the above services and work. This agreement may not be modified except by and agreement signed by ICD and OWNER.") (quoting Ex. B at 13, § 6.01(D)).

Any claim that the Contract was subsequently modified would constitute an affirmative defense that was required to have been asserted in response to Plaintiff's operative pleading. *See* Fed. R. Civ. P. 8(c), *as incorporated by* Fed. R. Bankr. P. 7008 ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."); *Carothers v. Carothers*, 488 P.2d 1185, 1188 (Or. 1971) (holding that "modification, waiver and estoppel are affirmative defenses and must be

pleaded as such"); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (claim that contract had been modified "is clearly an affirmative defense").

Here, neither Lindsay nor IRZ allege anywhere in their respective Answers and Affirmative Defenses that any term of the Contract was ever modified by a subsequent agreement. *See* Dkt. Nos. 605 & 606. Both Defendants should therefore be precluded from raising such an argument now or at trial. *See John R. Sand & Gravel v. United States*, 552 U.S. 130, 133 (2008) (noting that affirmative defenses "must [be] raise[d] at the pleading stage" and are "subject to rules of forfeiture and waiver"); *KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 714 (9th Cir. 2020) ("Generally, an affirmative defense that is not asserted in an answer to the complaint is waived or forfeited by the defendant."); *Young v. Allstate Co.*, 662 F. Supp. 3d 1066, 2023 (C.D. Cal. 2023) (holding, on summary judgment, that defense based on contract's integration clause was waived because it was not pleaded); *Drummond Am., LLC v. Share Corp.*, 692 F. Supp. 2d 650, 656 (E.D. Tex. 2010) (holding, on summary judgment, that defense based on purported contract modification was waived because defendants had failed to properly plead the defense).

In any event, even if either Defendant had timely raised a modification defense, summary judgment still would be warranted on the issue. First and foremost, there is no subsequent agreement signed by the parties modifying the Contract, as is evidenced by the fact that neither Lindsay nor IRZ produced such a writing in discovery. Nor is there any evidence in the record of a subsequent *oral* agreement modifying the Contract, much less "clear and convincing evidence" of the terms of any such modification. *See Barinaga v. JP Morgan Chase & Co.*, 749 F. Supp. 2d 1164, 1173 (D. Or. 2010) ("[T]o be binding, the terms of an oral modification of [a] written contract must be established by clear and convincing evidence, and must be supported by consideration."). For example, neither Lindsay nor IRZ produced any documents that refer to any oral modifications to the Contract—such as a contemporaneous e-mail or note to the file. No IRZ witness, among the several Plaintiff deposed, testified about any purported oral modifications to the Contract. Tellingly, Defendants made no attempt to depose Mr. te Velde and also have no testimony from him on this subject.

## V. COMPARATIVE FAULT DOES NOT APPLY TO PLAINTIFF'S BREACH OF CONTRACT CLAIM AS A MATTER OF LAW.

Both Lindsay and IRZ assert affirmative defenses based on comparative fault principles. Specifically, in their Second Affirmative Defense, each asserts that "plaintiff's damages, in whole or in part, are the result of debtor te Velde's comparative fault, which caused or contributed to plaintiff's damages." Lindsay Corporation's Answer to Pl.'s First Am. Compl. ("Lindsay's Answer"), ¶ 69 (Dkt. No. 605); IRZ Consulting, LLC's Answer to Pl.'s First Am. Compl. ("IRZ's Answer"), ¶ 69 (Dkt. No. 606). In their Fourth Affirmative Defense, each Defendant asserts that "Plaintiff's damages, if any, are the result of negligence by other parties over which [Lindsay and IRZ, respectively] has no obligation, duty or right to control." Lindsay's Answer, ¶ 71 (Dkt. No. 605); IRZ's Answer, ¶719 (Dkt. No. 606).

