POSTED ON WEBSITE
NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re | ) Case No.  18-11651-B-11 |
| | ) |
| GREGORY JOHN te Velde, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| ——————————————— | ) |
| | ) |
| RANDY SUGARMAN, CHAPTER 11 | ) |
| TRUSTEE, | ) Adv. Proc. No. 19-01033 |
| | ) |
| Plaintiff, | ) Docket Control No. WJH-4 |
| | ) |
| v. | ) |
| | ) |
| IRZ CONSULTING, LLC; aka IRZ | ) |
| CONSTRUCTION DIVISION, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| ——————————————— | ) |
| | ) |
| AND RELATED THIRD-PARTY | ) |
| COMPLAINT AND CONSOLIDATED | ) |
| ACTIONS. | ) |
| ——————————————— | ) |

**FINDINGS AND RECOMMENDATIONS FOR
DE NOVO CONSIDERATION OF THE DISTRICT COURT AS TO
PLAINTIFF'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

———————————————

Kurt F. Vote, WANGER JONES HELSLEY PC, for RANDY SUGARMAN,
Liquidating Trustee; Carl S. Kravitz, ZUCKERMAN SPAEDER LLP, for
RANDY SUGARMAN, Liquidating Trustee; R. Miles Clark, ZUCKERMAN
SPAEDER LLP, for RANDY SUGARMAN, Liquidating Trustee.

Kyle D. Sciuchetti, MILLER NASH LLP, for IRZ Consulting, LLC and
LINDSAY CORPORATION; Bernard Kornberg, MILLER NASH LLP, for IRZ
Consulting, LLC and LINDSAY CORPORATION; and Hagop Bedoyan,
McCORMICK, BARSTOW, et al., for IRZ Consulting, LLC and LINDSAY
CORPORATION, Defendants.

Randy Sugarman, Chapter 11 Trustee.

———————————————

RENÉ LASTRETO II, Bankruptcy Judge:

1

**INTRODUCTION**

Randy Sugarman, Liquidating Trustee under a confirmed plan ("Sugarman" or "Trustee" or "Plaintiff"), moves pursuant to Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56(g) for partial summary judgment as to the Second Claim for Relief raised in Plaintiff's First Amended Complaint ("Breach of Contract") against Defendants Lindsay Corporation ("Lindsay") and IRZ Consulting, LLC ("IRZ") (collectively "Defendants"). Doc. #761. This is Plaintiff's Third Motion for Partial Summary Judgment (hereinafter "the Third Motion" or simply "the Motion").

The Motion is accompanied by: (1) the Declaration of R. Miles Clark ("Clark" and "the Clark Declaration"), one of Plaintiff's attorneys, which is offered solely to authenticate the attached Plaintiff's Exhibits, Doc. #763; (2) Plaintiff's Exhibits A-M in support of the motion, Doc. #764; (3) a Statement of Undisputed Facts, Doc. #765; and (4) a Memorandum of Authorities, Doc. #766.

On April 2, 2025, the Defendants filed: (1) Defendants' Opposition to the Third Motion, Doc. #800; (2) Defendants' Evidentiary Objections in Opposition to the Summary Judgment Motion, Doc. #796; (3) Defendants' Exhibits A-J in support of Defendants' Opposition to the Motion, Doc. #797; (4) the Declaration of Benjamin P. Tarczy ("Tarczy" and "the Tarczy Declaration"), counsel for Defendants, which is offered solely to authenticate the attached Defendants' Exhibits, Doc. #798; (5) the Declaration of Wayne Downey ("Downey" and "the Downey Declaration"), Director of Construction at IRZ, Doc. #799; and
///

(6) a Response to Sugarman's Statement of Undisputed Material Facts, Doc. #801.

On April 7, 2025, Sugarman filed in reply: (1) the Declaration of R. Miles Clark ("the Clark Reply"), which is offered solely to authenticate the attached Plaintiff's Reply Exhibits Doc. #808; (2) Plaintiff's Exhibits N-O in support of the Reply; Doc. #809; (3) Plaintiff's Evidentiary Objections in Reply to Defendants Opposition to the Motion, Doc. #810; and (4) Plaintiff's Reply Memorandum in Support of the Motion, Doc. #811.

