**21**

MILLER NASH LLP
Kyle D. Sciuchetti, Admitted Pro Hac Vice
  *kyle.s@millernash.com*
Bernard Kornberg, CSB No. 252006
  *Bernie.kornberg@millernash.com*
Benjamin P. Tarczy, CSB No. 308367
  *benjamin.tarczy@millernash.com*
1140 SW Washington St, Ste 700
Portland, Oregon 97204
Telephone:    503.224.5858
Facsimile:    503.224.0155

MCCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP
Hagop T. Bedoyan, CSB No. 131285
7647 North Fresno Street
Fresno, California 93720
Telephone: 559.433.1300
Facsimile: 559.433.2300

Attorneys for IRZ Consulting, LLC, and Lindsay
Corporation

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re | Bankruptcy Case No. 18-11651-A-11 |
| GREGORY JOHN TE VELDE, | Chapter 11 |
| Debtor. | Adv. Pro. No. 19-01033-B |
| | DC No. MNG-5 |
| RANDY SUGARMAN, CHAPTER 11 TRUSTEE, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiff, | |
| v. | |
| IRZ CONSULTING, LLC et al.; | Hearing Date:   July 16, 2025 |
| Defendants. | Time:         11:00 a.m. |
| | Place:         Dept. B, Ctr. 13, 5th Fl. |
| AND RELATED CROSS-ACTIONS | U.S. Bankruptcy Court 2500 Tulare Street Fresno, CA |
| | Judge:       Hon. Rene Lastreto |

MILLER NASH LLP
ATTORNEYS AT LAW
PORTLAND

- 1 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4922-1386-1202.5

**TABLE OF CONTENTS**

I. ARGUMENT ................................................................................................... 5

    A.    Trustee Concedes Summary Judgment on His First Cause of Action for Claim Objection ........................................................................... 5

    B.    Trustee Provides No Disputed Facts Regarding the Second Cause of Action for Breach of Contract ........................................................ 5

    C.    IRZ Was Tasked With Overseeing Engineering Work by Engineers Hired by Debtor ........................................................................... 12

    D.    The Negligence Claim Fails for Lack of Duty and the Contractual Limitation on Liability ....................................................................... 14

    E.    The Fourth Cause of Action for Fraudulent Transfer Fails ................. 17

    F.    Lindsay is Entitled to Summary Judgment ......................................... 18

II. CONCLUSION ............................................................................................ 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abraham v. T. Henry Const., Inc.,*
  230 Or. App. 564 (2009), *aff'd on other grounds*, 350 Or. 29 (2011) ................................... 14

5

6

*Aetna Cas. & Sur. Co. v. Oregon Health Scis. Univ.,*
  310 Or. 61 (1990) ........................................................................................................... 20

7

8

*Alexie v. United States,*
  2009 WL 160354 (D. Alaska Jan. 21, 2009) .................................................................. 15

9

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ....................................................................................................... 15

10

11

*Bagley v. Mt. Bachelor, Inc.,*
  356 Or. 543 (2014) ......................................................................................................... 16

12

13

*Best v. U.S. Nat. Bank of Oregon,*
  303 Or. 557 (1987) .................................................................................................... 16, 17

14

15

*Escobar v. AirBus Helicopters SAS,*
  2016 WL 6024441 (D. Haw. Oct. 4, 2016) .................................................................... 15

16

*Gustafson v. SunTrust Mortg., Inc.,*
  2017 WL 3575282 (C.D. Cal. July 10, 2017), *aff'd*, 752 F. App'x 495 (9th Cir.
  2019) ............................................................................................................................... 15

17

18

*Harris v. Suniga,*
  344 Or. 301 (2008) ......................................................................................................... 16

19

20

*Knippling v. Magnuson,*
  2010 WL 1286739 (E.D. Wash. Mar. 10, 2010) ............................................................ 18

21

22

*Livingston v. Metro. Pediatrics, LLC,*
  234 Or. App. 137 (2010) ................................................................................................ 16

23

24

*Seven Signatures Gen. P'ship v. Irongate Azrep BW LLC,*
  563 F. App'x 564 (9th Cir. 2014) ................................................................................... 11

25

*Shelter Prods., Inc. v. Steelwood Const., Inc.,*
  257 Or. App. 382 (2013) ............................................................................................... 8, 9

26

27

*Shivkov v. Artex Risk Sols., Inc.,*
  974 F.3d 1051 (9th Cir. 2020) ................................................................................... 11, 12

28

MILLER NASH LLP
ATTORNEYS AT LAW
PORTLAND

- 3 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4922-1386-1202.5

1

2

*Sisters of St. Joseph of Peace, Health, & Hosp. Servs. v. Russell,*
   318 Or. 370 (1994) ...................................................................................... 20

3

*Sprague v. Quality Restaurants Nw., Inc.,*
   213 Or. App. 521 (2007) .............................................................................. 17

4

5

*In re Taxes, Aiea Dairy, Ltd.,*
   46 Haw. 292 (1963) ...................................................................................... 11

6

7

*Van Uden v. Solomensen,*
   2019 WL 5865284 (D. Mont. Oct. 9, 2019) ................................................. 18

8

*Zepeda v. U.S. I.N.S.,*
   753 F.2d 719 (9th Cir. 1983) ........................................................................ 20

