POSTED ON WEBSITE
NOT FOR PUBLICATION

1              UNITED STATES BANKRUPTCY COURT

2              EASTERN DISTRICT OF CALIFORNIA

3                    FRESNO DIVISION

4

5   In re                    )  Case No. 18-11651-F-11
                             )
6   **GREGORY JOHN TE VELDE,**    )
                             )
7                  Debtor.    )
    ─────────────────────────────)
8                             )
    RANDY SUGARMAN, CHAPTER 11   )  Adv. Proc. No. 19-1033-B
9   LIQUIDATING TRUSTEE,         )
                             )  Docket Control No. MNG-5
10                 Plaintiff.   )
                             )
11  v.                         )
                             )
12  IRZ CONSULTING, LLC, aka IRZ  )
    CONSTRUCTION DIVISION, LLC,   )
13                             )
                 Defendant.    )
14  ─────────────────────────────)
                             )
15  AND RELATED THIRD-PARTY COMPLAINT)
    AND CONSOLIDATED ACTIONS.       )
16  ─────────────────────────────)

17

18        **REPORT AND RECOMMENDATION ON MOTION FOR**
       **SUMMARY JUDGMENT AND/OR MOTION FOR PARTIAL SUMMARY JUDGMENT**
19
                   ─────────────────────────────
20

21  Kurt F. Vote, WANGER JONES HELSLEY PC, for RANDY SUGARMAN,
    Liquidating Trustee; Carl S. Kravitz, ZUCKERMAN SPAEDER LLP, for
22  RANDY SUGARMAN, Liquidating Trustee; R. Miles Clark, ZUCKERMAN
    SPAEDER LLP, for RANDY SUGARMAN, Liquidating Trustee.
23
    Kyle D. Sciuchetti, MILLER NASH LLP, for IRZ Consulting, LLC and
24  LINDSAY CORPORATION; Bernard Kornberg, MILLER NASH LLP, for IRZ
    Consulting, LLC and LINDSAY CORPORATION, Defendants.
25

26  Randy Sugarman, Chapter 11 Trustee.

27                   ─────────────────────────────

28  RENÉ LASTRETO II, Bankruptcy Judge:

                            1

This matter comes before the court on the *Defendant's Renewed Motion for Summary Judgment as to Plaintiff's First Amended Complaint, or in the Alternative, for Partial Summary Judgment ("the Summary Judgment Motion" or simply "the Motion")* which was filed by Defendants IRZ Consulting, LLC ("IRZ") and Lindsay Corporation ("Lindsay")(collectively "Defendants") on April 25, 2025, with an original hearing date set for July 16, 2025. Doc. #830. The matter was continued due to the unavailability of the judge and finally heard on September 11, 2025, after which the court took the matter under advisement. Doc. #903. The court noted a procedural error in the opposition and set the matter for a status conference on October 22, 2025. Following the conference, the matter was submitted.

This motion for summary judgment was filed on 42 days' notice as required by LBR 7056-1 and in conformance with Rule 7056 and Civ. Rule 56.

The plaintiff in this adversary proceeding is Randy Sugarman ("Sugarman," "Trustee," or "Plaintiff"), Liquidating Trustee in the underlying Chapter 11 bankruptcy case *In re Gregory John Te Velde,* Bankr. Case No. 18-11651 ("the Main Case") The debtor in the Main Case is Gregory Te Velde ("Te Velde"). An order closing the Main Case but retaining jurisdiction over pending adversary proceedings, including this one, was entered on February 21, 2023. Main Case Doc. #3360.

The Motion is supported by:

1.   a Memorandum of Facts and Authorities (Doc. #834);

2.   Defendant's Statement of Undisputed Facts ("DSUF")(Doc. #835);

3.  the Declaration of Farahmand Ziari ("the Ziari
    Declaration") (Doc. #836);

4.  copious Exhibits, the most important of which are the
    Work Order (Exhibit A - "Work Order") and the Services
    Agreement (Exhibit B - "Services Agreement") which
    governed the contractual relationship between
    Defendants and Te Velde (Doc. #837);

5.  the Declaration of Wayne Downey, the Director of
    Construction at IRZ ("the Downey Declaration")(Doc.
    #838); and

6.  the Declaration of Benjamin P. Tarczy, counsel for
    Defendant, which is offered solely to authenticate some
    of Defendant's Exhibits. (Doc. #839).

Sugarman timely responded with:

1.  Plaintiff's Memorandum of Points and Authorities (Doc.
    #869);

2.  Evidentiary Objections to the Motion (Doc. #870);

3.  Plaintiff's Response to the DSUF (Doc. #871);

4.  The Declaration of R. Miles Clark, counsel for
    Plaintiff, which is offered to authenticate some of
    Plaintiff's Exhibits (Doc. #872);

5.  An equally copious list of Exhibits (Docs. ##874-82);
    and

6.  Plaintiff's Supplemental Response to the DSUF and
    Plaintiff's own Statement of Undisputed Facts ("PSUF")
    (Doc. #909)[1].