Under Oregon law, comparative fault does not apply to claims for breach of contract as a matter of law. *Hale v. Groce*, 744 P.2d 1289, 1290 (Or. 1987) (recognizing that "comparative fault" rules "do not apply to contract claims"); *Hampton Tree Farms, Inc.*, 974 P.2d 738, 744 n.10 (Or. Ct. App. 1999) (noting that trial court's reduction of damages for tort claim based on "comparative fault … would not apply to the damages for breach of contract"); *PacifiCorp v. Northwest Pipeline GP*, 879 F. Supp. 2d 1171, 1210 (D. Or. 2012) (holding that "the comparative fault defense is not valid against a breach of contract claim" and granting motion for summary on defense as applied to contract claim) (applying Oregon law); *cf. Oregon v. Gutierrez-Medina*, 403 P.3d 462, 464 (Or. Ct. App. 2017) (recognizing that "Oregon's comparative-fault scheme, ORS 311.600 to 31.620, applies to nonintentional torts" and rejecting argument that it should be extended to criminal restitution). Accordingly, Plaintiff is entitled to partial summary judgment on Lindsay's and IRZ's Second and Fourth Affirmative Defenses, as applied to Plaintiff's claim for breach of contract.

## VI. THERE IS NO EVIDENCE TO SUPPORT APPLICATION OF THE DOCTRINES OF WAIVER OR ESTOPPEL TO PLAINTIFF'S BREACH OF CONTRACT CLAIM.

As applied to Plaintiff's breach of contract claim, Plaintiff also is entitled to partial summary judgment on Defendants' Eleventh Affirmative Defense, which nakedly asserts that "[s]ome or all of plaintiff's claims are barred in whole or in part by the doctrines of waiver and estoppel." Lindsay's

Answer, ¶ 78 (Dkt. No. 605); IRZ's Answer, ¶ 78 (Dkt. No. 606). Defendants often allege waiver and estoppel early in a case to preserve the option that supporting evidence might be developed in discovery. Discovery is now over, however, and the record is devoid of evidence necessary to support application of either doctrine to Plaintiff's breach of contract claim—including, specifically, with respect to IRZ's wholesale breaches of the Contract's provisions obligating IRZ to perform engineering tasks.

Regarding waiver, there is no evidence of any "clear, unequivocal, and decisive act" by which Mr. te Velde knowingly and intentionally waived his contractual rights to receive engineering services from IRZ. *See Bennett v. Farmers Ins. Co.*, 26 P.3d 785, 796, 797 (Or. 2001) ("Waiver is the voluntary relinquishment of a known right," which "must be unequivocal."); *Carothers*, 488 P.2d at 1188 ("[W]aiver requires a showing of intent to relinquish a known right[.]"); *Waterway Terminals Co. v. P.S. Lord Mech. Contractors*, 406 P.2d 556, 568 (Or. 1965) ("To make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part."); *Mitchell v. Hughes*, 157 P. 965, 967 (Or. 1916) ("Where there is no intention to waive, there is no waiver," because "[w]aiver involves both knowledge and intention[.]").

With respect to the related doctrine of estoppel,[6] there is no evidence of any statements or conduct by Mr. te Velde that deceived IRZ into believing it was not obligated to provide the engineering services detailed in the Contract. *See Bennett*, 26 P.3d at 797 ("If there is no evidence of an intent to waive a contract provision, a party nevertheless may be estopped from relying on that provision if that party led the other party to believe that the provision had been waived, and the other party relied on that perceived waiver."); *Waterway Terminals Co.*, 406 P.2d at 568 ("[I]n the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended and consented to."); *Mitchell*, 157 P. at

---

[6] The Supreme Court of Oregon has observed that "[t]he two doctrines [waiver and estoppel] are closely related, and sometimes it is difficult to distinguish between the two." *Bennett*, 26 P.3d at 797.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT

Filed 02/14/25

Case 19-01033

968 ("An estoppel arises where the act or declaration of one party has misled another to his prejudice into doing or failing to do an act.").

For example, similar to the absence of evidence suggesting the parties ever modified the Contract, neither Lindsay nor IRZ produced any documents—such as contemporaneous e-mails or notes to the file—indicating that IRZ believed Mr. te Velde had waived his rights under the Contract to receive engineering services from IRZ. No IRZ witness testified about any such belief on IRZ's part or about any purported waiver by Mr. te Velde, much less one "manifested in some unequivocal manner." *Waterway Terminals Co.*, 406 P.2d at 567. And, as noted above, Defendants did not even depose Mr. te Velde.

Plaintiff is entitled to partial summary judgment on Lindsay's and IRZ's Eleventh Affirmative Defenses, as applied to Plaintiff's claim for breach of contract.