In this Third Motion, Plaintiff asks the court to consider three aspects of the case:

1. Whether partial summary judgment be granted as to Plaintiff's breach of contract claim, specifically the breach of contract elements of (a) the existence of a contract, (b) its relevant terms, and (c) the existence of a breach by IRZ;
2. Whether partial summary judgment can be granted for Plaintiff with regard to Defendants' Second Affirmative Defense (In Pari Delicto/ Comparative Fault), Fourth Affirmative Defense (Fault of Others), and Eleventh Affirmative Defense (Waiver or Estoppel); and
3. Whether partial summary judgment should be granted to Plaintiff as to the question of whether Lindsay (IRZ's parent company) is obligated to indemnify IRZ for any losses.

Doc. #761. Sugarman concedes that even if this motion is granted, it will not resolve the case entirely, but he argues that it will "streamline" the issues for trial.

The court has reviewed the voluminous filings and heard arguments and is prepared to issue its report and recommendations to the district court.

///

///

///

**BACKGROUND**

Except where noted otherwise, the facts which set the stage for this play are drawn from this court's *Report and Recommendations on [Plaintiff's] Second Motion for Partial Summary Judgment*, Doc. #556. *See also In re te Velde*, 2022 Bankr. LEXIS 3201 (Bankr. E.D. Cal. Nov. 10, 2022). Additional background information on the tortured history of the Willow Creek Dairy Facility may be found in the court's *Report and Recommendations as to Dari-Tech, Inc.'s Second Motion For Summary Judgment ("the Dari-Tech Motion" and "the Dari-Tech R&R")*, issued by the court on April 24, 2025. Doc. #824.

On or about September 30, 2015, Gregory te Velde ("te Velde" or "Debtor"), debtor in the underlying (and long since closed) Chapter 11 case, and IRZ executed a "Work Order" pursuant to which IRZ agreed that its Construction Division ("ICD") would perform certain preliminary work in connection with the Willow Creek Dairy facility ("the Dairy") which te Velde hoped to build on land he was considering purchasing near Boardman, Oregon. The Work Order was signed by Debtor and Fred Ziari ("Ziari") on behalf of ICD. Pursuant to the Work Order, ICD would perform certain services to Debtor over a three-month period. The Work Order was memorialized in a contract executed by Debtor and Ziari on or about November 17, 2015.

Te Velde subsequently defaulted on his obligation to pay for the services of IRZ/ICD, and they stopped work on the project. IRZ later recorded an Oregon form *Construction Claim of Lien* on the project. On November 17, 2017, IRZ filed a complaint in Oregon state court against Debtor and others seeking damages in

the amount of $393,476.81 for the cost of "labor, equipment, material, services, supervision, plans, drawings, and surveys . . . used for the benefit of the Property" from "September 30, 2015, through August 3, 2017." This complaint was eventually removed to this court.

Te Velde filed for Chapter 11 on April 26, 2018, with Sugarman was later appointed Trustee. Sugarman became the Liquidation Truster under the plan. IRZ duly filed its Proof of Secured claim in the amount of $347,057.56, attaching its mechanics' lien complaint as an exhibit.

On February 11, 2019, the Trustee sold the property subject to IRZ's claim of lien under an *Order Authorizing Sale of Real Property Free and Clear of Liens*. The court directed Trustee to disburse most of the sales proceeds of the Lost Valley Farm to various parties in interest; however, the court directed Trustee to hold back funds to provide "adequate protection" to IRZ on account of its disputed secured claim.

On March 18, 2019, Trustee filed this adversary proceeding against IRZ and others. The complaint alleges several causes of action, but only Claim #2 for breach of contract is at issue in this motion. Doc. #761.

## **DISCUSSION**

### **I.**

### **JURISDICTION**

The District Court has jurisdiction of Trustee's complaint under 28 U.S.C. § 1334(b) because it is a civil proceeding arising under

///

Title 11 of the United States Code. This court has jurisdiction by reference from the District Court under 28 U.S.C. § 157(a).

This court has "related to" jurisdiction over IRZ's third-party complaint under 28 U.S.C. § 157(b)(3) because it is related to Trustee's complaint against IRZ. Trustee's complaint is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (H), and (O).

Since this court's jurisdiction is "related to" the bankruptcy case, this court cannot render a final judgment in this matter. The District Court has deferred from withdrawing its reference under 28 U.S.C. § 157(c)(1) and this court is directed to supervise discovery, rule on non-dispositive motions, and issue findings and recommendations for de novo consideration by the District Court as to dispositive motions.