9

**Statutes**

10

ORS 42.270 ........................................................................................................ 11

11

**Other Authorities**

12

13

Fed. R. Bankr. P. 7015 ...................................................................................... 18

14

Fed. R. Bankr. P. 7041 ...................................................................................... 18

15

Fed. R. Civ. P. 15(a)(2) ..................................................................................... 18

16

Fed. R. Civ. P. 41(a) ......................................................................................... 18

17

Fed.R.Evid. 801 ................................................................................................ 15

18

Williston on Contracts § 34:8 art. 12 (4th ed.) ................................................ 11

19

20

21

22

23

24

25

26

27

28

MILLER NASH LLP
ATTORNEYS AT LAW
PORTLAND

- 4 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4922-1386-1202.5

# I. ARGUMENT

**A.**   **Trustee Concedes Summary Judgment on His First Cause of Action for Claim Objection**

Trustee's first cause of action is for objection to the claim of IRZ. FAC ¶ 43. In opposition, Trustee concedes to IRZ's request for summary judgment as to this cause of action, stating that "[i]n light of IRZ's factual proffer in this regard, Plaintiff agrees with IRZ that Plaintiff's objection to IRZ's Proof of Claim has been rendered moot." Opposition at 29:24-26. Given this concession, summary judgment should be granted in favor of IRZ on this cause of action.

**B.**   **Trustee Provides No Disputed Facts Regarding the Second Cause of Action for Breach of Contract**

 **1.**   **The Issue of Whether Performance Was Excused by Debtor's Breach Was Not Reached in The Ruling on Trustee's Summary Judgment Motion**

In the Court's Findings and Recommendation on Trustee's Third Motion for Partial Summary Judgment (the "Findings"), this Court found disputed issues of fact as to whether the Services Agreement required IRZ to provide engineering services [Dkt. #844]. Trustee asserts this goes both ways and is grounds for denying IRZ's motion on the same cause of action. Opposition at 1:8-20.

Trustee misstates the Court's ruling. The Court found only that there were facts that created disputed issues of fact to establish Trustee's claims. The Court did not make findings that Trustee had also introduced sufficient facts to defeat IRZ's counter-summary judgment motion to defeat those claims. Nothing in the Findings states otherwise. This was correct, as doing so would be unnecessary given the posture of that motion.

Unlike Trustee's motion to establish its claim, IRZ has to defeat only one element of breach of contract to prevail on summary judgment. As set forth in Defendants' Motion, Trustee's breach of contract claim fails unless Trustees proves the element of Debtor's performance. Motion for Summary Judgment at 17-19. Trustee's Third Motion for Partial Summary Judgment did not request the Court to determine whether Debtor's breach excused IRZ's performance. MPA on Motion at 6:1-3 [Dkt. #766]. Further, this Court did not need to reach the issue as to

Miller Nash LLP
Attorneys At Law
Portland

- 5 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4922-1386-1202.5

whether Debtor's failure to perform was so complete as to excuse any claims of breach by IRZ to provide engineering services. Accordingly, this issue was not decided in Trustee's motion for summary judgment.

However, it is live in this motion, and as set forth below, this argument forms an independent basis to grant summary judgment for Defendants.

## 2. Debtor's Breach Excused Performance on All Claims Raised by Trustee

It is undisputed that IRZ first entered into the Services Agreement on November 17, 2015, and IRZ ceased work due to lack of payment on August 3, 2017. Defendants' Statement of Undisputed Material Facts ("SUMF") ## 9, 39. Debtor lacked funding to continue because of the decline of milk prices. SUMF # 27. As set forth in IRZ's Motion, the failure to tender payment constituted a material breach that excused performance by IRZ under the Services Agreement. Therefore, Trustee cannot claim damages for IRZ's alleged non-performance of engineering services (even assuming, incorrectly, that IRZ had been tasked with performing any specific engineering services).

Trustee asserts that Debtor's breach by nonpayment excuses only "future" performance, and IRZ is liable for breaches before August 3, 2017. Opposition at 17. IRZ does not dispute this general principle, but it does not apply here. While the Services Agreement incorporates several areas of work, the primary tasks that matter in this litigation are those involving the waste management system. Trustee alleges that only this system failed and caused its alleged damages. FAC ¶ 32. And it is undisputed that this system was incomplete at the time the Services Agreement was terminated—Debtor completed the waste management system on its own and with its own design modifications after the Services Agreement had been terminated. SUMF # 41. Trustee provides no evidence to the contrary. Because the waste management system had not been completed by August 3, 2017, IRZ's duty to perform that portion of the project remained prospective and thus is excused by Debtor's breach.