---

[1] Throughout the remainder of this opinion, Doc. #909 will be the source for
any references to the DSUF and the Plaintiff's responses thereto, with

1    On July 2, 2025, Defendants filed a Reply (Doc. #883) and

2   Defendants' Evidentiary Objections to Sugarman's Opposition (Doc.

3   #884). Defendants did not reply to the *Plaintiff's Statement of*

4   *Undisputed Facts*. After hearing oral arguments and reviewing the

5   voluminous filings, the court is prepared to issue its report and

6   recommendations to the District Court.

7

8                              **BACKGROUND**

9    The court has thoroughly expounded upon the facts underlying

10  this dispute in several prior writings, most recently in the

11  court's *Findings and Recommendations for De Novo Consideration of*

12  *the District Court as to Plaintiff's Third Motion for Summary*

13  *Judgment*, issued on May 8, 2025. *See* Doc. #844. To briefly

14  summarize:

15   Te Velde contracted with IRZ for IRZ's assistance (or, more

16  accurately, IRZ's construction division, "ICD") in the

17  construction of what would have been the Willow Creek Dairy

18  facility ("the Dairy"), which Te Velde hoped to build on land

19  near Boardman, Oregon. The contractual relationship between Te

20  Velde and IRZ was governed by the Work Order and the Services

21  Agreement, but there is disagreement among the parties as to what

22  obligations were placed upon IRZ and ICD by those documents.

23   Te Velde defaulted on his obligation to pay for the services

24  of IRZ/ICD, and they stopped working on the project and later

25  recorded a construction lien on the project. IRZ later filed a

26  suit for damages against Te Velde in Oregon state court, and that

27  ────────────────
    specific references to purportedly undisputed facts and Plaintiff's responses
    cited as "DSUF #[relevant paragraph]." References to Plaintiff's purportedly
28  undisputed facts will be cited as "PSUF #[relevant paragraph]."

1   action was subsequently removed to this court after Te Velde
2   filed for bankruptcy.

3        On February 11, 2019, the court authorized Sugarman, in his
4   capacity as Trustee, to sell the property that was subject to
5   IRZ's lien but directed Sugarman to hold back funds in a blocked,
6   interest-bearing account to provide "adequate protection" for IRZ
7   (and other "Affected Interests" identified in the order) on
8   account of its disputed claim. Doc. #1607. On March 6, 2019,
9   Trustee filed a *Return and Report of Sale* advising that the
10  property had been sold for $62,943,972.69. Doc. #1709.

11       On March 8, 2019, Trustee filed this adversary proceeding
12  against IRZ and later amended the complaint to add claims against
13  Lindsay in its capacity as IRZ's parent company. Docs. #1, #533.
14  The Amended Complaint alleges four causes of action:

15   1. An Objection to Defendants' Proof of Claim pursuant to 11
16      U.S.C. § 502(b)(against IRZ only);

17   2. Counterclaim for Breach of Contract (against both
18      Defendants);

19   3. Counterclaim for Negligence (against both Defendants); and

20   4. Avoidance of Fraudulent Transfer or Obligation (11 U.S.C. §
21      544(b)(against both Defendants).

22  Doc. #533. Defendants now seek summary judgment as to all four
23  claims. Doc. #830.
24  ///
25  ///
26  ///
27  ///
28  ///

5

## DISCUSSION

## I.

## JURISDICTION

The District Court has jurisdiction of Trustee's complaint under 28 U.S.C. § 1334(b) because it is a civil proceeding arising under Title 11 of the United States Code. This court has jurisdiction by reference from the District Court under 28 U.S.C. § 157(a). This court has "related to" jurisdiction over IRZ's third-party complaint under 28 U.S.C. § 157(b)(3) because it is related to Trustee's complaint against IRZ. Trustee's complaint is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (H), and (O). Since this court's jurisdiction is "related to" the bankruptcy case, absent consent this court cannot render a final judgment in this matter. The District Court has deferred from withdrawing its reference under 28 U.S.C. § 157(c)(1) and this court is directed to supervise discovery, rule on non-dispositive motions, and issue findings and recommendations for de novo consideration by the District Court as to dispositive motions.

## II.

## Legal Analysis

A. The Summary Judgment Standard.

Civ. Rule 56, as incorporated by Bankr. Rule 7056, applies in adversary proceedings. Under Civ. Rule 56(a), summary judgment should be granted only if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. When considering a motion for summary judgment, facts must be viewed in the light

most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Civ. Rule 56(c); *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Ibid*. The movant may not argue that its evidence is the most persuasive or "explain away" evidence unfavorable to its defenses; rather, it must show that there are no material facts in dispute, or which can be reasonably resolved by a fact finder. *Id*. at 250-51, 106 S. Ct. at 2511; *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) ("Summary judgment is not appropriate" if a reasonable jury could find in the plaintiff's favor.) (emphasis added).