## VII. LINDSAY HAS AGREED TO INDEMNIFY IRZ FOR ANY LOSSES INCURRED IN THIS LAWSUIT.

On August 26, 2011, Lindsay (or a subsidiary thereof) purchased IRZ from its founder and owner, Fred Ziari. SUF ¶ 62. From that date through August 27, 2021, which included the period of time when IRZ provided services to Mr. te Velde under the Work Order and Contract, IRZ was a wholly-owned subsidiary of Lindsay. SUF ¶ 63.

Lindsay publicly announced that, "[o]n August 27, 2021, the Company completed the divestiture of ownership interests in IRZ Consulting, LLC ('IRZ')." SUF ¶ 64. Specifically, pursuant to a Membership Interest Purchase Agreement dated August 27, 2021, Lindsay Sales Holding Co., LLC (identified in the Agreement as the "Seller") sold all of its ownership interests in IRZ Consulting, LLC (identified in the Agreement as the "Company") to IRZ Holding Company LLC (identified in the Agreement as the "Purchaser"). SUF ¶ 65; Ex. C (Agreement). Mr. Ziari, as the corporate representative for both Lindsay and IRZ, testified that the Membership Interest Purchase Agreement is the agreement by which Mr. Ziari repurchased IRZ from Lindsay. SUF ¶ 66; *see also* SUF ¶ 67 (Mr. Ziari owns IRZ

18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT

Holding Company LLC); SUF ¶ 68 (Lindsay Sales Holding Co., LLC was and is a wholly-owned subsidiary of Lindsay).

Under paragraph 4.3(h) of the Membership Interest Purchase Agreement, "Purchaser and Company acknowledge and agree that Seller shall have the right to manage, control, defend, litigate and settle … the Willow Creek Litigation." SUF ¶ 69 (quoting Ex. C at 8, ¶ 4.3(h)).[7] Mr. Ziari, as the corporate representative for both Lindsay and IRZ, testified that paragraph 4.3(h) of the Agreement gives Lindsay the right to manage and control the defense of this case on behalf of both Lindsay and IRZ, and that Lindsay, in fact, is exercising such management and control. SUF ¶¶ 71, 72; Ex. E (Ziari Rule 30(b)(6) Dep.) at 20:4-21:2.

In paragraph 5.1(c), titled "**Indemnification by Seller**," the Membership Interest Purchase Agreement provides the following:

> Seller shall indemnify, defend and hold harmless the Purchaser, and, if applicable, the Purchaser's, owners, affiliates (including the Company after the Closing), lenders, attorneys, accountants, agents and employees and their heirs, successors and assigns (collectively, the 'Purchaser Indemnified Parties' …) from, against and in respect and to the extent of any Losses imposed on, sustained, incurred or suffered by any of the Purchaser Indemnified Parties, relating to or arising out of … (iii) the Willow Creek Litigation.

SUF ¶ 73 (quoting Ex. E at 9, ¶ 5.1(c)). Mr. Ziari, as the corporate representative for both Lindsay and IRZ, testified that paragraph 5.1(c) of Agreement obligates Lindsay to indemnify IRZ for any losses arising out of this litigation SUF ¶ 74; Ex. E (Ziari Rule 30(b)(6) Dep.) at 20:4-22:2. Mr. Ziari also testified that Lindsay's indemnification obligations under paragraph 5.1(c) remain in full force and effect, and that there is no reason why Lindsay would not fulfill its indemnification obligations under paragraph 5.1(c). SUF ¶ 75; Ex. E (Ziari Rule 30(b)(6) Dep.) at 22:3-24.

Plaintiff therefore seeks an order confirming that Lindsay has agreed to indemnify IRZ for any losses incurred in this lawsuit, including any judgment, and entry of partial summary judgment declaring that Lindsay is obligated to indemnify IRZ for any losses incurred in this lawsuit.

---

[7] The Agreement defines the term "Willow Creek Litigation" to mean "that certain case captioned *In re Gregory John te Velde (Randy Sugarman, Chapter 11 Trustee) v. IRZ Consulting, LLC* filed in the Eastern District of California, Fresno Division." Ex. C (Agreement) at 13, ¶ 7.1(m).

# CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Third Motion for Partial Summary Judgment.

Dated: February 14, 2025          Respectfully submitted,

WANGER JONES HELSLEY PC

and

ZUCKERMAN SPAEDER LLP

By: /s/ Kurt F. Vote
Kurt F. Vote
Attorneys for Plaintiff
Randy Sugarman, Liquidating Trustee