**II.**

**Legal Analysis**

A.  <u>The Summary Judgment Standard</u>.

Civ. Rule 56, as incorporated by Rule 7056, applies in adversary proceedings. Under Civ. Rule 56(a), summary judgment should be granted only if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. When considering a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Civ. Rule 56(c); *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion

for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Ibid.*

The movant may not argue that its evidence is the most persuasive or "explain away" evidence unfavorable to its defenses; rather, it must show that there are no material facts in dispute, or which can be reasonably resolved by a fact finder. *Id.* at 250-51, 106 S. Ct. at 2511; *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) ("Summary judgment is not appropriate" if a reasonable jury could find in the plaintiff's favor.) (emphasis added).

As the movant here, the burden of proof is on Plaintiff. The court must draw all reasonable inferences in the light most favorable to the non-moving party and therefore in favor of denying summary judgment. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513-14. Further, the non-moving party's evidence is to be

believed, and all justifiable inferences are to be drawn in its favor. *Hutchins v. TNT/Reddaway Truck Line, Inc.*, 939 F. Supp. 721, 723 (N.D. Cal. 1996).

If a summary judgment motion is properly submitted, the burden shifts to the opposing party to rebut with a showing that there is a genuine issue of material fact. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002). "The nonmoving party 'may not rely on denials in the pleadings but must produce specific evidence . . . to show that the dispute exists.'" *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008), quoting *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Ultimately, the court must grant summary judgment if the movant shows that the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party as to any fact that might affect the outcome of the suit under the governing law, and the nonmovant does not meet their burden of proof to refute the movant's claims.

B. <u>Successive Summary Judgment Motions</u>.

As a threshold matter, Defendants argue that this motion should be denied summarily as "an unnecessary successive Summary Judgment Motion." Doc. #800. The court recently considered this issue in the Dari-Tech R&R, which recommended that the Dari-Tech Motion be denied by the District Court as a successive motion before going on to address the motion substantively. Doc. #824. In the Dari-Tech R&R, the court said:

> Whether a second summary judgment motion should be permitted is discretionary with the court. *Hoffman v. Tonnemacher*, 593 F.3d 908 (9th Cir. 2010)(Second summary judgment permitted after the first was denied, additional discovery occurred, there was a partial

grant of summary judgment, a trial, a deadlocked jury, a mistrial, and modification of a pretrial order).  In this circuit, successive summary judgment motions may be considered if there is an intervening change in controlling law; the availability of new evidence or an expanded factual record; and the need to correct a clear error or prevent manifest injustice.  *Brazill v. California North State College of Pharmacy*, 2013 WL 4500667*1 (E.D. Cal. August 22, 2013) citing *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995).

*Id.*

Trustee's *First Motion ("the First Motion") for Summary Judgment* against IRZ was filed on September 6, 2022. Doc. #424. The only issue raised was whether "IRZ'S claim and lien are unenforceable against the estate because it was not continuously licensed throughout the work of improvement" and, consequently, whether IRZ's Proof of Claim should be disallowed on that basis. *Id.* The court issued a Report and Recommendation that this First Motion be denied. Doc. #554. The district court has not yet ruled on the First Motion.

Trustee's *Second Motion ("the Second Motion") for Summary Judgment* against IRZ was filed on September 15, 2022. Doc. #440. The only issue raised in the Second Motion is whether "two provisions in the design and construction contracts executed by the Debtor which purport to limit the Plaintiff Trustee's damages to $550,000 are enforceable under Oregon law." *Id.* On November 10, 2022, the court issued a Report and Recommendation that the Second Motion be granted in part as to the narrow issue of the effect of a limitation of liability clause in the contract as it applies to this case but that the Second Motion be otherwise denied. Doc. #556. The district court has not yet ruled on the Second Motion.

1    Plaintiff argues that this Third Motion is based "on an

2 expanded factual record." Doc. #811.

3        Since the filing of Plaintiff's prior motions for
         partial summary judgment (on entirely separate issues),
4        the parties have taken more than a dozen fact
         depositions—including the depositions of several
5        current and former IRZ employees, as well as the
         deposition of both Defendants IRZ and Lindsay under
6        Rule 30(b)(6)—and completed expert discovery. It would
         have been premature for Plaintiff to have filed the
7        instant motion before the close of discovery. The
         motion also is a targeted one, seeking partial summary
8        judgment only on discrete aspects of Plaintiff's breach
         of contract claim and on particular defenses related
9        thereto. And, as expressly stated in Plaintiff's moving
         papers, the motion's purpose is to streamline the
10       matters to be tried and otherwise foster a potential
         resolution to this long-pending dispute.