Second, it is undisputed that Debtor acted as the general contractor under the project and that IRZ acted as Debtor's agent. SUMF ## 10, 24. It is also undisputed that the Services Agreement set out a compensation model familiar to most lawyers: "Service charges for this

Miller Nash LLP
Attorneys At Law
Portland

- 6 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4922-1386-1202.5

project will be based on Agreed Lump Sum or Time and Materials" Ex. B. to Downey Decl. at 12.[1] Payment was not contingent upon completion of all identified services, but rather "for the services provided" by IRZ, as directed by its principal, the Debtor, as follows:

## Service Fee Schedule 2015

## Design, Engineer and Project Management Services

Service charges for this project will be based on Agreed Lump Sum or Time and Materials and Expenses as listed below.  ICD will use based on their judgment qualified persons to conduct these tasks.

| | |
|---|---|
| Principal [1] | $165  per hour |
| Director [1] | $160  per hour |
| Senior Engineer (PE) [1] | $160  per hour |
| Senior Hydrologist [1] | $150  per hour |
| Project Manager [1] | $150  per hour |
| Superintendent [2] | $135  per hour |
| Environmental Specialist [2] | $135  per hour |
| Project Engineer [2] | $135  per hour |
| Foreman [2] | $130  per hour |
| Estimator [2] | $130  per hour |
| Tradesman [2] | $120  per hour |
| Technical Staff [2] | $105  per hour |
| Technician | $ 80  per hour |
| Field Labor | $ 60  per hour |
| Clerical | $ 60  per hour |
| Outside Consultant / Services | Cost plus 20% |
| **Daily Rates** | |
| [1] Per Day (>4 hours portal to portal) | $1500  per day |
| [2] Per Day (>4 hours portal to portal) | $1250  per day |
| | |
| Mileage Charge | at GSA Rates |
| Meal & Lodging | cost plus 20% |

Ex. B to Downey Decl. at 12.

---

[1] See also Ex. B to Downey Decl. § 10 ("For the services provided by [IRZ] under the Scope of Work, Owner shall compensate [IRZ] in accordance with [IRZ's] standard hourly rate schedule attached herein, plus expenses").

This was not a flat-fee arrangement under which all the described Scope of Work must be completed, but rather an hourly one. Further, it is one where IRZ was designated as an agent of the Debtor. Ex. B to Downey Decl. at 10. And like all hourly arrangements, the principal decides what specific work its agent will perform and when, or whether, to exclude a task as not worth the cost. This is reflected in the language of the Services Agreement, which provides that the obligations listed are not mandatory, but instead "[t]he duties of [IRZ] may include but are not limited to" the obligations set forth in the Scope of Work. Ex. B to Downey Decl. at 2; *see also* Ex. B to Downey Decl. at 1.

Debtor never asked IRZ to design the waste management system. SUMF # 45. Even though IRZ had agreed it *could* do that work, Debtor chose another entity, Fazio Engineering, to do it instead. Downey Deposition, vol. III, at 35:7-25 (Ex. M). IRZ, working on an hourly basis under Debtor's direction, properly followed Debtor's instructions when he chose not to incur the expense of certain tasks. Simply put, if the general contractor for the project does not request that engineering services be provided, IRZ, as his agent, has no authority to go ahead and perform engineering services and then demand to be paid for them. IRZ certainly had no contractual obligation to do so.

Third and finally, even if this were not the case and waste-management engineering was required of IRZ, *Shelter Products* establishes that under Oregon law allegedly defective performance is excused when the contractor's contract is terminated for the owner's convenience mid-stream, before the contractor can complete its work. *Shelter Prods., Inc. v. Steelwood Const., Inc.*, 257 Or. App. 382 (2013).

Trustee attempts to distinguish this case by asserting that "in stark contrast to the terminated subcontractor in *Shelter Products*, Defendants here have absolutely no basis for arguing that IRZ was in any way deprived of the opportunity to inspect and cure." Opposition at 14:27 at 15:2. That is not the holding of *Shelter Products*. The *Shelter Products* court made clear that termination for convenience itself deprives the party of the right to inspect and cure its work, stating that "when there is a termination for convenience, [as opposed to] a termination for cause, there [has] been no opportunity to inspect and cure." *Shelter Prods.*, 257 Or. App. at 398.

MILLER NASH LLP
ATTORNEYS AT LAW
PORTLAND

- 8 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4922-1386-1202.5

1    This is true because when the contract is terminated, the result is that the contractor is "required []

2    to immediately stop work with no opportunity to inspect and cure." *Id*. at 401. Unless termination

3    is for cause, the contractor is not liable because the contractor is deprived, through no fault of its

4    own, of this right to fix or finish its as-yet incomplete work. That is what occurred here.

5            Further, even assuming here that the right to demand inspection and cure identified

6    defects had existed post-termination, Debtor did not exercise it. At no point during the

7    construction, or after Debtor completed building the dairy without IRZ's assistance as project

8    manager, did Debtor ever complain about the quality of IRZ's work or allege any defects

9    associated with the construction or operation of the dairy. SUMF # 45. As IRZ was terminated

10   from its duties, without cause, without any indication of dissatisfaction with the work, and

11   without any request for IRZ to complete or correct previously performed work, IRZ cannot be

12   charged for any pre-termination contractual breach.

13           Finally, Debtor significantly modified the project after the Services Agreement was

14   terminated. SUMF # 41. IRZ cannot be charged for failing to cure work it did not perform, or

15   which was significantly modified after it performed the work.[2]  For all these reasons, *Shelter*

16   *Products* calls for summary judgment on this cause of action.

17           **3.      IRZ Did Not Have a General Obligation to Provide Engineering Services**

18           Defendants and Trustee agree on one thing in this litigation—IRZ never provided

19   engineering services to Debtor during its nearly two-year tenure on the Lost Valley Farm project.

20   SUMF # 22. Unsurprisingly, this is not because Debtor did not notice that IRZ was not providing

21   engineering drawings. Rather, it is because the Services Agreement does not call for IRZ to

22   provide engineering services when Debtor *chose not to have IRZ perform engineering services*.