As the movant here, the burden of proof is on the Defendants. The court must draw all reasonable inferences in the light most favorable to the non-moving party and therefore in favor of denying summary judgment. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513-14. Further, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Hutchins v. TNT/Reddaway Truck Line, Inc.*, 939 F. Supp. 721, 723 (N.D. Cal. 1996). If a summary judgment motion is properly submitted, the burden shifts to the opposing party to rebut with a showing that there is a genuine issue of material fact. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002). "The nonmoving party 'may not rely on denials in the pleadings but must produce specific evidence . . . to show that the dispute exists.'" *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008), quoting *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

Ultimately, the court must grant summary judgment if the movant shows that the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party as to any fact that might affect the outcome of the suit under the governing law, and the nonmovant does not meet their burden of proof to refute the movant's claims.

B.   The First and Fourth Claims.

As an initial matter, the court agrees with Defendants that summary judgment is appropriate as to the First and Fourth Claims raised in the Complaint. This is so simply because the Plaintiff concedes those issues. The First Claim (Objection to Proof of Claim), as Sugarman agrees, was rendered moot by IRZ's factual

proffer regarding IRZ's proof of claim. Doc #869 at pg. 29.
Sugarman, in his Response, also agrees to a stipulation of
dismissal without prejudice as to the Fourth Claim (Fraudulent
Transfer) *Id.* at pg. 30. Summary judgment should be GRANTED as to
those counts.

C.    The Second Claim: Breach of Contract.

Plaintiff's Second Claim alleges that "Defendant IRZ
breached its obligations under the Work Order and [the Services
Agreement] to the Debtor and the Estate." Doc. #1. Plaintiff
further alleges that "Debtor performed all conditions precedent
and concurrent to the Estates' right to enforce the Work Order
and [the Services Agreement] against IRZ, except those conditions
which were excused by the material breaches of IRZ described
above." *Id.*

The parties agree that the breach of contract claim is
governed by Oregon state law. This court has previously
determined that "Oregon state substantive law governs the breach
of contract claim" in the court's Report and Recommendations
regarding the Trustee's previous *Motion for Partial Summary
Judgment. See* Doc. #844 at p.11.

Under Oregon law, Plaintiff must prove four elements: (1)
the existence of a contract between Debtor and the Defendants;
(2) the relevant contract terms; (3) that the Debtor fully
performed and did not breach the contract; and (4) that IRZ
breached the contract terms resulting in damages to Plaintiff.
Doc. #834 at pg. 17 (relying on *Slover v. Or. State Bd. Of
Clinical Soc. Workers*, 144 Or.App. 565, 570 (1996).
///

IRZ presents two arguments for summary judgment as to this claim: (1) that Debtor breached the contract first through Debtor's failure to pay IRZ for services rendered, which precludes Debtor (and Trustee) from pursuing a claim for non-performance against IRZ, and (2) that Plaintiff cannot show that IRZ breached any term of the contract between the parties. Doc. #834. To expand on the second argument IRZ argues that, contrary to the allegations in the Complaint, IRZ was not actually obligated to do any of the things which the Plaintiff claims it was supposed to do but didn't.

The list of obligations which purportedly were IRZ's to fulfill and services to perform, as outlined in the Complaint, is lengthy, but Sugarman primarily asserts that IRZ failed to prepare certain preliminary and/or final engineering plans for Te Velde which the Trustee alleges IRZ was contractually obligated to provide. Doc. #1 at ¶29 (listing IRZ's alleged breaches of its obligations to provide engineering and related plans).

IRZ's arguments for summary judgment rest on IRZ's interpretation of the Work Order and the Services Agreement to mean that they did not, in fact, require IRZ to provide any such plans. Doc. #844. Rather, IRZ argues that, under the Services Agreement, Te Velde hired IRZ as "project manager" and did not charge IRZ with the actual design and engineering of the project at all. *Id*. The engineering work for which the Complaint seeks to hold IRZ accountable was to be performed by various subcontractors, and Te Velde never requested IRZ provide any of the listed plans, though IRZ concedes that it offered such services even if Te Velde did not avail himself of them. *Id.*

Sugarman disputes IRZ's interpretation of the contract language, arguing that the plain language of the Services Agreement (which IRZ drafted) "expressly states that the Debtor hired IRZ to provide design and engineering services (in addition to project management services)" and "also identifies the specific design and engineering tasks that IRZ agreed to perform." Doc. #869.

Sugarman's certainties about what obligations the language of the Service Agreement imposed on IRZ formed the basis of Sugarman's own *Third Motion for Partial Summary Judgment*, which the court granted in part and denied in part in its *Findings and Recommendations* issued on May 8, 2025. Doc. #844. Germane to the instant motion, the court found that the contract language was ambiguous in whether it affirmatively placed an obligation on IRZ to produce design and engineering drawings for Te Velde, and these ambiguities precluded partial summary judgment for Sugarman and to the meaning and import of the Work Order and Services Agreement. *Id.*

And, as the court stated to the parties prior to hearing oral arguments on this motion, if the contract is ambiguous as to Sugarman, than it must also be considered ambiguous as to IRZ. Indeed, the ambiguities are even greater when one considers that IRZ drafted those documents. The question of whether IRZ was contractually obligated to perform engineering work which it did not perform, thereby breaching the contract, is one for the trier of fact and is not, in this court's view, susceptible to summary judgment. See, *Castaneda v. Dura-Vent Corp.,* 648 F.2d 612, 619 (9th Cir., 1981); *Shelter Forest Int'l Acquisition, Inc. v. COSCO*

1    *Shipping (USA) Inc.,* 475 F. Supp.3d 1171, 1181-82 (D. Or. 2020).