11

12    *Id.* In the Report and Recommendations issued for the Second

13 Motion, the court did not address the issue of it being a

14 successive summary judgment motion, which was not raised at the

15 time by IRZ. Doc. #556. Indeed, the First and Second Motions were

16 filed almost contemporaneously (September 6, 2022, and September

17 15, 2022) and, as Plaintiff notes, prior to the extensive

18 discovery outlined above.

19    Frankly, the court questions how it is supposed to

20 "streamline" the matters to be tried if the parties file a

21 multiplicity of dispositive motions for which this court can only

22 issue reports and recommendations to the District Court. If

23 anything, Sugarman's approach to "streamlining" things has had

24 the effect of clogging both this court's and the District Court's

25 dockets with piecemeal attacks on the underlying case, and the

26 court is strongly inclined to exercise its discretion to deny the

27 motion on that basis alone.

28 ///

1    However, a commitment to thoroughness in preparing a report

2  and recommendation to the District Court would necessitate a

3  review of the Third Motion on the merits anyway, and the factual

4  record has clearly been expanded since the issuance of the

5  reports and recommendations on the two prior motions.

6  C. Applicable Controlling Law.

7    Sugarman's Third Motion raises issues of comity and choice

8  of law which must be addressed before the court can address the

9  underlying issues. The parties all seem to assume that the

10 contract at the heart of this case is governed by Oregon law.

11 IRZ is an Oregon corporation. The Dairy site was in Oregon. All

12 acts by IRZ purported to be breach of contract took place in

13 Oregon. While the contract is silent on controlling law, it does

14 say that venue for any civil actions arising under the contract

15 is proper in Oregon.

16    Thus, without engaging in a lengthy conflicts-of-law

17 analysis, the court is satisfied that Oregon state substantive

18 law governs the breach of contract claim.

19 D. The Third Motion On Its Merits.

20    Sugarman argues that there are three specific areas where

21 there are no disputed issues of material fact and the Plaintiff

22 is entitled to summary judgment: (1) whether a contract was

23 formed which IRZ subsequently breached, (2) whether Defendant's

24 Second and Fourth Affirmative Defenses are inapplicable to the

25 breach of contract claims, and (3) whether Lindsay is obligated

26 to indemnify IRZ for any losses. Doc. #761. The court will

27 address each of these arguments in turn.

28 ///

1.    The Contract Claim.

Sugarman begins with a recitation of the elements for breach

of contract under Oregon law:

> To succeed on a breach of contract claim under Oregon
> law, a plaintiff must prove "the existence of a
> contract, its relevant terms, plaintiff's full
> performance and lack of breach[,] and defendant's
> breach resulting in damage to plaintiff.

Doc. #766 (quoting *Lowes v. Thompson*, 331 Ore. App. 406, 546 P.3d

311, 317 (Or. App. Ct. 2024)). Sugarman argues that partial

summary judgment in his favor is proper for three of the four

elements: the existence of a contract, its relevant terms, and

IRZ's breach. *Id.*

The court agrees that partial summary judgment should be

granted on the question of whether a contract between Debtor and

IRZ existed, as no suggestion to the contrary has ever been put

forth. Indeed, the existence of the contract forms the basis of

IRZ's Proof of Claim which lies at the heart of this adversary

proceeding.

However, the court finds that there are disputed issues of

fact which preclude summary judgment as to the other issues.

Sugarman's argument is based on the following premise: The

contract required IRZ to perform "engineering" services. IRZ did

not perform any such "engineering" services and admits so through

its corporate representative during his deposition. *Ergo*,

Sugarman reasons, IRZ has breached the contract.

The terms of the contract, of course, speak for themselves.

But while Sugarman quotes liberally from several contract terms

which he claims demonstrates a contractual obligation for IRZ to

perform engineering work, in the court's view, however, the

language is not so clear-cut. For example, the first quoted

contract provisions states:

**4. Engineered structure designs ready for construction**

Meet with OWNER to finalize structure layout and details sufficient enough to design and engineer drawings for building permits and review and approval of OWNER.