23

24

---

25   [2] Trustee "disputes" SUMF # 41 on the ground that "[t]he declarant Defendants cite lacks
     personal knowledge of Mr. te Velde's actions after IRZ stopped working on the project."  SUMF
26   # 41.  This is false. Wayne Downey declares he personally visited Lost Valley Farm after the
     bankruptcy was filed and the as-built structures had "significant and material" changes from the
27   draftsman's drawings that IRZ had prepared. Downey Decl. ¶ 19.  Thus, this evidence comes
     from his personal knowledge.
28

That IRZ's view is correct is simple to prove. Debtor directly retained an entirely separate engineer, Fazio Engineering, to handle the engineering for Lost Valley Farm. Downey Deposition, vol. III, at 35:7-25 (Ex. M). This is inconsistent with Trustee's claim that IRZ was the engineer. Regardless, a review of the Services Agreement shows that IRZ was not contractually obligated to provide these engineering services absent Debtor's instruction to proceed.

The Services Agreement's description of the "Scope" provides that IRZ "shall provide the services set forth in [the] SCOPE OF WORK." Ex. B to Downey Decl. This section has three parts. First, "Project Management Services." Second, "Work Phases to Be Performed During Project." And third, "Project Schedule." Ex. B to Downey Decl.

The first section, "Project Management Services," defines IRZ's role in the Lost Valley Farm project. In the first bullet point, the Services Agreement states "[t]his project will be undertaken under the supervision and control of ICD as *Project Manager*." Ex. B to Downey Decl., § 1 (emphasis added). This section then sets forth certain duties of IRZ as "Project Manager." Only one duty speaks to engineering at all.

> ICD will **oversee the design and engineering** of this project[;] Will meet with the OWNER as needed, but on a minimum hold weekly progress meetings with the OWNER to discuss design changes[;] [and] ICD will **oversee the design and engineering** of the project to insure [sic] that all objectives of the project are met in the final and complete design.

Ex. B to Downey Decl., § 1 (emphasis added). This enumerated duty of IRZ was to *oversee* the design and engineering of the Lost Valley Farm project, not to *provide* engineering services. IRZ did not breach the Services Agreement by failing to directly provide engineering services.

This interpretation of the Services Agreement is supported by the general recitals of the Services Agreement. In the section listed as "Project Objective," immediately before the Scope of Work section, the Services Agreement states that "[IRZ] will assist the OWNER to make sure that the project is designed and constructed to operate at maximum efficiencies while using quality materials and qualified personnel to minimize costs and achieve a long lasting and sustainable project." Ex. B to Downey Decl. at 1.

MILLER NASH LLP
ATTORNEYS AT LAW
PORTLAND

- 10 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4922-1386-1202.5

1    Also, the term "Project Manager" is undefined by the Services Agreement. This Court

2    may thus consider parol evidence to interpret its usage as a term of art. 12 Williston on Contracts

3    § 34:8 (4th ed.) ("Technical words in an agreement are to be interpreted as usually understood by

4    those in the business to which they relate unless the context of the agreement or an applicable

5    custom or usage clearly indicates that a different meaning was intended"). IRZ's role was

6    administrative, assisting with scheduling and permitting at the direction of the owner or general

7    contractor. See SUMF # 21. Therefore, the hiring of IRZ as a project manager does not support a

8    finding that IRZ was obligated to also provide engineering services.

9    Trustee notes that the preamble to the Services Agreement does broadly states that

10   "OWNER retains ICD to perform design, engineering, and project management services, in

11   connection with the design, engineering, and construction of The Willow Creek Dairy

12   Construction Project as described in the enclosed Scope of Work." Ex. B to Downey Decl. at 2.

13   This language cannot modify the parties' agreed, specific, inserted scope of work. "When an

14   instrument consists partly of written words and partly of a printed form, and the two are

15   inconsistent, the former controls." ORS 42.270.

16   The preamble to a contract is of limited value in interpretating its terms. *Seven Signatures*

17   *Gen. P'ship v. Irongate Azrep BW LLC*, 563 F. App'x 564, 565 (9th Cir. 2014) ("Construing the

18   preamble as limiting the MSA's reach only to the transaction documents and not to these sales

19   contracts would render substantive portions of the agreement meaningless"); *In re Taxes, Aiea*

20   *Dairy, Ltd.*, 46 Haw. 292, 305 (1963) ("it is the operative part of an agreement and not mere

21   recitals therein which determines what the parties actually intended by entering into the

22   agreement"). Additionally, "it is a standard rule of contract interpretation that specific terms

23   control over general ones." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020)

24   (internal quotations omitted). The specific definition of IRZ's role in the Project Objective and

25   Scope of Work sections refines, limits, and overrides the broader language in the preamble.

26   Further, while not argued by Trustee, it is worth stating that IRZ did not breach its

27   contractual duty to oversee the project. The Scope section describes IRZ's oversight as ensuring

28   that "*all objectives of the project are met in the final and complete design.*" Ex. B to Downey

MILLER NASH LLP
ATTORNEYS AT LAW
PORTLAND

- 11 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4922-1386-1202.5

1　Decl. at § 1 (emphasis added). As set forth above, IRZ's performance of this obligation was

2　rendered impossible when Debtor terminated the Services Agreement without cause before the

3　final and complete design was created. SUMF ## 9, 39. IRZ never had the opportunity to perform

4　this provision of the Services Agreement. Indeed, after the termination, Debtor materially

5　changed the scope of the project, including the design of the project, from where it stood when

6　IRZ left. See SUMF # 41. IRZ cannot have breached a duty to ensure that the final project met all

7　objectives when the Services Agreement was terminated halfway through the project.