2    Even under Oregon law a contract term is ambiguous when it may be

3    construed to have more than one meaning. *Yogman v. Parrott*, 325

4    Or. 358 (1997).

5         This same reasoning is applicable to IRZ's argument that Te

6    Velde's early breach in failing to pay IRZ for its services

7    excuses any subsequent breach by IRZ. Just as it is unclear (at

8    least for summary judgment purposes) whether IRZ had any

9    unfulfilled obligations at all to provide engineering work for Te

10   Velde, it is equally unclear as to whether any obligations which

11   did exist had already gone unfulfilled at the time Te Velde

12   ceased paying IRZ.

13        For the foregoing reasons, summary judgment should be

14   DENIED as to the Second Claim for breach of contract.

15   D.   <u>The Third Claim: Negligence</u>.

16        Next, Defendants argue in favor of summary judgment on the

17   Plaintiff's Third Claim for Negligence against both IRZ and

18   Lindsay, presenting four arguments:

19        1.   The Plaintiff cannot establish any duty owed to Debtor

20             by IRZ outside of Debtor's contract with IRZ;

21        2.   IRZ did not have any duty regarding the work performed

22             by third parties; and

23        3.   Any damages are limited by the Work Order and Services

24             Agreement limitations on liability.

25        4.   Lindsay is entitled to dismissal as to all causes of

26             action.

27   *Id.* The court will address each of these arguments in turn.

28   ///

1.   *The Plaintiff cannot establish any duty owed to Debtor by*
     *IRZ outside of Debtor's contract with IRZ.*

Oregon state law describes the nature and elements of a

negligence claim as follows:

> "Traditionally, to prevail on a negligence claim, a
> plaintiff had to prove that (1) the defendant had a
> duty to the plaintiff, (2) the defendant breached the
> duty, (3) the breach was a factual cause and (4) a
> legal cause (or proximate cause) of (5) harm to the
> plaintiff measurable in damages. *Aiken v. Shell Oil Co.*
> *et al and Huey*, 219 Ore. 523, 535-36, 348 P2d 51 (1959)
> ('One of the old and simple definitions of negligence
> is: "There must be a duty on the defendant; a failure
> to perform that duty; and the failure to perform that
> duty must be the proximate cause of injury and damage
> to the plaintiff."'). But, in *Fazzolari* [*v. Portland*
> *School Dist. No. 1J*, 303 Ore. 1, 734 P2d 1326 (1987)],
> this court reformulated the elements for an ordinary
> negligence claim, stating:
>
>> "'[U]nless the parties invoke a status, a
>> relationship, or a particular standard of
>> conduct that creates, defines, or limits the
>> defendant's duty, the issue of liability for
>> harm actually resulting from defendant's
>> conduct properly depends on whether that
>> conduct unreasonably created a foreseeable
>> risk to a protected interest of the kind of
>> harm that befell the plaintiff.'
>
> "*Fazzolari*, 303 Ore. at 17. Thus, when asserting an
> ordinary negligence claim [i.e. a negligence claim
> where no special relationship is alleged], a plaintiff
> must establish that the defendant's conduct created a
> foreseeable and unreasonable risk of legally cognizable
> harm to the plaintiff and that the conduct in fact
> caused that kind of harm to the plaintiff."

*Scott v. Kesselring*, 370 Or. 1, 9, 513 P.3d 581, 588 (2022)

(quoting *Aiken* and *Fazzolari*).

In other words, if there is no special relationship between

the parties that defines the relevant duty of care owed, a

defendant has no particular duty of care to the injured plaintiff

beyond the duty to refrain from creating any foreseeable and

unreasonable risk of legally cognizable harm to that plaintiff

13

that actually results in such harm. *See Towe v. Sacagawea, Inc.*, 357 Or. 74, 86, 347 P.3d 766, 775 (2015)("Thus, when asserting an ordinary negligence claim [as opposed to a special relationship claim], a plaintiff does not need to prove that the defendant owed the plaintiff a duty, because—as a general proposition—everyone owes each other the duty to act reasonably in light of foreseeable risks of harm.")

Furthermore, Oregon follows the "economic loss" doctrine which states that "where purely economic loss is alleged, the plaintiff must also allege facts sufficient to establish that the defendants owed a duty of care to the plaintiff beyond the common law duty of reasonable care." *Diamond Heating, Inc. v. Clackamas Cty.*, 316 Or. App. 579, 582, 505 P.3d 4, 6 (2021); *see also Goss v. Performance Health Tech. Ltd.* 2024 Ore. Cir. LEXIS 8177, *2 ("The economic loss rule 'generally bars recovery for purely economic losses under a claim of negligence, unless there is a special relationship between the parties.'").