Doc. #766 at pg. 10. Sugarman interprets this language to

mean that IRZ would be responsible for "designing and

engineering" the relevant drawings, but a closer reading

suggests that the actual obligation imposed is to "meet with

OWNER to finalize structure layout and details" as a *prelude*

to the design and engineering of those drawings. This

passage does not unambiguously place the onus for producing

the design and engineering drawings on IRZ. Most of the

"scope of work" contract provisions quoted by Sugarman have

similar ambiguities. (*e.g.* [*paragraph 5* "meet OWNER to

finalize site design and layout;" 7 "meet with OWNER and

service providers to determine routes" and "oversee design

and engineering of conduit;" 11 "meet with OWNER to finalize

facility layout and detail sufficient enough to design and

engineer drawings."])

And this is precisely what IRZ contends in its

Response. Doc. #800. IRZ asserts that, notwithstanding the

contract's references to engineering work, Debtor actually

hired IRZ to *oversee* the design and engineering of the

project as performed by other parties rather than directly

perform such work itself (or, to a large degree, oversee the

adaptation of the engineering work that had already been

1   performed for a separate dairy farm also owned by te Velde).
2   *Id.* IRZ's interpretation of its contractual duties seems to
3   be supported by the fact that Debtor hired at least one
4   subcontractor, Fazio Engineering, to perform the actual
5   engineering work for the dairy's lagoon system. Doc. #799
6   (Decl. of Wayne Downey).

7       Furthermore, the evidence presented by the Defendants
8   raises further factual disputes, as, to the extent IRZ was
9   obligated to perform engineering work and failed to do so,
10  its ability to perform its duties for Debtor was impaired by
11  Debtor's failure to pay IRZ, his failure to pay various
12  subcontractors without whom IRZ could not perform, and his
13  failure to otherwise perform his duties as general
14  contractor. Doc. #799.

15      Finally, Sugarman glosses over the fact that Debtor
16  terminated IRZ on or about August 3, 2017, but continued
17  work on the Dairy up until sometime around the filing of
18  Debtor's bankruptcy case on March 18, 2019. *Id.* Assuming
19  *arguendo* that IRZ was contractually obligated to perform
20  actual engineering work rather than project oversight, the
21  motion fails to identify any specific engineering tasks
22  which IRZ should have already completed as of the date of
23  its termination.

24      It is axiomatic that when one party terminates a
25  contract, the other party is released from future
26  obligations. *See Anderson v. Allison,* 256 Or. 116, 121, 471
27  P.2d 772, 774 (1970)(holding that when "the conduct of the
28  defendant has prevented the performance of a contract

provision by the plaintiff, he cannot avail himself of any such failure to perform"). While Sugarman asserts that IRZ is still liable for its actions or inactions prior to termination, the Plaintiff's filings do not articulate what those actions or inactions might be with any specificity, and certainly not enough to satisfy the heavy burden of summary judgment.

In light of the foregoing, the court finds that there are disputed issues of material fact, not only as to whether IRZ was obligated to perform engineering tasks, but also as to whether any tasks IRZ was theoretically obligated to perform under the contract were also required to have been completed at the time Debtor terminated IRZ.

2.     The Affirmative Defenses.

Sugarman next seeks summary judgment on the applicability of Defendants' Second, Fourth, and Eleventh affirmative defenses. Doc. #766.

The Second Affirmative Defense states:

> Under the doctrine of *in pari delicto*, plaintiff/ trustee stands in the shoes of the debtor, Gregory John te Velde. Here, plaintiff's damages, in whole or in part, are the result of debtor te Velde's comparative fault, which caused or contributed to plaintiff's damages and are, based on in pari delicto, attributable to plaintiff.

Doc. #137.

The Fourth Affirmative Defense states: "Plaintiff's damages, if any, are the result of negligence by other parties over which IRZ has no obligation, duty or right to control." *Id.*

///

Sugarman argues that both these affirmative defenses are inapplicable due to Oregon law, and Sugarman cites several cases for the proposition that comparative fault is not a valid defense to a breach of contract claim. *See generally Hale v. Groce*, 304 Ore. 281; 744 P.2d 1289, 1290 (Or. 1987); *Hampton Tree Farms, Inc. v. Jewett*, 158 Or. App. 376; 974 P.2d 738, 744 n.10 (Or. Ct. App. 1999); *PacifiCorp v. Northwest Pipeline GP*, 879 F. Supp. 2d 1171, 1210 (D. Or. 2012) *Oregon v. Gutierrez-Medina*, 287 Ore. App. 240; 403 P.3d 462, 464 (Or. Ct. App. 2017).