8　**C.　　IRZ Was Tasked With Overseeing Engineering Work by Engineers Hired by Debtor**

9　　　　　The second section of the Scope of Work is "Work Phases to Be Performed During

10　Project." Ex. B to Downey Decl. § 2. "This section of the agreement will list the known phases of

11　work to be performed for the successful completion of the project." Ex. B to Downey Decl. at 2.

12　The Services Agreement then lists 21 separate phases of the project and sets forth the duties of

13　IRZ as to each phase. Ex. B to Downey Decl., §§ 2-8. As set forth above, the specific terms of the

14　Services Agreement prevail over the general.　*Shivkov*, 974 F.3d at 1063.　Therefore, these 21

15　phases defined the oversight obligations owed by IRZ to Debtor. Of these 21 phases, Trustee only

16　identifies facts supporting alleged breaches for two of them.

17　　　　　First, Trustee argues that IRZ breached the requirement of phase 21 that IRZ "Design and

18　engineer all types of concrete construction for the project." Ex. B to Downey Decl. at 8. Trustee

19　asserts that "Defendants admitted that IRZ did not design or engineer any aspect of the project's

20　massive concrete construction." Opposition at 15:6-7.

21　　　　　This argument ignores phase 2 of the Scope of Work, which provides that IRZ was to

22　provide the following services as to pre-engineered structures.

23

24

25

26

27

28

Miller Nash LLP
Attorneys At Law
Portland

- 12 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4922-1386-1202.5

2. **Preliminary structure design**: The preliminary structure design will consist of:

- Provide Non-engineered drawings of all structures where pre-engineered structures will be used for construction, in detail sufficient enough for suppliers to design and quote each structure.
- Provide specifications sufficient enough for suppliers to design and quote each structure. Drawings and specifications to include structure dimensions and floor plan layouts.

3. **Request for quotes from pre-engineered building suppliers**

- Prepare bid documents and drawings and send to selected pre-engineered structure suppliers.
- Receive and review quotes and designs from pre-engineered structure suppliers for complete compatibility with construction drawings.
- Meet with OWNER to review bids and select structure supplier.

Ex. B to Downey Decl. at 4.

Where engineering services were needed, they would be performed by engineers hired by Debtor, Otherwise, Debtor instructed that pre-engineered structures that were used at the Willow Creek dairy were to be constructed at the new dairy he was building. As general contractor, Debtor had ultimate authority to make these decisions. Downey Decl., ¶ 11. No engineering was required because pre-engineered structures were used.

Second, Trustee argues that IRZ breached the requirement of phase 9 that IRZ "[o]versee lagoon design and engineering to insure proper design." Ex. B to Downey Decl. at 5. Trustee asserts that "IRZ did not review any engineering work that the relevant subcontractor (Fazio Engineering) may have performed regarding the dairy's lagoon system." Opposition at 16:1-2. But the evidence Trustee cites does not support this contention. Rather, IRZ's corporate representative stated that he communicated with Fazio Engineering regarding the engineering work and made sure that construction complied with Fazio Engineering's design. Ex. 1 to Clark Decl. at 133:9-25. Thus, IRZ met the obligations set forth in phase 9.

Trustee also makes hay of the fact that IRZ did not hire any engineers itself. Opposition at 16:13-16. However, under the Services Agreement, the responsibility of hiring sub-contractors laid solely with Debtor. IRZ was only required to "[a]ssist OWNER in hiring and overseeing all Sub Contractors." Ex. B to Downey Decl. at 1. Thus, when engineering was needed, they were to

MILLER NASH LLP
ATTORNEYS AT LAW
PORTLAND

- 13 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4922-1386-1202.5

1    be hired by the Debtor. That, indeed, as set forth above, occurred with Fazio Engineering. IRZ

2    had no duty or obligation itself to hire any engineers, because that was the responsibility of the

3    General Contractor.

4          Finally, Trustee's argument that IRZ breached the contract on the day it signed the Servies

5    Agreement defies logic. As set forth above, this was a time-and-materials contract in which IRZ

6    was to act solely as the agent for Debtor. Under a time-and-materials contract, IRZ serves at the

7    direction of Debtor. IRZ did not provide additional engineering services because Debtor never

8    requested them. The fact that Debtor never requested engineering services under the time and

9    materials contract prior to terminating IRZ is undisputed and entitles IRS to summary judgment.

10   **D.     The Negligence Claim Fails for Lack of Duty and the Contractual Limitation on
         Liability**

11

12         **1.     Trustee Provides No Evidence of Negligence**

13         Trustee has shown no evidence of negligence. Instead, he relies on the canard that IRZ

14   was responsible for failing to perform engineering work that it supposedly agreed to do under the

15   Services Agreement. Opposition at 18. But even if this were correct, Trustee raises only an issue

16   of contract, not tort. "For the injured party to have a tort claim, however, that party must allege

17   the breach of a standard of care that is independent of the contract and without reference to its

18   specific terms." *Abraham v. T. Henry Const., Inc*., 230 Or. App. 564, 568 (2009), *aff'd on other*

19   *grounds*, 350 Or. 29 (2011). Trustee may not point to a contractual obligation, such as a phantom

20   assertion that IRZ contracted to provide engineering services, as a basis for negligence. Rather,

21   Trustee must show that IRZ performed specific work and, in doing so, breached a separate legal

22   duty of care to Debtor in a manner that damaged Debtor.