In this context, "purely economic losses" generally refers to "financial losses such as indebtedness incurred and return of monies paid, as distinguished from damages to injury to person or property." *Key Compounds LLC v. Phasex Corp.*, No. 6:20-cv-00680-AA, 2021 U.S. Dist. LEXIS 164846, at *18 (D. Or. Aug. 31, 2021). "[O]ne ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property." *Hale v. Groce*, 304 Or. 281, 284, 744 P.2d 1289, 1290 (1987). When a plaintiff alleges only economic losses, a negligence claim requires "[s]ome source of duty outside the common law of negligence," such as a special relationship or

status that imposed a duty on the defendant beyond the common-law negligence standard." *Harris v. Suniga*, 344 Or. 301, 308, 180 P.3d 12, 15-16 (2008).

In its motion, Defendants argue that the economic loss doctrine bars Plaintiff's negligence claim because the alleged losses are purely economic in nature and there is no special relationship between the parties under existing Oregon precedent. Doc. #834. Defendants argue that "Debtor and IRZ had an arm's-length contractual relationship, rather than a special relationship" and that "[n]either the Work Order or the Services Agreement grants IRZ and authority to act on behalf of Debtor." *Id.* Because the contractual agreement between IRZ and Te Velde defined IRZ's role as "project manager" with Te Velde having final authority over every aspect of the project, IRZ had no independent authority over the project and thus had no "special relationship" duty of care to Debtor. *Id.*

Sugarman disagrees with this conclusion in two ways. First, the Amended Complaint alleges more than economic losses, which means that the economic loss doctrine is inapplicable. Doc. #869. Specifically, Plaintiff alleges that "Defendants' acts and omissions caused the Lost Valley Farm's waste management system and structures to be improperly designed and constructed, which resulted in the release of large amounts of liquid and solid dairy waste onto the Debtor's land. *Id;* Doc. #533 (Amended Complaint at ¶¶ 1, 19, and 38). This, according to the Amended Complaint, resulted in the following non-economic losses:

> Further, as a direct, foreseeable, and proximate cause of the Defendants' negligence, the Estate has suffered consequential damages in an amount not less $18,987,000

consisting of the following: (1) direct remediation
costs of the excess effluent on the Lost Valley Farm in
the approximate amount of $3,500,000, (2) loss of
profits from dairy revenues in the approximate amount
of $3,000,000, (3) professional fees to counsel and
environmental consultants in responding to the ODA's
enforcement actions in the approximate amount of
$300,000, (4) fines assessed by the ODA in the
approximate amount of $187,000,and (5) loss of value to
the Lost Valley Farm land in the approximate amount of
$12,000,000.

Doc. #533 at ¶ 57. Defendants acknowledge this paragraph but

argue that the damages described therein (which appear to be the

only damages purportedly attributable to negligence rather than

breach of contract) do not, in fact, identify any non-economic

damages:

The cited paragraph 57 of the FAC does not identify any
property damage but instead asserts damages for (1)
remediation; (2) loss of profits; (3) professional
fees; (4) fines; and (5) loss of value. FAC ¶ 57. These
are not allegations of actual damage to the property
itself, but instead assert the costs incurred when the
State of Oregon required the cleanup of the waste
management system. Without actual property damage, the
losses are solely economic.

Doc. #883 (Reply Brief at p. 16).

The court does not find this hair-splitting persuasive.

Accepting the allegations in ¶ 57 of the Amended Complaint as

true, Defendants' acts or omissions damaged Plaintiff's property

to the point that the state of Oregon required Te Velde to

perform expensive clean-up operations. In the court's view, if a

defendant damages the plaintiff's property to the point that the

plaintiff was legally required to pay for clean-up of the

property, that does not magically convert what was clearly

property damage into purely economic losses.

Alternatively, Sugarman argues that even if Te Velde's

losses attributable to negligence were purely economic, the

economic loss doctrine is nevertheless inapplicable because
Defendants did have a special relationship with Te Velde which
established a heightened duty of care. Sugarman points to
language in the Services Agreement stating that "it is understood
by the OWNER and ICD" that "[t]his project will be undertaken
under the supervision and control of ICD as Project Manager," and
that "ICD will be acting on behalf of the OWNER as Agent for the
Owner." Doc. #869 (quoting Doc. #837 – Plaintiff's Exhibit B at
pg. 2 ("Scope of Work")). It is beyond cavil that an agent owes
duties of care and loyalty to his or her principal. *Onita*
*Pacific Corp. v. Trustees of Bronson*, 315 Or. 149,161; 843 P.2d
890, 897 (1992).