In response, Defendants seem to abandon the Second Affirmative Defense to the extent it seeks to apportion fault to the Debtor. Doc. #800. Instead, Defendants switch gears to claim that these affirmative defenses are to preserve their rights against Dari-Tech if the Trustee obtains a verdict for which Defendants and Dari-Tech are severally liable. *Id.* The court finds that interpretation of the Second Affirmative Defense compared to what actually appears in Defendants' Answer to be dubious. To the extent that Defendants assert the comparative fault of the Plaintiff as a basis for a partial or total reduction in any damages awarded, that argument is foreclosed by Oregon law, and partial summary judgment will be granted to Plaintiff as to the Second Affirmative Defense.

Sugarman's argument is not as strong with regard to the Fourth Affirmative Defense, which refers to the negligence of "other parties," including Dari-Tech. The court finds that, assuming arguendo that Sugarman proves the other elements of his breach of contract claim, there remain disputed issues of material fact precluding summary judgment on whether any fault

should be apportioned between Defendants and any "other parties over which IRZ has no obligation, duty or right to control."

Under *Lowes,* one element for breach of contract in Oregon is that "Defendant's breach resulted in damage to Plaintiff." 546 P.3d at 317. The Fourth Affirmative Defense is a challenge to causation. Arguably, it may not be an affirmative defense at all but rather an element that Sugarman must prove. "A determination of liability without a corresponding finding of damages is insufficient to establish that a party has prevailed on its breach of contract claim." *Spectra Novae, Ltd. v. Waker Associates, Inc.*, 140 Or. App. 54, 60; 914 P.2d 693 (1996). To establish damages, the plaintiff must show that its "harm was both factual and foreseeable consequence of the defendant's conduct". *Wilcher v. Amerititle, Inc.*, 212 Or. App. 498, 506; 157 P.3d 790 *Rev Den*, 343 Or. 366 (2007).

IRZ has raised disputed issues of fact concerning causation of damages. Though the Fourth Affirmative Defense may actually be an element of Plaintiff's claim, there are disputed issues of fact linking IRZ's alleged breach of contract with the extent of damages asserted by Plaintiff. IRZ points to many of the third party defendants as having responsibility for the failure of the dairy waste system. Whether that failure is caused by an alleged breach of contract by IRZ or other factors remains in dispute and is not an appropriate factual basis for a partial summary judgment as to the Fourth Affirmative Defense.

Finally, the Eleventh Affirmative Defense states that "[s]ome or all of plaintiff's claims are barred in whole or in part by the doctrines of waiver and estoppel." Doc. #137. The

court agrees with Defendants that, even if IRZ had a contractual duty to perform engineering work for te Velde, there are disputed issues of material fact pertaining to whether te Velde, by his conduct, waived his right to enforce those contract requirements. Certainly, the testimony that te Velde hired Fazio Engineering to perform engineering work puts the question into dispute.

Waiver is "the intentional relinquishment of a known right." *Wright Schuchart Harbor v. Johnson (In re Johnson*, 133 Or. App. 680, 685; 893 P.2d 560 (1995) quoting *Drews v. EBI Companies*, 310 Ore. 134, 150; 795 P.2d 531 (1990). Waiver must be plainly and unequivocally manifested either "in terms by such conduct as clearly indicates an intention to renounce a known privilege or power." *Wright Schuchart Harbor*, 133 Or. App. at 686. The question of whether a waiver has occurred is resolved by examining the particular circumstances of each case. *Id.* citing *State v. Meyrick*, 313 Ore. 125, 132; 831 P.2d 666 (1992). Waiver may be either explicit or implicit, that is, implied from party's conduct. *Wright Schuchart*, 133 Or. App. at 686 citations omitted.

Wayne Downey's declaration (Doc. 799) states that Te Velde told IRZ that he (Velde) did not want to pay IRZ to engineer the project. Further, IRZ never billed for engineering services and Velde never complained about IRZ's failure to provide engineering services. This evidence, among other evidence, raises the issue that Velde unequivocally waived any right to require IRZ to provide engineering services. This is a material issue of fact since Sugarman claims that IRZ's failure to provide engineering services was a breach of the IRZ/Velde contract. This evidence

and the inferences drawn from the evidence show a material issue
of fact as to whether there was a waiver by the Debtor of those
contractual provisions.  This precludes summary judgment.