23         In the present motion, IRZ has provided evidence that the work it did perform was done to

24   the proper standard of care. SUMF # 45. Any work that IRZ did not complete under the Services

25   Agreement was solely due to Debtor's actions, including failing to move the project forward

26   (SUMF # 34); failing to pay his subcontractors, leading to their non-performance (SUMF # 37);

27   terminating the Services Agreement by failing to pay IRZ (SUMF # 39); and modifying all plans

28   and completing the project himself after the termination of IRZ (SUMF # 41). These are all issues

Miller Nash LLP
Attorneys At Law
Portland

- 14 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4922-1386-1202.5

1    of contract, not tort. As set forth in Defendants' Motion, Defendants are not liable for the acts of

2    Debtor or its independent subcontractors.

3         Trustee provides no evidence to dispute these material facts. No percipient witness or

4    expert is cited in Trustee's opposition for the proposition that IRZ performed work in a negligent

5    manner. The sole evidence trustee cites is an expert report of Jesse D. Frederick. Opposition at

6    25:1-4. "Expert reports are hearsay and not admissible unless the proponent is able to provide a

7    basis for an exception to the hearsay rule." *Escobar v. AirBus Helicopters SAS*, 2016 WL

8    6024441, at *1 (D. Haw. Oct. 4, 2016); *see also Alexie v. United States*, 2009 WL 160354, at *1

9    (D. Alaska Jan. 21, 2009) ("The reports are out-of-court statements by witnesses offered for their

10   truth and so fall within the definition of hearsay in Fed.R.Evid. 801").  Mr. Frederick's report is

11   not supported by any declaration of Mr. Frederick, or any other evidence that would render it

12   admissible. Ex. 9 to Clark Decl. The report may not be considered by this Court. Fed.R.Evid. 801.

13   Accordingly, this report, by itself, is not a basis for negligence.

14        Moreover, Mr. Frederick's assertions are simply incomplete. Mr. Frederick makes no

15   effort to distinguish between work that IRZ completed as Project Manager and the work that

16   Debtor performed as General Contractor after terminating IRZ from involvement in the

17   construction and completing the construction on his own. Mr. Frederick is able to only speculate

18   what went wrong and who was at fault. This does not create a genuine issue of disputed fact.

19        **2.    The Economic Loss Rule Bars the Negligence Claim**

20        Trustee asserts that the economic loss rule does not apply here because "Plaintiff is not

21   seeking to hold Defendants liable for 'purely economic loss.'" Opposition at 16:4. However,

22   Trustee fails to provide facts to support this position. Trustee asserts that "Defendants' failures

23   forced Plaintiff to spend millions of dollars to remediate the property and *diminished the

24   property's value by many millions of dollars*." Opposition at 22:1-3 (emphasis added). But

25   Trustee cites to paragraph 57 of the FAC as its evidence to support this assertion. "[A]llegations

26   in a Complaint do not constitute evidence for purposes of a motion for summary judgment."

27   *Gustafson v. SunTrust Mortg., Inc*., 2017 WL 3575282, at *6 (C.D. Cal. July 10, 2017), *aff'd*, 752

28   F. App'x 495 (9th Cir. 2019) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

MILLER NASH LLP
ATTORNEYS AT LAW
PORTLAND

- 15 -                    REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
                                                      SUMMARY JUDGMENT

4922-1386-1202.5

1   Trustee's other cited evidence is Debtor's Chapter 11 Disclosure Statement and IRZ's Proof of

2   Claim, neither of which provide any admissible evidence of remediation costs. Accordingly,

3   Trustee fails to provide evidence of actual property damage that would take his claims outside the

4   economic loss rule.

5          Even if the Court were to take the allegations of the complaint as gospel, it does not

6   change the result. The cited paragraph 57 of the FAC does not identify any property damage but

7   instead asserts damages for (1) remediation; (2) loss of profits; (3) professional fees; (4) fines;

8   and (5) loss of value. FAC ¶ 57. These are not allegations of actual damage to the property itself,

9   but instead assert the costs incurred when the State of Oregon required the cleanup of the waste

10  management system. Without actual property damage, the losses are solely economic. *Harris v.*

11  *Suniga*, 344 Or. 301, 308 (2008).

12         **3.      The Limitation of Liability Claim is Not Unconscionable**

13         Trustee incorporates by reference the argument he previously raised regarding the

14  enforceability of the liability limitation clause and argues that the Court should decline to enforce

15  the limitation-of-liability clause as being procedurally unconscionable. "Unconscionability is a

16  legal issue that must be assessed as of the time of contract formation." *Best v. U.S. Nat. Bank of*

17  *Oregon*, 303 Or. 557, 560 (1987). "Oregon courts are reluctant to declare contractual provisions

18  per se unconscionable, even among parties of unequal bargaining power." *Livingston v. Metro.*

19  *Pediatrics, LLC*, 234 Or. App. 137, 152 (2010).