Obviously, Defendants deny the existence of any agency
relationship that imposed a heightened duty of care upon it (*see*
SUF at ¶21), but in doing so, it relies on its interpretation of
the Services Agreement and the Work Order. Plaintiff disputes the
Defendants interpretation of those two documents (*Id.*), and the
court has already determined that there are ambiguities in the
Services Agreement and the Work Order which preclude summary
judgment as to what Defendants' obligations were prior to their
termination. These ambiguities, in the court's view, extend to
the question of whether IRZ was an agent of Te Velde's such that
a special relationship was established.

Under either analysis, the court finds that disputed issues
of fact preclude summary judgment as to whether the Plaintiff can
establish the existence of a heightened duty of care based on
agency owed to Debtor by IRZ and/or whether Plaintiff can
///

demonstrate negligence by IRZ that caused non-economic losses.

Accordingly, summary judgment should be DENIED as to this point.

2.   *IRZ did not have any duty regarding the work performed by third parties*.

IRZ next argues that it had no duty of care regarding work negligently performed by other contractors (including the Debtor and others) who IRZ was charged with "supervis[ing]" pursuant to the Work Order and Services Agreement. Doc. #834. In response, Plaintiff flatly denies that it is "seeking to have IRZ 'held negligent for work done by other contractors.'" Doc. #869. Rather, Plaintiff's theory for negligence is premised on IRZ's alleged failure to "oversee the design and engineering of the project to insure [sic] that all objectives of the project are met in the final and complete design." *Id.* (quoting Doc. #837 – Plaintiff's Exhibit B at pg. 2 ("Scope of Work")).

To the extent it matters, summary judgment should be GRANTED as to the negligence claim to the extent it is premised on IRZ being held negligent for work done by other contractors, as opposed to negligence in the performance of IRZ's own contractual obligations.  Plaintiff concedes that IRZ should not be held negligent for work done by other contractors.

3.   *Any damages are limited by the Work Order and Services Agreement limitations on liability*.

Defendants next argue that, if any negligence claims are allowed to proceed, such claims are subject to a limitation of liability of IRZ  under the liability limitation provisions contained in the Work Order and the Services Agreement. *See* Doc. #834.

The Work Order states:

> **Liabilities**. The client agrees to limit ICD's liability
> to the client and to all construction contractors and
> subcontractors on the project, due to ICD's or any
> employee of ICD's negligent acts, errors, or omissions,
> such that the total aggregate limit of ICD to all those
> names shall not exceed $50,000, or the amount of ICD's
> fees, whichever is less."

*Id.* (quoting Doc. #835 (SUF at #7)).

The Services Agreement, likewise, states:

> ICD Liability. Under no circumstances shall that amount
> exceed $500,000 or the amount of ICD's fees, whichever
> is lower. Under no circumstances shall ICD be liable
> for negligent acts, errors and omissions of OWNER or
> SUBCONTRACTORS.

*Id.* (quoting Doc. #835 (SUF at #4)). Defendants interpret these provision to mean that any claim for negligence against IRZ that arose between September 30, 2015 (the date of the Work Order) to November 17, 2015 (the date of the Services Agreement) is capped at $50,000.00, and any negligence claim arising after November 17, 2015, is capped at $500,000.00.

This court has previously addressed the issues surrounding the limitation of liability clauses in its *Report and Recommendations* issued on November 10, 2022, as to Plaintiff's *Second Motion for Partial Summary Judgment.* Doc. #556. The court granted the motion in part and denied it in part, recommending that summary judgment in favor of Plaintiff be granted as to Plaintiff's claim being outside the scope of the limitation of liability clauses. *Id.* The court denied in part the remainder of Plaintiff's motion, stating:

> Genuine issues of material fact exist with respect to
> (1) whether the Work Order and Contract affect the
> public welfare, (2) whether ICD was performing
> unlicensed contractor's services, and (3) whether the
> limitation of liability provisions are procedurally

unconscionable due to their lack of conspicuousness, and whether they were bargained for, or called to the Debtor's attention.

Those disputed issues of material fact are no less germane to the Defendants' position than they were to the Plaintiff's. Accordingly, summary judgment should be DENIED as to the question of whether the liability limitation clauses are applicable to Plaintiff's negligence claim and should be applied to cap any damages arising from negligence.

4.      _Lindsay is entitled to dismissal as to all causes of action_.

Finally, Defendants argue that co-defendant Lindsay is entitled to dismissal of all causes of action (of which only the Second and Third Claims remain) on the grounds that Plaintiff has failed to come forward with a factual and/or legal basis for holding Lindsay liable. Doc. #834. Defendants point to the following facts, which are undisputed by Plaintiff:

The signatory to the Work Order was Fred Ziari, CEO of IRZ.

SUF at ¶16.

Mr. Ziari did not have authority to sign on behalf of IRZ's publicly traded then-ultimate parent company, Defendant Lindsay.

SUF at ¶17.

Defendant Lindsay Corporation was the ultimate owner of IRZ during the period of the Lost Valley Farm project. Through a subsidiary, Lindsay Corporation purchased the IRZ business from entities controlled by Farahmand "Fred" Ziari on or about August 26, 2011. A decade later, in August 2021, Lindsay Corporation, through a subsidiary, sold IRZ Consulting, LLC, to IRZ Holding Company LLC, a company managed by Fred Ziari. Accordingly, Lindsay Corp. was the owner of IRZ during the operative time period.