In reply, Sugarman urges that the Debtor was not an engineer
and would not know if IRZ billed for engineering services or not.
True enough, Mr. Velde was not an engineer, but that does not
mean Mr. Downey's testimony should be disbelieved.  Velde
operated another dairy and wanted some or all of those systems to
be applied to the Willow Creek project.  It is a reasonable
inference that Mr. Velde knowingly waived any right to require
IRZ to perform engineering services.

3. Indemnification by Lindsay.

The Trustee's final argument for partial summary judgment
focuses on whether co-defendant Lindsay is obligated to indemnify
IRZ for any losses incurred by Velde because of the breach. Doc.
#766. Some additional background is necessary to understand the
context of this argument. As Plaintiff's Statement of Undisputed
Facts explains:

On August 26, 2011, years before the commencement of IRZ's
work for Velde, Lindsay (or a subsidiary thereof) purchased IRZ
from Fred Ziari, its then owner. On or about September 30, 2015,
IRZ, now a subsidiary of Lindsay, commenced its business
relationship with te Velde. On or about August 3, 2017, te Velde
terminated IRZ's services. On November 17, 2017, IRZ filed for
its mechanic's lien.

On April 26, 2018, te Velde filed for Chapter 11, and IRZ
duly filed its Proof of Claim. On March 8, 2019, Sugarman, acting
as Trustee, commenced this adversary proceeding.

On August 27, 2021, Lindsay sold IRZ back to Ziari. More specifically, Lindsay, acting through a subsidiary called Lindsay Sales Holding Co. ("Lindsay SH") sold its ownership interest in IRZ to IRZ Holding Company LLC ("IRZ HC"), which is owned by Ziari. The transfer was effectuated through a Membership Interest Purchase Agreement ("MIPA") dated August 27, 2021.

Under the MIPA, Lindsay SH is identified as the Seller, IRZ is identified as the Company, and IRZ HC as the Purchaser. While Sugarman provides excerpts from the MIPA beneficial to his motion, the entire sections relevant to this motion are quoted below. The proper names of the parties are substituted in for clarity.

> 4.3(h) **Willow Creek Litigation: Nasho Project Claim.**
> [IRZ HC] and [IRZ] acknowledge and agree that [Lindsay SH] shall have the right to manage, control, defend, litigate and settle both the Willow Creek Litigation and the Nasho Project Claim in its sole discretion, and [IRZ HC] shall cooperate and cause Company and its employees and representatives to cooperate with respect to the Willow Creek Litigation and the Nasho Project Claim (at [Lindsay SH]'s expense), and otherwise provide [Lindsay SH] with all reasonable access to the Company's books, records and personnel, as reasonably requested in connection with the Willow Creek Litigation and the Nasho Project Claim, and any related matters. Notwithstanding any of the foregoing, however, or any other part of this Agreement, [Lindsay SH] may not settle, compromise or discharge (including the consent to entry of any judgement) any claims related to the Willow Creek Litigation or the Nasho Project Claim without [IRZ]'s consent, unless the claimants against [IRZ] agreed to release and discharge [IRZ] and [IRZ HC] of all liability as part of the settlement, compromise or Judgement, and the [IRZ] and [IRZ HC] owe no obligations and incur no losses or liabilities in connection with the settlement, compromise or judgement.

Doc. #764 (Exhibit C, ¶4.3(h)).

///

> 5.1(c) **Indemnification by Seller.** [Lindsay SH] shall indemnify, defend and hold harmless [IRZ HC], and, if applicable, [IRZ HC]'s, owners, affiliates (including [IRZ] after the Closing), lenders, attorneys, accountants, agents and employees and their heirs, successors and assigns (collectively, the "[IRZ HC] Indemnified Parties" and together with the [Lindsay SH] Indemnified Parties the "Indemnified Parties") from, against and in respect and to the extent of any Losses imposed on, sustained, incurred or suffered by any of the [IRZ HC] Indemnified Parties, relating to or arising out of (i) any breach of any representation or warranty made by the Seller in this Agreement (including the Fundamental Representations), (ii) the breach of any covenant or agreement of the [Lindsay SH] contained in this Agreement (iii) the Willow Creek Litigation and (iv) the Nasho Project Claim. Notwithstanding anything herein to the contrary, Seller shall not, and in no event, have any obligation to indemnify, defend, or hold harmless the [IRZ HC] Indemnified Parties for any Losses in excess of the [Lindsay SH] Indemnity Cap under Section 5.1(c)(i) or (ii). Furthermore, [Lindsay SH] shall not have any obligation to indemnify, defend or hold harmless the [IRZ HC] Indemnified Parties pursuant to Section 5.1(c)(i) (other than with respect to Fundamental Representations) for any Losses (y) until the aggregate amount of any Losses exceeds $50,000, and then only for Losses in excess of $50,000, and (z) in excess of $500,000.