20         The doctrine of procedural unconscionability applies in Oregon as follows:

21         Procedural unconscionability refers to the conditions of contract
            formation and focuses on two factors: oppression and surprise. [].
22         Oppression exists when there is inequality in bargaining power
            between the parties, resulting in no real opportunity to negotiate the
23         terms of the contract and the absence of meaningful choice. [].
            Surprise involves whether terms were hidden or obscure from the
24         vantage of the party seeking to avoid them. []. Generally speaking,
            factors such as ambiguous contract wording and fine print are the
25         hallmarks of surprise. In contrast, the existence of gross inequality
            of bargaining power, a take-it-or-leave-it bargaining stance, and the
26         fact that a contract involves a consumer transaction, rather than a
            commercial bargain, can be evidence of oppression.

27  *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 555 (2014).

28

1    First, Trustee asserts the contract is procedurally unconscionable because IRZ did not

2    specifically discuss the terms of the clause with Debtor when the Services Agreement was

3    negotiated. Opposition at 25:23 to 26:5. Even if this were true, the limitations clause is not

4    hidden, but is set forth in plain English under a clause headlined as "ICD Liability" on page 13 of

5    the Services Agreement. The limitation clause is, as a matter of law, not ambiguous, hidden, or

6    otherwise a surprise to any of the parties to the contract. *Sprague v. Quality Restaurants Nw.,*

7    *Inc.*, 213 Or. App. 521, 526 (2007) (holding an arbitration clause was not procedurally

8    unconscionable as "it is clearly and fully described in the employee handbook, with the key

9    provisions set off in italics and boldface").

10    Further, the factor of surprise is not met under Oregon law unless there are indicia that one

11    of the parties lacked the sophistication to understand a term and the clause was pushed on them

12    through "deception or any other improper means." *Best*, 303 Or. at 561. This was a commercial

13    contract worth millions of dollars and there is no evidence that it was pushed on Debtor without

14    opportunity to review it with counsel. That is all the disclosure that is required. *Id.* Any other

15    ruling would mean that any clause in a contract that was not specifically orally discussed between

16    the parties would be void as a matter of law.

17    Second, Trustee also asserts procedural unconscionability because there was no specific

18    discount provided for agreeing to it. Opposition at 26:5-7. Nothing in the doctrine of procedural

19    unconscionability requires that any individual term be given a specific value in the contract.

20    Parties are allowed to demand specific terms and refuse to enter agreements if they are not

21    included. Otherwise, any specific contract would have to have each clause individually negotiated

22    and valued, a daunting and unrealistic proposition. In this case, the parties were well capable of

23    negotiating the contract as a whole or demanding that specific terms be removed if they so

24    choose.

25    **E.    The Fourth Cause of Action for Fraudulent Transfer Fails**

26    In its Motion, IRZ seek summary judgment as to Trustee's fourth cause of action for

27    fraudulent transfer. Motion at 26-28. In response, Trustee simply states that "Plaintiff will agree to

28    a stipulation of dismissal without prejudice of his fraudulent transfer claim." Opposition at 30:2.

MILLER NASH LLP
ATTORNEYS AT LAW
PORTLAND
                                    - 17 -                REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
                                                                          SUMMARY JUDGMENT

4922-1386-1202.5

1　Although IRZ would likely have agreed to such a stipulation at an earlier time, it will not now

2　because the matter is ripe for determination. Nor does Trustee have a right to dismissal of claims

3　without Court consent. Fed. R. Civ. P. 15(a)(2) (as incorporated by Fed. R. Bankr. P. 7015); Fed.

4　R. Civ. P. 41(a) (as incorporated by Fed. R. Bankr. P. 7041).

5　　　　Leave of Court should not be granted because the dismissal was only sought after

6　summary judgment had been filed on the claim. Trustee "should not be permitted to evade

7　summary judgment on unmeritorious claims by voluntarily dismissing the claims and later

8　reinstating them." *Van Uden v. Solomensen*, 2019 WL 5865284, at *1 (D. Mont. Oct. 9, 2019),

9　*report and recommendation adopted*, 2019 WL 5863975 (D. Mont. Nov. 8, 2019); *see also*

10　*Knippling v. Magnuson*, 2010 WL 1286739, at *2 (E.D. Wash. Mar. 10, 2010), *report and*

11　*recommendation adopted,* 2010 WL 1286716 (E.D. Wash. Mar. 26, 2010) ("Defendant's legal

12　interests in fair and orderly proceedings before the court will be prejudiced if Plaintiff is able to

13　refile this claim at a later date after having failed to adhere to the court's scheduling order and

14　court rules"). As set forth in the Motion, this cause of action has no merit. Accordingly, IRZ

15　requests that the Court grant summary judgment as to this cause of action.

16　**F.　Lindsay is Entitled to Summary Judgment**

17　　　　**1.　Lindsay is Not a Party to the Services Agreement**

18　　　　Trustee, desperate to manufacture liability where there is none, continues to insist that

19　Lindsay is a proper party to this action. None of his arguments carry any weight.

20　　　　First, Trustee's second, third, and fourth causes of action entirely arise out of the Services

21　Agreement. The Work Order relied on by Trustee covers only preliminary work done before

22　Debtor purchased Lost Valley Farm and is expressly superseded by the Services Agreement.

23　SUMF # 6, 13. IRZ Consulting, LLC, is the express signatory on the Services Agreement. SUMF

24　# 9. It was and is a corporate entity independent from Lindsay. Trustee provides no authority for

25　the proposition that he can hold liable an entirely different entity from the express contractual

26　counter-party.[3] The Court may grant summary judgment on this basis alone.