SUF at ¶50.

"IRZ Construction Division by Lindsay" was a marketing name developed to capitalize on IRZ's connection with Lindsay Corp., a publicly traded company in the irrigation space. However, IRZ Construction Division was always an assumed name of IRZ. Neither Lindsay Corp. nor the Lindsay Holdco ever did work under the IRZ name.

SUF at ¶55.

Defendants argue that, although Lindsay owned IRZ during the time when the events underlying this adversary proceeding occurred, IRZ was an LLC, and Lindsay cannot be held responsible for any debts, obligations, and liabilities solely on account of its ownership of the LLC. Doc. #834. This is consistent with Oregon corporate law:

(1) The debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, are solely the debts, obligations and liabilities of the limited liability company. A member or manager is not personally liable for a debt, obligation or liability of the limited liability company solely by reason of being or acting as a member or manager.

(2) The failure of a limited liability company to observe the usual limited liability company formalities or requirements relating to the exercise of its limited liability company powers or management of its business is not a ground for imposing personal liability on the members or managers for liabilities of the limited liability company.

Or. Rev. Stat. Ann. § 63.165. The Defendants assert that the only evidence of Lindsay's involvement lay in invoices sent by IRZ to Te Velde stating that the work performed by IRZ was billed by "ICD IRZ Construction Division by Lindsay." Doc. #834. As noted above, this was "a marketing name developed to capitalize on IRZ's connection with Lindsay", and the invoices themselves were sent from IRZ to Te Velde, facts which are not disputed by Plaintiff. SUF at ¶52, ¶55. Likewise, Plaintiff does not dispute

that the signatory to the agreements was Ziari on behalf of IRZ and that Ziari did not have authority to sign on behalf of Lindsay. SUF at ¶16, ¶17.

Plaintiff relies on the fact that it was not a single invoice in question but rather "a series of invoices, over 19 months, totaling more than $990,000, on forms that have a graphically designed and trademarked logo identifying the issuer as 'ICD IRZ Construction Division **By Lindsay**.'" Doc. #869 (emphasis in original). However, Plaintiff cites no authority for its argument that IRZ's use of the talismanic words "By Lindsay" in its trademarked logo (which Plaintiff conceded to be a "marketing name" for IRZ, *see* SUF at ¶50) represents proof of Lindsay's direct liability for the acts and omissions underlying this adversary. The court does not find the incorporation of the words "By Lindsay" into IRZ's trade name as used on the invoices and other correspondence, without more, to be sufficient grounds to pierce the corporate veil and extend IRZ's potential liability to Lindsay.

Plaintiff also asserts that other record evidence "confirms Lindsay's extensive participation." Doc. #869. First, both Fred Ziari and Wayne Downey testified that "Lindsay legal counsel reviewed the Design, Engineer, and Project Management Services Agreement before Mr. Ziari executed the Agreement for IRZ." PSUF #57. Second, "the management of Lindsay and IRZ had decided to keep IRZ's Construction Division (ICD) separated from IRZ's engineering business." PSUF #39.

Third, Ziari testified that that "Lindsay is, in fact, managing and controlling the defense of this case on behalf of

both Lindsay and IRZ" and that Lindsay is contractually obligated to indemnify IRZ for any losses arising out of this litigation, both pursuant to the Membership Interest Purchase Agreement whereby Ziari personally acquired IRZ back from Lindsay. PSUF #60, #63, #65.

The court interprets Trustee to argue that, because Lindsay is contractually obligated to defend and indemnify IRZ, Lindsay is a proper defendant for this adversary proceeding. Trustee cites no authority for the proposition that an obligation to indemnify another entity makes the indemnitor a proper defendant in an action against the indemnitee. The Plaintiff points to this court's prior order dated May 8, 2025, ("the May 8 Order") denying Plaintiff's motion for partial summary judgment on the question of whether Lindsay is obligated to indemnify IRZ for any losses as an argument for why Lindsay belongs in this case. Doc. #869; *see also* Doc. #844 at 19-23 (the May 8 Order).

The May 8 Order did deny Trustee's motion for partial summary judgment vis a vis Lindsay's indemnity obligations because of jurisdictional questions and disputed issues of material fact surrounding the breadth and scope of the indemnity agreement which precluded a finding in favor of Trustee that Lindsay was definitively IRZ's indemnitor. *Id.* Indeed, as the May 8 Order noted, it is not entirely clear whether the indemnitor is Lindsay or one of Lindsay's subsidiaries. *Id.* At the time, the court concluded that the jurisdictional issues raised by the Defendants were not squarely before the court and, in light of the factual disputes, were not fully considered.
///

Now, however, Defendants place the jurisdictional issue directly before the court, arguing that the court lacks in personam jurisdiction over Lindsay and that the Trustee lacks standing to assert a claim for indemnification against Lindsay. Doc. #883. The court declines to wade into the jurisdictional thicket as the standing issue is dispositive. As Defendants state in their Reply brief:

> Under Oregon law, a third-party can only enforce a contract upon evidence of "an intention to confer a contract right upon [the] third party." *Aetna Cas. & Sur. Co. v. Oregon Health Scis. Univ.*, 310 Or. 61, 65 (1990). Absent such evidence, "the contract will not be interpreted to promise performance to the third-party stranger to the contract even though the stranger may incidentally benefit from the contract." *Id.*; *see also Sisters of St. Joseph of Peace, Health, & Hosp. Servs. v. Russell*, 318 Or. 370, 375 (1994). There is no evidence that either Lindsay Holdings or IRZ Holding intended to grant Debtor or Trustee third-party beneficiary status in the MIPA, or any reason they would. The MIPA contemplated sale of IRZ as a whole. Whether the indemnification clause is exercised is solely a concern between IRZ Holding and Lindsay Holding.

Doc. #883 at pg. 20. The court agrees with Defendants' analysis. Under Oregon law:

> Absent an intention to confer a contract right upon a third party who has paid no value, the contract will not be interpreted to promise performance to the third-party stranger to the contract even though the stranger may incidentally benefit from the contract. *See Restatement Contracts*, § 133(1)(a) (1932); *see also Restatement (Second) Contracts* § 1 & comment c at 6 (1979); *Northwest Airlines v. Crosetti Bros.* ("*Northwest Airlines*"), 258 Or 340, 346, 483 P2d 70 (1971); Howard, *The Restatement of the Law of Contracts with Oregon Notes*, 12 Or L Rev 201, 272-73 (1933).

*Aetna Cas. & Sur. Co. v. Or. Health Scis. Univ.*, 310 Or. 61, 65, 793 P.2d 320, 322 (1990).

The court finds *Northwest Airlines,* which was cited by the *Aetna Cas.* Court, to be instructive. There, Northwest had

24

contributed to the settlement of claims brought by a patron injured at the Northwest ticket counter and later sought to recover those funds from Crosetti Bros., who performed janitorial services at the terminal. *Nw. Airlines,* 258 Ore. at 341. Northwest's argument was that it was "a third-party beneficiary of a contract between [the airport] and Crosetti whereby Crosetti promised to indemnify against all loss by reason of Crosetti's operations." *Id.*

The Oregon Supreme Court rejected Northwest's theory, saying:

> Assuming without in any way deciding that plaintiff is
> a third-party beneficiary of Crosetti's promise to the
> Port to keep the floor clean, plaintiff is not a third-
> party beneficiary of Crosetti's promise to indemnify
> [the airport]. Only Crosetti's promise to indemnify is
> involved. The trial court found Crosetti did not
> create the condition on the floor nor was it
> responsible for it. Plaintiff is contending that it is
> in the same position that the Port was in in *St. Paul
> Fire & Marine Ins. Co. v. Crosetti Bros., Inc.*, supra
> 256 Or. 576: Crosetti has an obligation under the
> contract to indemnify [the airport] irrespective of any
> absence of negligence or breach of any other provision
> of the contract.

*Id.* at 344. The court held that the contract did not contain any provisions signifying that Crosetti's promise to indemnify the airport regardless of Crosetti's own fault extended to a third party such as Northwest. *Id.*

Here, the indemnity agreement does not include any language suggesting an "intention to confer a contract right" on Te Velde or any other third party. Consequently, Trustee does not have any right to drag Lindsay into this adversary proceeding without any evidence that Lindsay engaged in acts and omissions that give rise to liability claims against it simply because Lindsay is (or

simply may be) contractually obligated to indemnify IRZ if the adversary proceeding ends with a judgment against IRZ. Accordingly, summary judgment as to all claims against Lindsay is proper, and the motion should be GRANTED to that extent.

### CONCLUSION

Based on the foregoing, the court recommends that the District Court GRANT IN PART AND DENY IN PART the Defendants' motion for summary judgment as follows:

1. As to Defendant IRZ, the motion for summary judgment be GRANTED as to Claims #1 and #4 and DENIED as to Claims #2 and #3, and

2. As to Defendant Lindsay, the motion for summary judgment be GRANTED as to all claims.

Objections to the above Report and Recommendation, responses thereto and other requirements shall be as required by Fed. R. Bankr. Proc. 9033.

**Dated:** Dec 17, 2025                    **By the Court**

**René Lastreto II, Judge**
**United States Bankruptcy Court**

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

     The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ___, via the U.S. mail.

Randy Sugarman
583 1st St W
Sonoma, CA 95476

Carl S. Kravitz
1800 M Street, NW
Suite 1000
Washington, DC 20036

R. Miles Clark
1800 M Street, NW
Suite 1000
Washington, DC 20036

Kurt F. Vote
265 E. River Park Circle, Suite 310
Fresno, CA 93720

Kyle D. Sciuchetti
111 SW Fifth Ave #3400
Portland, OR 97204

Bernie Kornberg
111 SW Fifth Ave #3400
Portland, OR 97204