Doc. #764 (Exhibit C, ¶5.1(c)).

Sugarman seeks partial summary judgment and an order from this court confirming that, based on the MIPA provisions cited, Lindsay is obligated to indemnify IRZ for any losses incurred in this adversary proceeding. Doc. #766.

Defendants do not directly challenge Sugarman's interpretation of the meaning of the indemnity clauses, but rather raise jurisdictional and standing objections because (a) IRZ HC and Lindsay SH are not parties to this adversary, (b) neither Trustee nor Debtor are parties to the MIPA, and (c) the Complaint pleads no claims seeking relief under the MIPA. Doc. #800.

1    In reply, Sugarman does not address the jurisdictional

2  problems raised by the fact that Lindsay is not a party to the

3  MIPA. Instead, they rely entirely on the fact that Ziari, acting

4  as Lindsay's Rule 30(b)(6) designee during depositions, stated

5  that ¶¶4.3(h) and 5.1(c) of the MIPA were both still in effect

6  and in full force, that Lindsay had the right to manage and

7  control IRZ and Lindsay's defense to the instant litigation, and

8  that Lindsay was obligated to indemnify IRZ for any losses

9  arising out of this litigation. Doc. #766; Doc. #764 (Exhibit E

10  at 20:4-22;2 and 22-3-24).

11    Regardless of Ziari's belief about what Lindsay's

12  indemnification obligations under the MIPA might have been, the

13  fact remains that Lindsay HC was the one to sign the MIPA, not

14  Lindsay. And the plain language of ¶5.1(c) says that it is

15  Lindsay HC that has accepted that obligation and not Lindsay.

16    Furthermore, the court notes that the indemnity language in

17  the MIPA is not as unambiguous as Sugarman suggests, as it

18  contains several conditions and limitations on Lindsay HC's

19  indemnity obligations. Those conditions require IRZ to cooperate

20  with Lindsay H C concerning the litigation; provide access to

21  books and records; and consent to a settlement unless IRZ "walks

22  away."  Finally, there are minimum and maximum indemnity caps on

23  Lindsay H C's obligations.

24    These jurisdictional questions and disputed issues of

25  material fact surrounding the breadth and scope of the indemnity

26  agreement (to say nothing of which parties are actually bound to

27  it) preclude summary judgment on this point. It may well be the

28  case that Lindsay is ultimately obligated to indemnify IRZ for

1  any losses arising from this litigation. But that is not

2  something the court can declare as a matter of law on a motion

3  for summary judgment at this juncture.

4

5                          **CONCLUSION**

6       Based on the foregoing, the court recommends that the

7  District Court grant partial summary judgment on the limited

8  questions of whether a valid contract existed between Velde and

9  IRZ (it did) and whether Defendants' Second Affirmative Defense

10 is applicable in this case (it is not). While by no means

11 limiting what may be both material and disputed issues of fact to

12 those raised in this report and recommendations, this court

13 recommends with the above exceptions that the District Court deny

14 the motion for partial summary judgment on the merits.

15      Objections to the above Report and Recommendation, responses

16 thereto and other requirements shall be as required by Fed. R.

17 Bankr. Proc. 9033.  Rulings on the evidentiary objections by both

18 parties are filed concurrently.

19

20 **Dated:** May 08, 2025          **By the Court**

21

22                               _René Lastreto II_

23                               **René Lastreto II, Judge**
                                 **United States Bankruptcy Court**

24

25

26

27

28

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

Randy Sugarman
583 1st St W
Sonoma, CA 95476

Carl S. Kravitz
2100 L Street, NW, Ste 400
Washington DC 20037

R. Miles Clark
1800 M St NW #1000
Washington DC 20036

Kurt F. Vote
265 E. River Park Circle, Suite 310
Fresno, CA 93720

Riley C. Walter
265 E. River Park Circle Suite 310
Fresno, CA 93720

Kyle D. Sciuchetti
500 Broadway St., Ste 400
Vancouver, WA 98660

Bernie Kornberg
340 Golden Shore, Ste. 450
Long Beach, CA  90802

Hagop T. Bedoyan
7647 N. Fresno Street
Fresno, CA 93720