27

28　[3] Certain derivative liability claims, such as alter ego or successor liability, might achieve such a
result if alleged and proven. But Trustee makes no such allegation or argument for those claims,

MILLER NASH LLP
ATTORNEYS AT LAW
PORTLAND

- 18 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4922-1386-1202.5

Trustee fails to provide evidence that Lindsay was the actual, "secret" counter-party to the Services Agreement. Trustee asserts that IRZ's use of "ICD IRZ Construction Division by Lindsay" on its letterhead or forms at different times presents a genuine issue of material fact that Lindsay Corp. is the true counter-party. Opposition at 21:17-18. But it is *undisputed* by Trustee that "IRZ Construction by Lindsay" was a marketing name developed to capitalize on IRZ's connection with Lindsay Corp., a publicly traded company in the irrigation space. Neither Lindsay Corp. nor Lindsay Holding ever did work under the IRZ name. SUMF # 55. Therefore, "IRZ Construction by Lindsay" was simply a trade name of IRZ, and does not indicate that Lindsay was the actual counter-party to the Services Agreement.

Finally, Trustee asserts that derivative liability is appropriate solely because IRZ employees communicated with attorneys for Lindsay regarding the project. Opposition at 27:14-15. But this conversation occurred after formation of the Services Agreement. Ex. 14 to Clark Decl. It is not shocking that IRZ later discussed a large and contentious issue with its then-parent company's attorneys. Trustee provides no authority as to his would make Lindsay liable for the acts of IRZ. Nor does doing so make the parent company liable.

### 2. The Indemnification Agreement By Lindsay's Parent Company Has No Bearing on this Matter

Finally, Trustee asserts a new, alternative argument that Lindsay agreed to indemnify IRZ for any liability in this action. For background, Lindsay Sales Holding Co., LLC ("Lindsay Holding") is a wholly owned subsidiary of defendant Lindsay Corp. Ex. 15 to Clark Decl. Lindsay Holding sold its membership interests in IRZ to IRZ Holding Company, LLC ("IRZ Holding") through the Membership Interest Purchase Agreement (the "MIPA"). Ex. 15 to Clark Decl. As part of the sale, Lindsay Holding agreed to indemnify IRZ Holding for any losses suffered by IRZ Holding from this litigation, subject to certain limitations contained within the MIPA. Ex. 15 to Clark Decl. Trustee asserts that under the MIPA, Lindsay "has agreed to indemnify IRZ for any losses incurred in this lawsuit." Opposition at 27:21-22.

---

provides no evidence to support them, and has failed to name these corporate entities as parties in this action.

MILLER NASH LLP
ATTORNEYS AT LAW
PORTLAND

- 19 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4922-1386-1202.5

First, this Court lacks in personam jurisdiction to grant any relief against Lindsay. Neither IRZ Holding nor Lindsay Holding is a party to this action. This Court cannot direct a non-party to indemnify a party to this action. *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court").

Trustee acknowledges as much, stating that "Whether or not Lindsay, as its Rule 30(b)(6) witness said, or the subsidiary identified through which Lindsay effected the sale, is ultimately the indemnitor, Plaintiff will be entitled to attach IRZ's indemnity rights to collect a judgment against IRZ. Lindsay belongs in the case for these additional reasons." Opposition at 29:1-4. Trustee provides no authority that Lindsay is a proper defendant to a proceeding when no claims are raised against it, but solely in case Trustee obtains a judgment against a different party and then seeks to collect on it as to a third party.

Second, Trustee lacks standing to assert this argument. Neither Trustee nor Debtor is a party to the MIPA. Under Oregon law, a third-party can only enforce a contract upon evidence of "an intention to confer a contract right upon [the] third party." *Aetna Cas. & Sur. Co. v. Oregon Health Scis. Univ.*, 310 Or. 61, 65 (1990). Absent such evidence, "the contract will not be interpreted to promise performance to the third-party stranger to the contract even though the stranger may incidentally benefit from the contract." *Id.*; *see also Sisters of St. Joseph of Peace, Health, & Hosp. Servs. v. Russell*, 318 Or. 370, 375 (1994). There is no evidence that either Lindsay Holdings or IRZ Holding intended to grant Debtor or Trustee third-party beneficiary status in the MIPA, or any reason they would. The MIPA contemplated sale of IRZ as a whole. Whether the indemnification clause is exercised is solely a concern between IRZ Holding and Lindsay Holding.

## II. CONCLUSION

For the reasons stated above and in Defendants' Motion, Defendants request entry of an order granting their motion for summary judgment and dismissing Debtor's complaint or, alternatively, for partial summary judgment.

1

2

Dated: July 2, 2025          MILLER NASH LLP

3

4          By: */s/ Kyle D. Sciuchetti*
                    _____

5               Kyle D. Sciuchetti, OSB No. 965705, admitted *pro hac vice*
                Bernard Kornberg, CSB No. 252006

6               Benjamin P. Tarczy, CSB No. 308367
                Hagop T. Bedoyan, CSB No. 13285

7               Attorneys for IRZ Consulting, LLC, and Lindsay Corporation

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4922-1386-1202.5